THE GILLAM LAW FIRM
*A Professional Law Corporation*
Carol L. Gillam (SBN 102354)
10866 Wilshire Boulevard, Suite 400
Los Angeles, California 90024
Telephone: (310) 203-9977
Facsimile: (310) 203-9922
carol@gillamlaw.com

Attorneys for Defendant Charles Matthew Erhart

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

BOFI FEDERAL BANK, a federal savings bank,

Plaintiff,

vs.

CHARLES MATTHEW ERHART, an individual; and DOES 1-25, inclusive.

Defendant.

Case No.: 3:15-cv-2353-BAS-NLS

**DEFENDANT ERHART'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

**The Hon. Cynthia Bashant**

**Courtroom 4B (Schwartz Courthouse)**

**Date: February 1, 2016**

**Dept: Courtroom 4B**

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1
II. RELEVANT FACTUAL BACKGROUND ........................... 1
III. LEGAL STANDARD ........................... 5
IV. ARGUMENT ........................... 5
A. Bofi Cannot Show It Is Likely to Succeed on the Merits ........................... 5
1. The Law Protects Mr. Erhart's Conduct ........................... 6
2. Bofi Fails to Disclose Critical Law About Its Claims ........................... 10
3. The Breach of Loyalty Claim Fails ........................... 12
4. Bofi's Attorney-Client Privilege Argument Fails ........................... 13
B. There is No Showing Irreparable Harm ........................... 14
C. The Balance of Equities Tips in Defendant's Favor ........................... 14
D. An Injunction is Manifestly NOT in the Public Interest ........................... 15
V. CONCLUSION ........................... 15

# TABLE OF AUTHORITIES

**Cases**

*Atari Games Corp. v. Nintendo*, 975 F.2d 832, 837 (Fed.Cir. 1992)......................5
*Berman v. Neo@Ogilvy LLC*, 801 F.3d 145 (2d Cir. 2015).................................11
*Costco Wholesale Corp. v. Sup. Ct., 47 Cal.4th 725, 732-733 (2009)* .................13
*D.I. Chadbourne, Inc. v. Superior Court*, 60 Cal.2d 723, 734 (1964) ..................13
*Dr. Seuss Enters. v. Penguin Books USA*, 924 F.Supp. 1559, 1562 (S.D. Cal.1996), *aff'd,* 109 F.3d 1394 (9th Cir.1997) ..................................................5
*Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 479 (7th Cir.2004).........................6
*Federal Deposit Insurance Corporation, as Receiver for La Jolla Bank, FSB v. Richard K. Colbourne et al.*, S.D. Cal. Case No. '13-cv-0351-GPC-WMC ......2
*Fowler v. Varian Assocs., Inc.*, 196 Cal.App.3d 34, 41(1987) .............................12
*Greyhound Corp. v. Superior Court*, 56 Cal.2d 355, 397 (1961) .........................13
*James v. Childtime Childcare, Inc.*, 2007 WL 1589543 *3 (E.D. Cal. June 1, 2007)..........................................................................................................12
*JDS Uniphase Corp. v. Jennings*, 473 F.Supp. 697, 702 (E.D. Va. 2007) .........7, 9
*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) ..............................................................................................4
*Otsuka v. Polo Ralph Lauren Corp.*, 2007 WL 3342721 *3 (N.D. Cal. Nov. 9, 2007).........................................................................................................13
*Renfroe & Co. v. Moran*, 249 Fed.Appx. 88-89 (11th Cir. 2007).......................7, 9
*Shmushkovitch v. Home Bound Healthcare, Inc.*, 2015 WL 386947, at *1 (N.D. Ill. June 23, 2015)................................................................................................6
*Siebert v. Gene Sec. Network, Inc.*, 2013 WL 5645309, at *8 (N.D. Cal. Oct. 16, 2013) ........................................................................7, 8
*Stokes v. Dole Nut Co.*, 41 Cal.App.4th 285, 295-96 ..........................................12
*U.S. ex rel. Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1061-62 (9th Cir. 2011) ("*Cafasso*") ..............................................................7

*U.S. ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 152 (D.D.C. 2009)...............8

*U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F.Supp.2d 1033 (C.D. Cal. 2012)........6, 8

*United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, 2014 WL 66714, at *6 (E.D. Va. Jan. 6, 2014)..........6

*United States v. Cancer Treatment Ctrs. of Am.*, 350 F.Supp.2d 765, 773 (N.D. Ill. 2004)..........6, 8

*X Corp. v. Doe*, 805 F.Supp. 1298, 1310 n.24 (E.D. Va. 1992)..........9

**Statutes**

Cal.Evid.Code § 956..........14

California Evidence Code § 954..........13

California Labor Code § 1102.5..........1, 10, 12

California Labor Code § 2863..........12

Dodd-Frank Act,17 C.F.R. § 240.21F–17..........10

Dodd-Frank Act, 17 C.F.R. § 240.21F–2..........11

Sarbanes-Oxley Act (18 U.S.C. § 1514A)..........1, 10, 11

**Other Authorities**

2003 Cal. Adv. Legis. Serv. 484 § 1..........9

SEC Release No. 34-75592..........11

SEC Release No. 75592..........11

**Law Review Articles**

Joel D. Hesch, *The False Claims Act Creates a "Zone of Protection" that Bars Suits Against Employees Who Report Fraud Against the Government,* 62 Drake L.Rev. 361(2014)..........6

Stephen M. Payne, *Let's be Reasonable: Controlling Self–Help Discovery in False Claims Act Suits*, 81 U. Chi. L.Rev. 1297, 1298–99 (2014)..........6

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Charles Matthew Erhart is a whistleblower under the Sarbanes-Oxley Act (18 U.S.C. § 1514A) ("SOX") and the Dodd-Frank Act (15 U.S.C. § 78u-6) ("Dodd-Frank"), as well as under California Labor Code § 1102.5. See Case No. 15CV2287-BAS-NLS (“Erhart Whistleblower Suit”).[1] Mr. Erhart lost his job working for Plaintiff because of his important whistleblowing activities.

Plaintiff Bofi Federal Bank (“Bofi” or “the Bank”) filed this suit against Mr. Erhart after he filed his whistleblower suit against Bofi. It seeks to prevent him from using information he lawfully obtained in support of exposing company misconduct and unlawful activity, and to punish him for having done so.

Abundant case law supports Mr. Erhart’s efforts to blow the whistle, using a reasonable number of documents to share with federal authorities, *after* confirming with them that he was a protected whistleblower. (Declaration of Charles Matthew Erhart (“Erhart Decl.”) ¶¶ 79-80).[2]

In addition, Bofi knew for many months that Mr. Erhart had the documents in question, and had shared them with authorities. Yet it waited 7 1/2 months to take any action. This is hardly a case for injunctive relief.

## II. RELEVANT FACTUAL BACKGROUND

Mr. Erhart joined Bofi as a staff internal auditor in September 2013 after a stint as essentially a federal regulator at FINRA. He reported to Jonathan Ball, Vice President, Internal Audit. Mr. Ball had considerable experience as an internal auditor for banks, and Mr. Erhart learned a great deal from him. (Erhart Decl., ¶ 5).

In fact, Mr. Ball had been the lead auditor for 18 years at a failed bank, La

---

[1] *Charles Matthew Erhart v. Bofi Holding, Inc.*, S.D. Cal. Case No. 15CV2287-BAS-NLS. (Request for Judicial Notice (“RJN”). See Appendix of Exhibits, Exhibit 1). The instant case was low-numbered to this Court October 29, 2015 due to Mr. Erhart’s first-filed whistleblower suit.

[2] See Appendix of Exhibits, Exhibit 5.

Jolla Bank, just before joining Bofi. After La Jolla Bank was taken over by the Office of Thrift Supervision ("OTS"), the Federal Deposit Insurance Corporation ("FDIC"), as receiver, sued senior officers of that bank.[3]

The United States Department of the Treasury, Office of Inspector General ("OIG") investigated the cause of La Jolla Bank's failure, and issued its Audit Report on July 14, 2011 ("OIG Report"). The OIG Report pointed to its aggressive growth, concentration in high-risk loans, deteriorating asset quality, and lack of attention to internal controls. The OIG also noted that potential fraud and other misconduct by the chief executive officer and chief credit officer, brought to the attention of the board's audit committee by its internal auditor [Mr. Ball], likely contributed to the bank's adopting an unsound operating strategy. OIG Report at 1-2.[4]

Mr. Ball began to warn Mr. Erhart of some troubling practices at Bofi that harkened back to a similar strategy at La Jolla Bank – questionable conduct by the CEO, pursuit of an aggressive growth strategy, heavy concentrations in certain areas and types of loans. As he said to Mr. Erhart, "I've seen this movie before, and it ends badly." (Erhart Decl., ¶ 6).

In the course of performing his work as an auditor, Mr. Erhart repeatedly came upon troubling issues. He conferred regularly with Mr. Ball and took direction from him about what to investigate and how to report it. (Erhart Decl., ¶ 9). The issues he uncovered are set forth in some detail in his complaint in the Erhart Whistleblower Lawsuit. See especially Paragraphs 9-75 of the complaint, incorporated here by this reference, and set out in Mr. Erhart's declaration as well. (Erhart Decl., ¶¶ 9-75). Mr. Erhart was selective in the documents he accessed and turned over, focusing only on those documents supporting the

---

[3] *Federal Deposit Insurance Corporation, as Receiver for La Jolla Bank, FSB v. Richard K. Colbourne et al.,* S.D. Cal. Case No. '13-cv-0351-GPC-WMC (RJN, Appendix of Exhibits, Exhibit 2.)

[4] (RJN, Appendix of Exhibits, Exhibit 3).

specific instances of wrongdoing he had identified together with Mr. Ball. (Erhart Decl., ¶ 79).

Once Bofi knew that Mr. Erhart was engaging in whistleblowing to its principal regulator, the Office of the Comptroller of the Currency, U.S. Department of the Treasury ("OCC"), Bofi demanded the return of Mr. Erhart's laptop computer and threatened to call the police. Mr. Erhart promptly returned it to the Bank as requested, although he was aware the Bank normally did not ask employees on medical leave to return their laptops (Erhart Decl., ¶ 67).

Once Mr. Erhart retained legal counsel, he downloaded the same files he had provided the OCC on March 6-9, 2015 to thumb drives for the purpose of sending them to other federal law enforcement agencies, including the Securities and Exchange Commission ("SEC") and the Department of Labor, Office of Safety and Health Administration ("OSHA"). (Erhart Decl., ¶ 78).

At no time did Mr. Erhart provide confidential information to anyone other than his attorney and federal law enforcement agencies. (Erhart Decl., ¶ 77).

Many months elapsed after the Bank was aware that Mr. Erhart had blown the whistle on it. Lawyers for the parties corresponded, and in particular Mr. Erhart's counsel gave assurances to Bofi's counsel in May 2015 that no customer information had been shared with anyone outside the Bank's regulators (Declaration of Carol L. Gillam ("Gillam Decl."), ¶ 2).[5]

The Bank took no further steps to seek return of information that Mr. Erhart had possessed until after the Erhart Whistleblower Lawsuit was filed October 13, 2015. (Gillam Decl., ¶ 3). Once the Bank filed its own lawsuit, Mr. Erhart fully cooperated in returning information to the Bank, while denying any wrongdoing in having possessed it. A joint proposed temporary restraining order was filed October 21, 2015. A version of the order was granted November 2, 2015. A joint supplemental TRO was filed November 10, 2015, and a joint motion to allow a limited deposition of Mr. Erhart filed November 11, 2015

[5] Appendix of Exhibits, Exhibit 6.

(granted November 18, 2015). A joint protective order was filed December 1, 2015 and signed December 3, 2015.[6] The parties also cooperated in allowing the Bank to have forensic auditors inspect Mr. Erhart's computer. Mr. Erhart provided a declaration to Bank counsel describing the contents of information on his computer. (Erhart Decl., ¶ 81). Mr. Erhart's deposition took place Sunday, December 6, 2015. (Erhart Decl., ¶ 82).

As Mr. Erhart has testified, he did not share any Bank confidential information with anyone besides his counsel and federal law enforcement authorities.[7] As these facts demonstrate, there is no basis for the Bank to seek or obtain a preliminary injunction. The parties have worked cooperatively, and will continue to do so unless the Bank refuses to produce the information to Mr. Erhart in discovery that he turned over to it. (Gillam Decl., ¶ 4).

## III. LEGAL STANDARD

Defendant agrees that Bofi must prove four elements in order to succeed on its motion: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). (Pltf.Mem. 11-12). As will be seen below, Plaintiff fails to meet its burden on any of these.

////

////

[6] Defendant requests the Court judicially notice the filings in this case.

[7] He did send some information to his mother for safekeeping before he retained counsel, when he was fearful the Bank would destroy information and potentially cause him harm, but his mother never looked at it. (Erhart Decl., ¶ 77).

## IV. ARGUMENT

### *A. Bofi Cannot Show It Is Likely To Succeed on the Merits*

Plaintiff argues that it is likely to prevail on three common law claims: breach of contract, conversion and breach of a duty of loyalty. None of these claims belongs in federal court, of course.[8]

Defendant does not claim that he had carte blanche to disclose everything he learned while working as a staff auditor at Bofi Bank to anyone he pleased. And he certainly has not done so. The heart and soul of this case is that Mr. Erhart blew the whistle on illegal conduct and Bofi's stock price suffered from the exposure of that conduct.

Plaintiff failed to state Ninth Circuit law correctly on this element, neglecting to mention its burden to show it is likely to overcome any affirmative defenses raised. *See Atari Games Corp. v. Nintendo,* 975 F.2d 832, 837 (Fed.Cir. 1992) (following Ninth Circuit law, and stating that plaintiff must show likelihood of success on prima facie copyright infringement case and likelihood that it would overcome copyright misuse defense); *see also Dr. Seuss Enters. v. Penguin Books USA*, 924 F.Supp. 1559, 1562 (S.D. Cal.1996), *aff'd,* 109 F.3d 1394 (9th Cir.1997) ("The plaintiff's burden of showing a likelihood of success on the merits includes the burden of showing a likelihood that it would prevail against any affirmative defenses raised by the defendant"); *Religious Tech. Ctr. v. Netcom On–Line Communication Servs.*, 923 F.Supp. 1231, 1242 n. 12 (N.D. Cal. 1995) (plaintiffs must prove they can defeat fair use defense to obtain preliminary injunction); 2 William W. Schwarzer et al., *California Practice Guide, Federal Civil Procedure Before Trial* ¶ 13:47 (2000) (advising that when a preliminary injunction is sought "plaintiff must demonstrate a likelihood of prevailing on any affirmative defense as well as on plaintiff's case in chief"). The foregoing law is cited in *the very footnote* Plaintiff cites in its brief, yet Bofi fails to mention it.

---

[8] Plaintiff sought federal jurisdiction based on a specious claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5).

(Pltf.Mem. 12, citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 n.3 (9th Cir. 2001). Defendant has raised a plethora of affirmative defenses in his answer, and Plaintiff has only addressed one of them. (Pltf.Mem. 14-16).

**1. The Law Protects Mr. Erhart's Conduct.**

As a whistleblower, Mr. Erhart has protections from liability for breach of a confidentiality agreement, and from similar claims like those Bofi brings here. Most federal courts acknowledge this public policy exception in analogous cases, as under the False Claims Act. *See* Stephen M. Payne, *Let's be Reasonable: Controlling Self–Help Discovery in False Claims Act Suits,* 81 U. Chi. L.Rev. 1297, 1298–99 (2014) ("The first and largest group of courts holds that public policy voids confidentiality agreements in the context of the FCA."); Joel D. Hesch, *The False Claims Act Creates a "Zone of Protection" that Bars Suits Against Employees Who Report Fraud Against the Government,* 62 Drake L.Rev. 361, 391 (2014) (the Act "mandates that the relator produce internal company information as part of filing a qui tam case."); *Shmushkovitch v. Home Bound Healthcare, Inc.*, 2015 WL 386947, at *1 (N.D. Ill. June 23, 2015) ("Most federal courts acknowledge this public policy exception").

There is a strong public policy in favor of protecting whistleblowers who report fraud against the government. *See, e.g., Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 479 (7th Cir.2004) (recognizing a "broad" public interest); *U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F.Supp.2d 1033, 1039 (C.D. Cal. 2012) ("*Ruhe*") ("this taking and publication was not wrongful, even in light of nondisclosure agreements, given the strong public policy in favor of protecting whistleblowers who report fraud against the government"); *United States v. Cancer Treatment Ctrs. of Am.*, 350 F.Supp.2d 765, 773 (N.D. Ill. 2004); *United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, 2014 WL 66714, at *6 (E.D. Va. Jan. 6, 2014) ("It is true that the FCA contemplates whistleblower possession of documents obtained from employers that evidence fraud upon the government."); *Siebert v. Gene Sec. Network, Inc.*, 2013 WL 5645309, at *8 (N.D. Cal. Oct. 16,

2013) ("any alleged obligation by Siebert not to retain or disclose the confidential documents that form the basis of this action is unenforceable as a matter of public policy because it would frustrate Congress' purpose in enacting the [FCA]").

This policy would be thwarted if the courts permitted companies like Bofi to use the *in terrorem* effect of a lawsuit like the present one to silence whistleblowers and keep company misconduct secret. Likewise a bank could attempt to coerce its employees to engage in illegal conduct themselves, on pain of dismissal or potentially ruinous litigation.

Bofi cites three cases to argue that Mr. Erhart should not enjoy protection as a whistleblower, *U.S. ex rel. Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1061-62 (9th Cir. 2011) ("*Cafasso*")*; JDS Uniphase Corp. v. Jennings*, 473 F.Supp. 697, 702 (E.D. Va. 2007); and *Renfroe & Co. v. Moran*, 249 Fed.Appx. 88-89 (11th Cir. 2007) (Pltf.Mem. 14-16). Each is distinguishable.

The Ninth Circuit declined to adopt a broad immunity rule for whistleblowers turning over large quantities of evidence in *Cafasso, supra*. There the whistleblower engaged in the wholesale and indiscriminate taking of some 11 gigabytes of data, an enormous quantity by any standard. The court found: "Swept up in this unselective taking of documents were attorney-client privileged communications, trade secrets belonging to GDC4S and other contractors, internal research and development information, sensitive government information, and at least one patent application that the Patent Office had placed under a secrecy order." *Id.* at 1062.

That is hardly the case here, where the files Defendant had on his bank-issued laptop computer, and shared with federal regulators, were discrete and specific to certain violations. (Erhart Decl., ¶¶ 79-80). Moreover, before Defendant turned over any documents, he sought and received assurance from a lawyer with the regulators that his actions would be protected whistleblower activity. (Erhart Decl., ¶ 80).

Still, contrary to what Plaintiff urges, the Ninth Circuit in *Cafasso*

expressed openness to a public policy exception to enforcing a confidentiality agreement, stating that it "has some merit." *Id.* at 1062.

Subsequently courts have recognized the public policy exception to enforcing confidentiality agreements. *See., e.g., Ruhe, supra* at 1039, where Judge Carney denied a motion to strike exhibits because "[r]elators sought to expose a fraud against the government and limited their taking to documents relevant to the alleged fraud. Thus, this taking and publication was not wrongful, even in light of nondisclosure agreements, given 'the strong public policy in favor of protecting whistleblowers who report fraud against the government.' "

Likewise, in *United States v. Cancer Treatment Ctrs. of Am., supra*, the court held the whistleblower exempt from liability for breach of confidentiality agreement for disclosure to government of documents showing employer engaged in fraudulent healthcare billing. 350 F.Supp.2d at 753.

The court declined to force a whistleblower to turn over a document in *U.S. ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 152 (D.D.C. 2009) ("Enforcing a private agreement that requires a qui tam plaintiff to turn over his or her copy of a document, which is likely to be needed as evidence at trial, to the defendant who is under investigation would unduly frustrate the purpose" of the False Claims Act).

More recently, Judge Tigar held that any alleged obligation by a whistleblower not to retain or disclose the confidential documents that form the basis of his action is unenforceable as a matter of public policy because it would frustrate Congress' purpose in enacting the False Claims Act—namely, the public policy in favor of providing incentives for whistleblowers to come forward, file FCA suits, and aid the government in its investigation efforts. *Siebert v. Gene Security Network, supra*, 2013 WL 5645309 *8.[9]

Even before the cases Bofi cites, courts made similar findings of public

[9] The Court recognized that if the employee took documents bearing no relation to his claims, the employer's counterclaim would survive to address those. *Id.*

policy exceptions. *See, e.g., X Corp. v. Doe,* 805 F.Supp. 1298, 1310 n.24 (E.D. Va. 1992) ("To the extent that it prevented disclosure of evidence of a fraud on the government, that Agreement would be void as contrary to public policy.... X Corp. cannot rely on any contract to conceal illegal activity.").

In *JDS Uniphase, supra* (the second case Bofi cites), a district court in the Fourth Circuit granted summary judgment on a breach of contract claim. Obviously there was a much fuller record at the summary judgment state than here where Plaintiff seeks injunctive relief before discovery has begun.[10] The court there refused to invalidate a proprietary information agreement because of a California legislative expression of public policy.[11] It expressed its concern thus: "By no means can the policy fairly be said to authorize disgruntled employees to pilfer a wheelbarrow full of an employer's proprietary documents in violation of their contract merely because it might help them blow the whistle on an employer's violations of law, real or imagined." *Id.* at 702. The court also recognized that a whistleblower can use and disclose confidential information to his attorney in seeking advice about how to proceed with claims. *Id.* at 703-04.

The court further recognized that an employee is justified in taking documents where, as here, he fears that documents would be destroyed. *Id.* (Erhart Decl., ¶ 76). The same rationale applies where an employee reasonably fears that documents would be (or have been) altered. (Erhart Decl., ¶ 76)**.**

The final case cited by Bofi is *Renfroe*, *supra*. Once again Bofi misleads the court as to a key holding in a case. Here the court specifically *exempted* from

---

[10] Defendant has been very cooperative with Plaintiff, agreeing to a limited deposition to respond to unfounded and scurrilous allegations that he had improperly shared confidential information with short-sellers and others. The parties submitted a joint order to the Court to allow that limited deposition. (RJN).

[11] *Id.* at 701.The California legislature's proclamation states that it is their state's public policy to encourage employees to notify an appropriate government or law enforcement agency when they have reason to believe their employer is violating laws enacted for the protection of corporate shareholders, investors, employees, and the general public. 2003 Cal. Adv. Legis. Serv. 484 § 1. Of course, there are many other expressions of public policy implicated here, in SOX, Dodd-Frank and Labor Code § 1102.5.

the preliminary injunction documents taken and turned over to various law enforcement agencies. *Id.* *4.

In short, the weight of authority supports the finding that Mr. Erhart's protected whistleblowing activity trumps Bofi's attempts to enforce its confidentiality agreement. Given the likelihood that Defendant will prevail on his affirmative defenses because of his whistleblowing, Plaintiff simply cannot show it is likely to prevail.

**2. Bofi Fails to Disclose Critical Law About Its Claims.**

Mr. Erhart is clearly a whistleblower under several different statutory schemes: the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 1514A *et seq.* ("SOX"), the Dodd-Frank Act Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6 ("Dodd–Frank Act"), and California Labor Code § 1102.5. See Erhart Whistleblower Suit.

The Securities and Exchange Commission has promulgated a rule that expressly covers Mr. Erhart's conduct and bars Plaintiff's. This rule took effect more than five years ago, yet Bofi fails to cite it to the Court.

Dodd-Frank Rule 21-F provides in pertinent part:

> (a) No person may take any action to impede an individual from communicating directly with the Commission staff about a possible securities law violation, *including enforcing, or threatening to enforce, a confidentiality agreement* . . . with respect to such communications.

17 C.F.R. § 240.21F–17 (emphasis added).

This rule is among a number of regulations the SEC has promulgated under the Dodd–Frank Act. The regulations define who is a whistleblower:

> (1) You are a whistleblower if, alone or jointly with others, you provide the Commission with information pursuant to the procedures set forth in § 240.21F–9(a) of this chapter, and the information relates to a possible violation of the Federal

> securities laws (including any rules or regulations thereunder) that has occurred, is ongoing, or is about to occur. A whistleblower must be an individual. . . .

17 C.F.R. § 240.21F–2. Mr. Erhart did provide information to the SEC in the prescribed manner, and the SEC assigned numbers to his submissions (Erhart Decl., ¶ 78).

Nevertheless, the SEC, as well as recent case law, clarifies that Mr. Erhart need not meet the requirements of § 240.21F–9(a) to qualify as a whistleblower under Dodd-Frank. Release No. 75592 (S.E.C. Release No.), Release No. 34-75592, 2015 WL 4624264 (August 7, 2015)[12]; *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 154-55 (2d Cir. 2015). Internal reporting to management will suffice.

Similarly, Mr. Erhart's whistleblowing under SOX is protected even if he only reported the suspected wrongdoing internally to management, without reporting it, as he did, to the SEC and other federal regulators. Under SOX, a whistleblower may complain to:

> (A) a Federal regulatory or law enforcement agency;
> (B) any Member of Congress or any committee of Congress; or
> (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct). . . ."

15 U.S.C. § 1514A(a)(1).

California Labor Code § 1102.5 broadly covers Mr. Erhart's conduct as well:

> (a) An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over

[12] RJN, Exhibit 4.

> the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Cal.Lab.Code § 1102.5(a).

**3. <u>The Breach of Loyalty Claim Fails.</u>**

Bofi attempts to stretch a common law duty of loyalty far beyond what the law provides. It cites case law regarding employees who take steps to misappropriate information to help a competitor or begin its own business in competition with its employer. (Pltf.Mem. 17-19). These have no relevance here. California Labor Code § 2863 only mentions doing business similar to the employer's.

Most case law in California deals with higher-level managerial employees, not rank-and-file like Mr. Erhart. *See, e.g., James v. Childtime Childcare, Inc.,* 2007 WL 1589543 *3 (E.D. Cal. June 1, 2007) (duty of loyalty recognized where employee "was the director of the center, not a mere employee"); *Stokes v. Dole Nut Co.*, 41 Cal.App.4th 285, 295-96 (1995) (finding that "an employer has the right to expect the undivided loyalty of its employees," but also noting that plaintiffs "were managerial or supervisorial-level employees"); *Fowler v. Varian Assocs., Inc.*, 196 Cal.App.3d 34, 41(1987) (holding, in a case where the plaintiff was a marketing manager, that "[d]uring the term of employment, an employer is entitled to its employees' 'undivided loyalty'").

A district court case cited by Bofi denied a motion to dismiss where the employer sued a former sales clerk, finding that California looks to the Restatement as authoritative. *Otsuka v. Polo Ralph Lauren Corp.*, 2007 WL 3342721 *3 (N.D. Cal. Nov. 9, 2007). Yet the case involved alleged misuse of a company discount by a non-employee, hardly a case implicating public policy considerations. Likewise *Fowler*, *supra*, is a typical case where a manager takes steps to begin a competing business while still employed. He was unable to prove a public policy claim on those facts ("[N]o firmly established principle of public policy authorizes an employee to assist his competitors"). *Id.* at 43.

Given the very firmly established public policy protecting company whistleblowers, Bofi is unlikely to prevail on its claim of breach of the duty of loyalty.

**4. <u>Bofi's Attorney-Client Privilege Argument Fails.</u>**

Bofi suggests that the attorney-client privilege is "absolute," citing *Costco Wholesale Corp. v. Sup. Ct.*, 47 Cal.4th 725, 732-733 (2009). Pltf.Mem. 18. Yet *Costco* notes that the court must first determine the dominant nature of the relationship between a company and an in-house lawyer, who may well perform a variety of roles. *Id.* at 733. And once again Bofi fails to cite relevant case law, referenced in its own case: "Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney." *Costco*, *supra* at 742-743; *see also Greyhound Corp. v. Superior Court*, 56 Cal.2d 355, 397 (1961); *D.I. Chadbourne, Inc. v. Superior Court*, 60 Cal.2d 723, 734 (1964).

That is precisely what happened here. Mr. Erhart disclosed audit findings that Bofi and its in-house lawyer did not like, and directed Mr. Erhart to call the findings "attorney-client privileged" with no basis in fact to do so. This was done solely to conceal the information from regulators and others. (Erhart Decl., ¶ 16).

Moreover, the crime-fraud exception applies here as well. Once again Bofi omits relevant case law. It cites the basic rule in California Evidence Code §

954, but omits to mention the eight exceptions in the Evidence Code listed right after it, especially the looming exception in Evidence Code § 956:

> There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud.

Cal.Evid.Code § 956. As the Erhart Whistleblower Complaint details, the Bank should enjoy no privilege to shield wrongdoing orchestrated by its in-house counsel.

### ***B. There Is No Showing of Irreparable Harm***

Mr. Erhart, in his whistleblower capacity, has disclosed information of Bofi wrongdoing and illegal conduct. Of course Bofi may have lost some customer goodwill because of the disclosures that the bank violating a host of federal and state laws. But that does not mean an injunction should issue against Mr. Erhart. There is a strong public interest in having Bofi's illegal conduct see the light of day. Nothing in the cases upon which Bofi relies suggests that an injunction is appropriate in a case like this. (Pltf.Mem. 19-20).

While violating a confidentiality agreement could, if not excused, lead to irreparable harm in certain cases, that is simply irrelevant here, where Bofi seeks to enforce an agreement in contravention of federal law, including Dodd-Frank Rule 21-F. See Section III(A)(2), *supra* at 11.

### ***C. The Balance of Equities Tips in Defendant's Favor***

Mr. Erhart is not culpable here. He is serving the public interest by acting as a whistleblower. He has already returned everything he had in his possession anyway, and will seek it in discovery in this case and in the Erhart Whistleblower Lawsuit.

To suggest that permanent harm may come to the bank if the injunction does not issue is the rankest sort of speculation. Of course the bank will suffer

harm if, and when, regulators impose sanctions on Bofi for its wrongdoing, or Mr. Erhart prevails in his Whistleblower Lawsuit. But once again, that should not hamstring Mr. Erhart from proceeding with his claims and regaining access to the documents he rightfully possessed before.

### *D. An Injunction is Manifestly NOT in the Public Interest*

Bofi repeatedly raises the specter of Mr. Erhart's publicly disclosing confidential banking information of its customers. Yet the *only* information Mr. Erhart disclosed in his suit and to the regulators was information about accounts affiliated with the bank's CEO, who owes special fiduciary duties to those customers and many others. That single disclosure was done in the public interest. Mr. Erhart had some access to other customer information in his role as auditor, but never disclosed it. There is simply no public interest operating in favor of the Bank.

## IV. CONCLUSION

The Bank has failed to meet its burden to obtain a preliminary injunction. Mr. Erhart acted in good faith as a whistleblower. For all the reasons set forth above, the motion should be denied in its entirety.

DATED: January 19, 2016.

THE GILLAM LAW FIRM
*A Professional Law Corporation*

s/ Carol Gillam
CAROL L. GILLAM
Attorneys for Defendant Charles Matthew Erhart

# CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2016, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Southern District of California, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means.

Monique Butler