1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   POLLY TOWILL, Cal. Bar No. 120420
3  ptowill@sheppardmullin.com
   ANDRE J. CRONTHALL, Cal. Bar No. 117088
4  acronthall@sheppardmullin.com
   333 South Hope Street, 43rd Floor
5  Los Angeles, California 90071-1422
   Telephone:  213.620.1780
6  Facsimile:   213.620.1398

7  Attorneys for Plaintiff
   BofI FEDERAL BANK

8

9                 UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12  BofI FEDERAL BANK, a federal        Case No. 3:15-cv-2353-BAS-NLS
    savings bank,
13                                      **MEMORANDUM OF POINTS AND**
                 Plaintiff,             **AUTHORITIES IN SUPPORT OF**
14                                      **JOINT MOTION FOR**
          v.                            **DETERMINATION OF**
15                                      **DISCOVERY DISPUTE NO. 1**
    CHARLES MATTHEW ERHART, an
16  individual; and DOES 1-25, inclusive,   The Hon. Cynthia Bashant
                                        (Schwartz Courthouse)
17               Defendants.
                                        Magistrate Judge Nita L. Stormes
18                                      12th Floor
                                        (Carter/Keep Courthouse)
19

20

21

22

23

24

25

26

27

28

SMRH:476145615.2   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
                    DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT

1   Plaintiff BofI Federal Bank ("BofI") and Carol Gillam ("Gillam"), attorney of
2   record for Defendant Charles Matthew Erhart, submit the following joint motion for
3   a determination of Discovery Dispute No. 1 regarding BofI's subpoena to Gillam
4   (the "Subpoena").  The parties certify they have met and conferred in person in an
5   effort to resolve this issue but have reached an impasse.

6   I.   **INTRODUCTION**

7       A.   **BofI's Introduction**

8       BofI sued a former junior auditor employed in its internal audit department,
9   Charles Matthew Erhart ("Erhart") for various causes of action arising from Erhart's
10  theft and dissemination of BofI's confidential, privileged and proprietary
11  information (including private banking information, confidential regulatory
12  communications, and the social security numbers of many of BofI's customers).
13  Gillam (Erhart's attorney) is responsible for one of Erhart's primary breaches of
14  confidentiality because she referenced confidential, non-public communications
15  between BofI and the Office of the Comptroller of Currency (the "OCC") in
16  Erhart's publicly filed wrongful termination complaint.  In response to Gillam's
17  improper disclosures, the OCC wrote BofI a letter demanding that Erhart and Gillam
18  desist from further disclosure of non-public communications with the OCC.

19      BofI served its Subpoena on Gillam to obtain all communications between her
20  office and third parties (including her acknowledged communications with The New
21  York Times) concerning BofI.  This information is directly relevant to BofI's
22  substantive claims against Erhart in this action – the identity of the persons with
23  whom Erhart and his attorneys have communicated will allow BofI to identify the
24  full scope of Erhart's breaches of confidentiality.  In response to BofI's narrowly
25  tailored Subpoena, Gillam refused to produce any documents.  Instead, she served a
26  series of inapplicable boilerplate objections.  The Court should overrule Gillam's
27  meritless objections and require her to produce all documents responsive to BofI's
28  Subpoena.

### B.   Gillam's Introduction

In the latest installment of BofI's litany of motions directed at Defendant Matt Erhart to punish and silence him for filing a whistleblower lawsuit against BofI, BofI seeks to compel Mr. Erhart's counsel of record, Carol Gillam, to comply with a baseless and inappropriate subpoena.  In the instant motion, BofI continues a disturbing pattern of attempting to drive a wedge between lawyer and client and turn Ms. Gillam into a witness in the case by subpoenaing ALL communications between Ms. Gillam and third parties concerning BofI.  This comes on the heels of BofI's Motion for Determination of Waiver of Privilege, whereby BofI made the outrageous claim that it could access all of Mr. Erhart's communications with his counsel because he complied with a court order and turned over his laptop to BofI after receiving assurances of no waiver.

Plaintiff's subpoena is effectively a fishing expedition to gain access to Ms. Gillam's files so Plaintiff does not have to do the legwork to support its own baseless lawsuit.  Before the Rule 26(f) conference, and before formal discovery even began, Plaintiff issued a subpoena to Ms. Gillam, showing no effort to obtain the information it seeks through other means.  Its requests are vague and ambiguous, overbroad, intrusive into the attorney-client relationship, inappropriately request work product and privileged material, and unduly burdensome.  Nor are these requests relevant, as Plaintiff's Complaint does not allege that Ms. Gillam disseminated confidential information.  Additionally, BofI attempts to leave the door open to gain ongoing access to Ms. Gillam's litigation strategy and files by proclaiming itself the arbiter of determining her compliance with the Court's TRO.

Moreover, during the parties' meet and confer, Defendant offered the reasonable compromise that Ms. Gillam would produce communications sent out by her prior to and including the date the lawsuit was filed, October 13, 2015, the relevant date when BofI's stock price plummeted.  However, Plaintiff rejected this offer, and instead seeks to keep Ms. Gillam on the hook to provide her files to BofI

-2-

Case No. 3:15-cv-2353-BAS-NLS

SMRH:476145615.2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT

on an open-ended basis.  If the court permits this subpoena to stand, BofI will continue to use its bullying tactics to put in place a rolling records request with no end in sight, unethically drawing Ms. Gillam into this litigation.  For these reasons, Plaintiff's motion to compel should be denied in its entirety, and its subpoena to Ms. Gillam quashed.

## II.   RELEVANT BACKGROUND

### A.   BofI's Statement Of The Relevant Background

#### 1.   BofI's Complaint Against Erhart For The Theft And Dissemination Of BofI's Confidential Information

On September 23, 2013, Erhart commenced his employment at BofI as a Staff Internal Auditor.  (Cronthall Decl. Ex. A ¶ 7.)  During the course of his employment, Erhart had access to BofI's confidential, proprietary, and privileged information.  (*Id.* Ex. A ¶ 11.)  As an employee in the banking and finance industry, Erhart was under a regulatory obligation to preserve BofI's confidential information. (*Id.* Ex. A ¶¶ 15, 17.)  In addition, Erhart entered into several agreements with BofI where he agreed to safeguard BofI's confidential information (including the confidential information of its customers).  (*Id.* Ex. A ¶¶ 16, 18-21.)

During his employment, Erhart unilaterally expanded the scope of his purported investigatory efforts.  (*See id.* Ex. A ¶¶ 23-28.)  Erhart had no authority to define his own audit of investigation assignments.  (*Id.* Ex. A ¶ 25.)  Erhart also failed to complete at least nine internal audits that were assigned to him.  (*Id.* Ex. A ¶ 29.)

Between January 13, 2015 and March 11, 2015, Erhart surreptitiously converted large amounts of BofI's confidential information, including (i) information containing BofI's intellectual property; (ii) confidential and proprietary information belonging to BofI, its employees, its business counterparties, and/or its clients (including BofI's customer's private banking information and social security numbers); and (iii) information containing the non-public personal information of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT

BofI employees, business counterparties, and clients.  (*Id.* Ex. A ¶¶ 11, 30-39.)
Erhart abandoned his job on March 5, 2015 and was effectively terminated on June
9, 2015.  (*Id.* Ex. A ¶¶ 40-41.)  Erhart has shared BofI's confidential information
with his attorney, Carol Gillam.  (*See id.* Ex. B ¶ 9.)

On October 13, 2015, BofI learned that Erhart and Gillam publicly disclosed
its confidential information to The New York Times, after which BofI's stock
plummeted by 30.2% in a single day (representing hundreds of millions of dollars in
lost market capitalization).  (*Id.* Ex. A ¶ 46.)  That same day, Erhart also filed a
"whistle blower" complaint against BofI alleging (among other things) that he was
wrongfully terminated as a result of his rogue audits of BofI.  (*Id.* ¶ 3.)

On October 19, 2015, BofI initiated this action against Erhart for breach of
contract, conversion, breach of the duty of loyalty, negligence, fraud, violation of
California Penal Code Section 502, violation of the Computer Fraud and Abuse Act
(18 U.S.C. § 1030(a)(5)), and violation of California Business and Professions Code
Section 17200, *et seq.*  (*Id.* ¶ 4.)  BofI moved swiftly to stop Erhart's unlawful
distribution of BofI's confidential information.  On November 2, 2015, BofI
obtained a TRO against Erhart and his "agents" (including Gillam) requiring them to
"refrain from disclosing, reviewing, sharing, transmitting, and/or using, any
confidential, privileged, or proprietary information belonging to BofI, its employees,
its business counterparties, its customers, and/or its clients."  (*Id.* ¶ 7; Dkt. # 10.)
On November 16, 2015, the Court entered an order supplementing the TRO to
impose additional obligations on Erhart and Gillam requiring them to identify all
individuals and/or entities to whom they transmitted BofI's confidential information.
(*Id.* ¶ 8; Dkt. # 17.)

Erhart and Gillam have already improperly publicly disclosed BofI's
confidential information.  For example, on October 30, 2015, the OCC sent BofI a
letter stating that it had reviewed Erhart's purported "whistleblower" action and
determined that it disclosed "privileged non-public OCC information."  (*See id.* Ex.

1   C.)  The OCC also stated that it "believe[d] that Mr. Erhart's complaint contains

2   non-public OCC information."  (*Id.*)  Thus, there is no question that Gillam has

3   accessed BofI's confidential information and has previously disclosed it.

4        BofI believes that Erhart and Gillam have continued to disseminate BofI's

5   confidential information.  The purpose of the Subpoena is to determine the exact

6   nature and extent of Gillam's communications with third-parties concerning BofI.

7                    2.    BofI's Subpoena To Gillam

8        On February 1, 2016, BofI served a document Subpoena on Gillam to obtain

9   her communications with the media and other third parties concerning BofI.  (*Id.* Ex.

10  D.)  The Subpoena was narrowly tailored and sought only non-privileged

11  documents.  The Subpoena sought Gillam's directly relevant communications

12  regarding BofI with: (i) The New York Times; (ii) Peter Eavis (a writer for The

13  New York Times); (iii) Seeking Alpha, Inc. ("Seeking Alpha") (an investment blog

14  favored by short sellers); and (iv) non-privileged communications with third parties

15  concerning BofI.  (*See id.*)

16       On February 16, 2016, Gillam served an objection to the Subpoena via

17  overnight delivery.  (*Id*. Ex. E.)  Gillam refused to produce any documents in

18  response to the Subpoena and, instead, listed a series of boilerplate and/or

19  inapplicable objections.  (*See id.*)

20       On February 26, 2016, BofI responded to each of the objections in good faith

21  in an attempt to show Gillam that the information sought was relevant, non-

22  privileged, and easily gathered.  (*Id.* ¶ 14.)  To allow sufficient time for BofI to

23  prepare this motion, its letter requested to meet and confer in person at a mutually

24  convenient time on or before March 11, 2016 (which gave Gillam two weeks to pick

25  a date).  (*Id.*)  Gillam, however, ignored BofI's requests for a personal meeting.  On

26  March 11, 2016, BofI's attorneys called Gillam again requesting a time to meet and

27  confer in person concerning the Subpoena.  (*Id.* ¶ 15.)  Gillam did not return BofI's

28

1    call.  On March 16, 2016, BofI's attorneys sent Gillam an email again asking for a

2    meet and confer.  (*Id.* ¶ 16.)

3         On March 21, 2016, Gillam's associate, Sara Heum, and BofI's attorney,

4    Andre Cronthall, complied with this Court's requirements to meet and confer in

5    person.  (*Id.* ¶ 17.)  Despite protracted efforts, however, the parties were unable to

6    reach agreement.  During the conference, Ms. Heum confirmed that, at a minimum,

7    responsive documents existed regarding communications with The New York

8    Times.  (*Id.* ¶ 18.)  Ms. Heum also proposed a compromise.  Within two weeks of

9    the March 21, 2016 meet and confer, Ms. Heum offered to produce Gillam's pre-

10   October 13, 2015 communications with various unidentified media outlets.  (*Id.*)

11   This compromise was not acceptable to BofI for two reasons.  First, there is no

12   logical reason to limit the production to responsive documents in existence prior to

13   the litigation.  Indeed, Gillam's "post-filing" communications are relevant to her

14   compliance with the TRO.  Second, Ms. Heum's proposal to produce documents in

15   "two weeks" would have prevented BofI from moving to compel if Gillam failed to

16   produce the documents as promised.  *See* Hon. Nita Stormes Civ. Case Proc. §

17   VI.C.2.d ("rolling document productions" do not extend the deadline to move to

18   compel).  Thus, BofI informed Gillam that it would be filing this motion.

19        **B.    Gillam's Statement Of Relevant Background**

20        Defendant Charles Matthew Erhart is a whistleblower under the Sarbanes-

21   Oxley Act (18 U.S.C. § 1514A) ("SOX") and the Dodd-Frank Act (15 U.S.C. § 78u-

22   6) ("Dodd-Frank"), as well as under California Labor Code § 1102.5.  Mr. Erhart

23   filed a whistleblower lawsuit against BofI.  (*See* Case No. 15CV2287-BAS-NLS).

24   Thereafter, BofI filed the instant case.  (Ex. F, Gillam Decl. ¶3).

25        Plaintiff's claims in this lawsuit are based on allegations that Mr. Erhart

26   disclosed confidential BofI information to third parties.  The crux of BofI's claims

27   and alleged damages are that its stock prices plummeted on October 13, 2015,

28   something that occurred after Mr. Erhart filed his whistleblower lawsuit.  (Ex. A,

-6-

First Amended Complaint "FAC").  Now, in this motion, BofI takes the liberty to allege that on October 13, 2015, BofI learned that Erhart *AND* Gillam publicly disclosed confidential information to The New York Times, when Ms. Gillam is not a named Defendant in the suit.  Nor does the Complaint itself allege anywhere that she herself made any alleged leaks.  (*See* Section II. A., *infra*; Ex. A, FAC).  In fact, the Complaint alleges that BofI "learned that Erhart publicly disclosed out of context portions of the Confidential Information, through among other actions, dissemination to the New York Times and filing his complaint," and that the alleged dissemination caused BofI's stock price to plummet "30.2% in one single day."  *Id.* BofI's chief complaint about Ms. Gillam's role in the matter seems to be that she filed the lawsuit that caused BofI's stock prices to plummet.  *Id.*

BofI now claims that Erhart and Gillam are disseminating BofI's confidential information, with its only cited basis being an October 30, 2015, letter the OCC sent the parties in which it asked them to desist from disclosing non-public OCC information, which it believed Mr. Erhart's complaint contained. (Ex. F, Gillam Decl. ¶ 5; Ex. H, OCC Letter to Gillam).  The letter states that non-public OCC information is confidential and privileged, and that a private litigant who seeks non-public OCC information must submit a request to the OCC's Director of Litigation. *Id.; see also* 12 C.F.R. Section 4.34(a).

BofI is already well aware that Mr. Erhart filed a whistleblower complaint and turned over select documents to federal regulators.  (Ex. F, Gillam Decl. ¶ 6; Ex.I, Erhart Decl. in Opposition to MPI).  BofI is also already aware that Mr. Erhart did not disseminate confidential information.  On December 6, 2015, Mr. Erhart was deposed by BofI, whereby he testified that he did not share confidential information with anyone besides his counsel and federal law enforcement authorities.  (Ex. F, Gillam Decl. ¶¶ 6-7 ).  He also testified that he sent information to his mother for safekeeping before he retained counsel, when he was fearful the Bank would destroy information and potentially cause him harm, but that his mother never looked at it.

1   (Ex. I, Erhart Decl. in Opposition to MPI ¶¶ 76-81).  The parties also cooperated in

2   allowing the Bank to have forensic auditors inspect Mr. Erhart's computer.  Mr.

3   Erhart provided a declaration to Bank counsel describing the contents of information

4   on his computer.  (*Id.* at ¶ 81; *see also* Ex. B, Erhart December 3, 2015, Decl.).

5           Notwithstanding Mr. Erhart's full cooperation with BofI, the Bank served a

6   subpoena on Carol Gillam, Mr. Erhart's counsel of record on February 2, 2016.

7   (Ex. J, Heum Decl. ¶ 3).  Ms. Gillam served objections via overnight delivery on

8   February 16, 2016. (*Id.*; Ex. E, Gillam Objections.)  Following BofI's request to

9   meet and confer before March 11, 2016, Ms. Gillam did not ignore BofI's request as

10  BofI contends.  On the contrary, Ms. Gillam emailed BofI's counsel, Polly Towill,

11  on March 7, 2016, informing Ms. Towill that she was in arbitration and had two

12  days of an MSC, but was happy to talk by phone.  (Ex. F, Gillam Decl., ¶ 9)  Ms.

13  Gillam continued to work with Ms. Towill to find dates to meet and confer, emailing

14  her on March 16, 2016, to set up an in-person meet and confer for the following

15  Monday, March 21, 2016. *Id.*

16          On March 21, 2016, counsel for the parties met and conferred, during which

17  time Defendant's position and Ms. Gillam's objections to the subpoena were

18  discussed in detail.  (Ex. J, Heum Decl. ¶ 3)  Defendant offered to produce Ms.

19  Gillam's communications to media outlets prior to and including the date of filing of

20  the complaint, October 13, 2015, on the condition that BofI not file a motion to

21  compel (*not* October 30, 2016 as Plaintiff states).  *Id.*  However, BofI's counsel

22  indicated that he did not believe BofI would agree, and confirmed this position in a

23  letter dated March 23, 2016.  *Id.*  Moreover, BofI's counsel indicated that BofI

24  sought information beyond what Ms. Gillam communicated to media outlets, that it

25  was interested in communications *from* media outlets and third parties as well.  *Id.*

26  Moreover, BofI did not indicate during the meeting or the letter that the timeframe

27  of production within two weeks was problematic. *Id.*

28

# III.   Legal Standards

## A.   BofI's Statement of Legal Standards

Rule 45 of the Federal Rules of Civil Procedure provides the framework for securing from non-parties, through the use of subpoenas, documents relevant to pending litigation. FED. R. CIV. P. 45 (a), (b).  It is well settled that the scope of a Rule 45 subpoena is informed by Rule 26, which governs civil discovery generally. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).

When a discovery dispute arises, the party seeking to compel discovery has the initial burden of establishing that its request satisfies the broad relevancy requirements of Rule 26(b)(1).  *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).  Thereafter, the party opposing discovery has the burden of clarifying, explaining or supporting its objections.  *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002), *citing Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  Those opposing discovery are "required to carry a heavy burden of showing" why discovery should be denied.  *Blankenship*, 519 F.2d at 429.

## B.   Gillam's Statement of Legal Standards

Rule 45(d)(1) provides that a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  FED. R. CIV. P. 45 (d).  The court must quash or modify a subpoena if the subpoena fails to allow a reasonable time for compliance; requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden.  FED. R. CIV. P. 45 (d)(3).  Alternatively, the court may order production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated.  *Id.*

Furthermore, Rule 26(b)(2)(C) gives the court the power to limit discovery if it determines that "(i) the discovery sought is unreasonably cumulative or

1   duplicative, or can be obtained from some other source that is more convenient, less

2   burdensome, or less expensive; (ii) the party seeking discovery has had ample

3   opportunity to obtain the information by discovery in the action; or (iii) the

4   proposed discovery is outside the scope permitted by Rule 26(b)(1)."

5   Request No. 1:

6       Any and all COMMUNICATIONS between YOU and the NEW YORK

7   TIMES concerning BofI during the RELEVANT TIME PERIOD.

8   Response No. 1:

9       Objection. Defendant objects that the request is vague, ambiguous, and

10  overbroad. Defendant objects that this request calls for documents which are

11  protected by the attorney-client privilege, work product doctrine, privacy, or any

12  other privilege or right of confidentiality available under California law. Defendant

13  objects that the request is oppressive, burdensome, and meant to harass. Defendant

14  objects that the request calls for a legal conclusion and/or expert opinion. Defendant

15  objects that the request is not relevant and unlikely to lead to the discovery of

16  admissible evidence.

17  BofI's Reason to Compel Production:

18      **A.    Gillam's Communications With The New York Times Concerning
               BofI Are Relevant**

19

20      Relevant information is that which is "reasonably calculated to lead to the

21  discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).  In determining

22  whether the information sought by a subpoena is relevant, the party seeking it must

23  first tell the court its plans for the requested information.  *Gonzales v. Google, Inc.*,

24  234 F.R.D. 674, 680 (N.D. Cal. 2006).  In the comments to Rule 26(b)(1), the

25  Advisory Committee attempts to further clarify the rule:

26          The Committee intends that the parties and the court focus on the
            actual claims and defenses involved in the action. . . . A variety of
            types of information not directly pertinent to the incident in suit could
            be relevant to the claims or defenses raised in a given action. . . . For
            example, other incidents of the same type . . . could be properly
            discoverable if likely to yield or lead to the discovery of admissible

27

28

-10-

SMRH:476145615.2         MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
                         DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT

1  information.

2  Here, BofI's Request No. 1 seeks relevant information.

3  BofI filed this action after it learned that Erhart and/or his attorney had

4  wrongfully disseminated BofI's confidential information.  Gillam has tacitly

5  admitted that she communicated with The New York Times prior to filing her

6  whistleblower Complaint.  (Cronthall Decl. ¶ 18.)  Notably, whether it was

7  intentional or unintentional, Gillam has previously disclosed non-public regulatory

8  communications between BofI and the OCC.  (*Id.* Ex. C.)  BofI must review

9  Gillam's communications with The New York Times to determine whether they

10  improperly disclose BofI's confidential information.  Whether and to what extent

11  Erhart and Gillam have disclosed BofI's confidential information to third-parties

12  (such as The New York Times) is relevant to proving BofI's substantive claims

13  against Erhart for breach of his confidentiality obligations.  The nature of the

14  unauthorized disclosures to third parties is also relevant to the issue of damages.

15  Finally, despite Gillam's offer to produce all "pre-filing" communications with the

16  media, BofI must review Gillam's "post-filing" communications to monitor her

17  compliance with the Court's TRO.  In sum, Request No. 1 easily satisfies the test for

18  relevance.

19  **B.    Request No. 1 Is Not Vague, Ambiguous, Or Overbroad**

20  Gillam cannot meet her burden to show that Request No. 1 is vague or

21  ambiguous.  There is nothing vague or ambiguous about Request No. 1.  Request

22  No. 1 simply seeks Gillam's (and her office's) communications with The New York

23  Times concerning BofI.  Plainly this objection is boilerplate.  Where "the

24  responding party provides a boilerplate or generalized objection [to discovery], the

25  'objections are inadequate and tantamount to not making any objection at all.'":

26  *Makaeff v. Trump U., LLC*, 2013 U.S. Dist. LEXIS 34974, at *18 (S.D. Cal. Mar.

27  12, 2013) (quoting *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587

28  (C.D. Cal. 1999)).  Gillam's "vague and ambiguous" objection is boilerplate.

-11-

1  Accordingly, it is the equivalent to not objecting.  The Court should overrule this

2  objection.

3  **C.     Gillam Fails To Meet Her Burden To Show That Her Communications With The New York Times Are Privileged**

4

5       "A party asserting the attorney-client privilege has the burden of establishing

6  the relationship and the privileged nature of the communication."  *United States v.*

7  *Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (citation omitted).  Likewise, it is the

8  burden of the party asserting the work-product protections to establish that the work-

9  product protections apply.  *See Obesity Research Institute v. Fiber Research Int'l,*

10 2016 U.S. Dist. LEXIS 32605, *7 (S.D. Cal. Mar. 11, 2016) (placing the burden on

11 the party asserting work-product objection).  Pursuant to Rule 26(b)(5)(A)(ii) of the

12 Federal Rules of Civil Procedure, Gillam had an obligation to "describe the nature

13 of the documents, communications, or tangible things not produced or disclosed…

14 [so that BofI may] assess the claim [of privilege and/or work product]."  Here,

15 Gillam has wholly failed to satisfy her burden to show that her communications with

16 The New York Times are privileged.

17      Gillam has not identified The New York Times as a client of hers.

18 Regardless, even if Gillam could show that The New York Times was a "client" of

19 hers (and she cannot), communications concerning Erhart and BofI would not have

20 been made "in order to obtain legal advice."  *See Bauer,* 132 F.3d at 507.  Simply

21 stated, communications concerning BofI's alleged business practices would be

22 completely irrelevant to any legal advice sought by The New York Times.

23      The New York Times is also not a "litigation consultant" or other third-party

24 necessary to the attorney-client relationship between Gillam and Erhart.  *United*

25 *States v. Moscony,* 927 F.2d 742, 752 (3rd Cir. 1991) (A communication remains

26 "confidential" provided it is "not intended to be disclosed to third persons other than

27 those to whom disclosure is in furtherance of the rendition of professional legal

28 services to the client.");  *United States v. Nobles,* 422 U.S. 225, 239 (1975) (work

-12-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT

1  product may be waived by disclosure).  Accordingly, the Court should overrule

2  Gillam's baseless attorney-client privilege and work-product objections.

3      **D.    Gillam Fails To Meet Her Burden To Show That Request No. 1 Is Unduly Burdensome**

4

5      Gillam has failed to meet her burden to show that Request No. 1 is unduly

6  burdensome.  During the in person meet and confer process, BofI's attorney asked

7  whether Gillam had attempted to approximate the magnitude of responsive

8  documents.  (Cronthall Decl. ¶ 19.)  Gillam's associate responded that she had not.

9  (*Id.*)  Moreover, during the in-person meet and confer, BofI further reduced any

10  burdens by clarifying that it did not seek any documents already filed in the

11  litigation or that have been previously produced to BofI.  (*Id.*)  Gillam has failed to

12  provide any basis for its "unduly broad and burdensome" objection.  Thus, the

13  objection is boilerplate and is equivalent to not objecting at all.  *See Makaeff*, 2013

14  U.S. Dist. LEXIS 34974, at *18.  The Court should overrule this objection.

15      **E.    Gillam's "Expert Opinion" Objection Is Unintelligible**

16      The Subpoena requests documents, not testimony.  (*See* Cronthall Decl. Ex.

17  D.)  Thus, Gillam's objection that the Subpoena calls for an expert opinion is

18  unintelligible.  The New York Times is not a litigation consultant and Gillam's

19  communications with an unaffiliated third party concerning BofI do not qualify as

20  expert testimony.  Accordingly, the Court should overrule this meritless objection as

21  well.

22  Gilliam's Basis for Objections:

23      BofI has failed to meet its burden of showing that its request is relevant, and

24  its discovery request does not comport with Rule 26(b)(1).  Furthermore, Rule

25  26(b)(1) no longer permits a party to seek discovery "reasonably calculated to lead

26  to admissible evidence."  Instead, the rule provides that a party may obtain

27  nonprivileged discovery relevant to a party's claim or defense and proportional to

28  the needs of the case, considering the importance of the issues at stake in the action,

1  the amount in controversy, the parties' relative access to relevant information, the

2  parties' resources, the importance of the discovery in resolving the issues, and

3  whether the burden or expense of the proposed discovery outweighs its likely

4  benefit.  FED. R. CIV. P. Rule 26(b)(1).  Here, the request is vague and ambiguous,

5  overbroad, intrusive into the attorney-client relationship, inappropriately requests

6  work product and privileged material, and unduly burdensome.

7      **A. BofI has failed to meet its burden of showing that its request is**

8          **relevant.**

9      The issue in this litigation concerns Mr Erhart's alleged dissemination of

10  confidential information.  Yet, for the first time, in this motion, BofI takes the

11  liberty to claim that Erhart _AND_ Gillam publicly disclosed confidential information

12  to The New York Times ("NYT"), when Ms. Gillam is not a named Defendant in

13  the suit, nor does the Complaint itself allege anywhere that she herself made any

14  alleged leaks.  BofI provides absolutely no support for its claim that Ms. Gillam

15  disclosed confidential information.  Furthermore, if Ms. Gillam were disseminating

16  confidential information, why did the stock price not drop before the filing of the

17  lawsuit? The filing of Mr. Erhart's whistleblower lawsuit had a logical impact on

18  stock prices. Also, as discussed in Section II. B, _supra_, Mr. Erhart already provided

19  a declaration detailing all the disclosures he made regarding BofI and denying that

20  he ever disseminated confidential information to third parties.  Mr. Erhart also

21  testified extensively about the confidential information he had and his

22  whistleblowing activities. Yet BofI continues to casts a wide net in search of a

23  smoking gun to confirm its unfounded belief that Ms. Gillam is somehow

24  responsible for disseminating confidential information.

25      Moreover, the request itself seeks communications "between" Ms. Gillam and

26  the New York Times, not strictly communication _from_ Ms. Gillam.  How the New

27  York Times' communications to Ms. Gillam would be relevant in a claim that Mr.

28  Erhart disseminated information _to_ the NYT remains to be seen.

-14-

1    BofI's new angle is to target Ms. Gillam, now that it has exhausted the

2    information it could get out of Mr. Erhart.  BofI's allegation that Ms. Gillam

3    disseminated confidential information to the NYT is baseless, and the request is not

4    relevant to the litigation.

5        **B. The request is vague, ambiguous, overbroad, and poses an undue**

6        **burden.**

7        While BofI may claim that Ms. Gillam does not need to produce documents

8    already filed or which have been previously produced to BofI, that is not what the

9    request says.  The request asks for all communications "concerning" BofI from

10   September 23, 2013, through the date of Ms. Gillam's response to the subpoena.

11   (Ex. D, Subpoena to Gillam).  There is no limiting language that narrows the

12   requests to documents filed or produced, nor as to "confidential information" which

13   Ms. Gillam allegedly disseminated.  The request does not even attempt to purport

14   that it does not seek privileged information.

15       Furthermore, the term "concerning" is vague and ambiguous, and overbroad,

16   as is the definition of "BofI" contained in the subpoena.  The definition states that

17   the term "includes BofI's employees, agents, representatives, and other persons

18   acting on its behalf, and shall be construed either disjunctively or conjunctively as

19   necessary ***to bring within the scope of the demand that which might otherwise be***

20   ***construed to be outside its scope."*** (Ex. D, Subpoena to Gillam, emphasis added).

21   By its own admission, BofI seeks to bring within the subpoena anything that could

22   possibly be construed as outside of its scope.  The request is over-inclusive.  Ms.

23   Gillam is not familiar with each and every employee or agent of BofI and cannot

24   possibly be asked to disclose any communication that could potentially have been

25   made "concerning" such individuals.

26       Moreover, the subpoena is unduly burdensome and disproportionate under

27   rules 26 and 45.  In determining whether a subpoena is unduly burdensome, courts

28   consider "such factors as relevance, the need of the party for the documents, the

-15-

1   breadth of the document request, the time period covered by it, the particularity with

2   which the documents are described and the burden imposed." *Moon v. SCP Pool*

3   *Corp.*, 232 FRD 633, 637(CD CA 2005); see also Amini Innovation Corp. v.

4   *McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014) (where the

5   court considered undue burden and quashed subpoena of a non-party with no stake

6   in the litigation).  Concern for the unwanted burden thrust upon non-parties is a

7   factor entitled to special weight in evaluating the balance of competing needs in

8   evaluating whether to quash a nonparty subpoena. *Id.*

9       The vagueness and ambiguity of the request renders it disproportionate to the

10  needs of the case and unduly burdensome.  Moreover, BofI has the resources and

11  access to obtain the information it seeks through other means, but does not appear to

12  wish to pursue its other avenues.  Early in this litigation, and before discovery has

13  even formally commenced BofI immediately turns to Ms. Gillam for her files.

14      Additionally, by turning Ms. Gillam into a witness, BofI is intruding on the

15  attorney-client relationship and putting Ms. Gillam in a precarious situation where

16  she may have to be deposed.  The danger this burden poses to the attorney-client

17  relationship outweighs any likely benefit BofI would receive from production.  Fed.

18  R. Civ. P. Rule 26(b)(1).

19      Finally, Ms. Gillam did offer to narrow the scope of the subpoena by

20  producing communications she made to media outlets up through the date of filing

21  Mr. Erhart's complaint, which BofI refused.  Clearly, BofI wants to make its request

22  as broad as possible, creating an undue burden on Ms. Gillam.  "[T]he initiation of a

23  law suit does not, by itself, grant plaintiffs the right to rummage unnecessarily and

24  unchecked through the private affairs of anyone they choose." *Cook v. Yellow*

25  *Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990).

26      **C. The request seeks work product and privileged information.**

27      Rule 26 limits discovery to non-privileged matter, and further provides

28  protection for documents and tangible things that are prepared in anticipation of

-16-

litigation or for trial.  FED. R. CIV. P. Rule 26.  In order for lawyers to "act within the framework of our system of jurisprudence to promote justice and protect their client's interests," it is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  *Hickman v. Taylor,* 329 U.S. 495 (1947).

Here, the request seeks communications "between" Ms. Gillam and the NYT. Any communications Ms. Gillam had with the NYT provide BofI an insight into Ms. Gillam's litigation strategy and constitute work product.  Any documents responsive to this request would constitute work product because they were prepared in anticipation of litigation.

BofI not only seeks Ms. Gillam's communications *to* the New York Times, but also communications *from* the NYT.  Ms. Gillam's investigative efforts, research, and memoranda based on her communications with third parties are clearly work product.  *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 510 (S.D. Cal. 2003) (protecting witness statements as work product, regardless of whether they contain mental impressions of counsel).  Whatever information Ms. Gillam gathered in the course of representing Mr. Erhart is no business of BofI's.  The court need not look beyond this as the request is not limited to Ms. Gillam's communications *to* the NYT.

Notwithstanding, disclosure to a third party does not automatically waive the protection of the work product doctrine.  *U.S. E.E.O.C. v. ABM Industries Inc.*, 261 F.R.D. 503, 512 (E.D. Cal. 2009) (internal citation omitted).  Because one of the primary functions of the work product doctrine is to prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigation, analysis, and strategies for developing and presenting the client's case, any analysis of work product waiver issues must focus on whether the subject disclosures increased the likelihood that a current or potential opponent in litigation would gain access to the disputed documents. *Id.* (internal citations omitted).  Ms. Gillam's

-17-

1   communications with the NYT constituted a litigation strategy, and communications
2   made were privileged in that they were not widely disseminated and could
3   reasonably be expected to remain private given that Ms. Gillam is not a party to this
4   suit and that First Amendment protections and privileges apply.  Moreover, Ms.
5   Gillam was quoted in the NYT (as was Gregory Garrabrants, Bank of Internet's
6   chief executive), when the lawsuit was filed so BofI already has access to whatever
7   material *was* publicly disclosed.

8         BofI has not shown that it is prejudiced in any way from not gaining the fruits
9   of Ms. Gillam's labor.  It is free to conduct its own investigations and seek
10  discovery from other sources to lend support to its new baseless allegations.

11        **D. The subpoena was procedurally defective and did not provide**
12             **sufficient time to respond.**

13        FRCP 45(a)(4) requires that, before a subpoena is served on the person to
14  whom it is directed, a notice and copy of the subpoena must be served on each party.
15  *See also Butler v. Biocore Medical Technologies, Inc.* (10th Cir. 2003) 348 F3d
16  1163, 1173; *Pagán-Colón v. Walgreens of San Patricio, Inc.* (D PR 2010) 264 FRD
17  25, 28.  Here, and as stated in Ms. Gillam's Objections, the notice of subpoena was
18  served concurrently as an attachment to the subpoena, not in advance of service of
19  the subpoena.  (Ex. F, Gillam Decl. , Therefore, Mr. Erhart was not afforded proper
20  notice and the subpoena fails on its face. Moreover, this does not constitute adequate
21  time to respond.

22  Request No. 2:

23        Any and all COMMUNICATIONS between YOU and PETER EAVIS
24  concerning BofI during the RELEVANT TIME PERIOD.

25  Response No. 2:

26        Objection. Defendant objects that the request is vague, ambiguous, and
27  overbroad. Defendant objects that this request calls for documents which are
28  protected by the attorney-client privilege, work product doctrine, privacy, or any

1   other privilege or right of confidentiality available under California law. Defendant

2   objects that the request is oppressive, burdensome, and meant to harass. Defendant

3   objects that the request calls for a legal conclusion and/or expert opinion. Defendant

4   objects that the request is not relevant and unlikely to lead to the discovery of

5   admissible evidence.

6   <u>BofI's Reason to Compel Production:</u>

7         Peter Eavis is a writer for The New York Times and is the author of an

8   October 13, 2015 article referencing Erhart's allegations against BofI (including the

9   confidential communications with the Bank's regulators).  (Cronthall Decl. ¶ _.)

10  Gillam's objections to Request No. 2 are identical to her objections to Request No.

11  1.  Accordingly, BofI incorporates by reference its response to Gillam's objections

12  to Request No. 1.

13  <u>Gilliam's Basis for Objections:</u>

14        BofI's Request No. 2 is nearly identical to its Request No. 1, except that it

15  targets communications with Peter Eavis.  Accordingly, Defendant incorporates the

16  basis of its objections to Request No. 1 by reference herein.  Moreover, BofI's own

17  reason to compel production is based on the October 13, 2015, article authored by

18  Eavis discussing Erhart's allegations against BofI.  In other words, the article, which

19  contains statements from both Ms. Gillam, and Gregory Garrabrants, Bank of

20  Internet's chief executive, references information contained in the complaint.  There

21  is nothing to suggest that Eavis has any confidential information shared with him by

22  Ms. Gillam.

23  <u>Request No. 3:</u>

24        Any and all COMMUNICATIONS between YOU and SEEKING ALPHA

25  concerning BofI during the RELEVANT TIME PERIOD.

26  <u>Response No. 3:</u>

27        Objection. Defendant objects that the request is vague, ambiguous, and

28  overbroad. Defendant objects that this request calls for documents which are

-19-

protected by the attorney-client privilege, work product doctrine, privacy, or any other privilege or right of confidentiality available under California law. Defendant objects that the request is oppressive, burdensome, and meant to harass. Defendant objects that the request calls for a legal conclusion and/or expert opinion. Defendant objects that the request is not relevant and unlikely to lead to the discovery of admissible evidence.

BofI's Reason to Compel Production:

Seeking Alpha is a crowd sourced financial blog, which publishes articles on a broad range of stocks, asset classes, and investment strategies (including short selling). (Cronthall Decl. ¶ 10.) Given Erhart and his attorney's prior unauthorized disclosures to The New York Times, BofI began to monitor other media outlets to determine whether Erhart was continuing to leak BofI's confidential information. (*Id.* ¶ 11.) As an anonymous, crowd sourced website, Seeking Alpha is a natural platform for a rogue former employee and his attorney to continue to anonymously leak BofI's confidential information.

After Erhart's and/or Gillam's October 13, 2015 leak to The New York Times, BofI noticed a considerable uptick in BofI coverage on Seeking Alpha's website. For example, from October 13, 2015 through January 6, 2016, Seeking Alpha published 17 articles on BofI. (*Id.*) By way of comparison, during the equivalent time period prior to Erhart's October 13, 2015 leak to The New York Times (*i.e.* from July 20, 2015 to October 13, 2015), Seeking Alpha hosted only four articles on BofI. (*See id.*) BofI suspects that Erhart and/or Gillam may be coordinating with Seeking Alpha.

Whether Gillam communicated with Seeking Alpha concerning BofI is directly relevant to whether Gillam (or Erhart) disseminated BofI's confidential information. Likewise, BofI intends to trace any damages resulting from the Seeking Alpha articles to Erhart's and/or Gillam's unauthorized leaks. Gillam must

1   produce any communications she had with Seeking Alpha or affirm under oath that

2   no such communications have ever existed.

3        Gillam's objections to Request No. 3 are identical to her objections to

4   Request No. 1.  Accordingly, BofI incorporates by reference its response to Gillam's

5   objections to Request No. 1.

6   Gillam's Basis for Objections:

7        BofI's Request No.3 is nearly identical to its Request No. 1, except that it

8   targets communications with Seeking Alpha.  Accordingly, Defendant incorporates

9   the basis of its objections to Request No. 1 by reference herein.  Despite Mr.

10   Erhart's Declaration and testimony that he did not disseminate confidential

11   information, BofI continues to search for a fictional smoking gun by casting a wide

12   net and now dragging Ms. Gillam into the allegations of the suit.  This request is

13   further rendered irrelevant because it is based on the unfounded belief that Ms.

14   Gillam and Mr. Erhart are "coordinating" with Seeking Alpha.  BofI makes logical

15   leaps, asserting that confidential information must have been disseminated because

16   there was an "uptick" in publications after Mr. Erhart's whistleblower lawsuit was

17   filed, when the obvious explanation is that, of course, there would be an uptick

18   when a whistleblower publicly comes forward; publicity is a natural consequence of

19   filing a lawsuit of this nature!

20   Request No. 4:

21        Any and all COMMUNICATIONS between YOU and any persons or entities

22   YOU understood or believed to be writing articles for submission to SEEKING

23   ALPHA during the RELEVANT TIME PERIOD.

24   Response No. 4:

25        Objection. Defendant objects that the request is vague, ambiguous, and

26   overbroad. Defendant objects that this request calls for documents which are

27   protected by the attorney-client privilege, work product doctrine, privacy, or any

28   other privilege or right of confidentiality available under California law. Defendant

-21-

1  objects that the request is oppressive, burdensome, and meant to harass. Defendant

2  objects that the request calls for a legal conclusion and/or expert opinion. Defendant

3  objects that the request is not relevant and unlikely to lead to the discovery of

4  admissible evidence.

5  BofI's Reason to Compel Production:

6          Request No. 4 seeks all communications with persons Gillam believed may

7  have authored articles for Seeking Alpha.  The documents sought by Request No. 4

8  are substantively identical to the documents sought by Request No. 3.  Accordingly,

9  BofI incorporates by reference its response to Gillam's objections to Request No. 3.

10  Gilliam's Basis for Objections:

11          Defendant incorporates the basis of its objections to Request Nos. 1 and 3 by

12  reference herein.  Moreover, this request is even broader than Request Nos. 1-3, as it

13  seeks all communications with persons "believed" to be writing articles for

14  submission to Seeking Alpha.  BofI asks Ms. Gillam to step into the shoes of others

15  and read their minds as to whether they may have submitted or are submitting

16  articles.  The request is not limited to asking for confidential information provided

17  for articles and, based on BofI's own position, BofI wishes to monitor Ms. Gillam's

18  communications with third parties and media indefinitely (not through the date of

19  filing the complaint).  BofI will continue to abuse the power of subpoena to make

20  these type of requests to Ms. Gillam to "monitor" her conduct in the litigation,

21  intruding into the attorney-client relationship and freezing free speech.

22  Request No. 5:

23          Any and all COMMUNICATIONS between YOU and any persons or entities

24  YOU understood or believed to be seeking or sharing information regarding BofI,

25  including but not limited to brokerage firms, short sellers, investors, law firms,

26  investigators or others affiliated therewith.

27

28

1  Response No. 5:

2      Objection. Defendant objects that the request is vague, ambiguous, and

3  overbroad. Defendant objects that this request calls for documents which are

4  protected by the attorney-client privilege, work product doctrine, privacy, or any

5  other privilege or right of confidentiality available under California law. Defendant

6  objects that the request is oppressive, burdensome, and meant to harass. Defendant

7  objects that the request calls for a legal conclusion and/or expert opinion. Defendant

8  objects that the request is not relevant and unlikely to lead to the discovery of

9  admissible evidence.

10  BofI's Reason to Compel Production:

11      Request No. 5 seeks Gillam's communications with third parties who have

12  actively sought information concerning BofI.  Gillam and Erhart are privy to

13  confidential information concerning BofI.  Accordingly, BofI must review Gillam's

14  communications with third-parties concerning BofI to determine whether Gillam

15  and/or Erhart have again disclosed BofI's confidential information.

16      Gillam's objections to Request No. 5 are identical to her objections to

17  Request No. 1.  Accordingly, BofI incorporates by reference its response to Gillam's

18  objections to Request No. 1.

19  Gilliam's Basis for Objections:

20      Defendant incorporates the basis of his objections to Request Nos. 1 through

21  4 by reference herein.  Moreover, this request is even broader than the previous four,

22  as it requests all communications with persons "seeking or sharing" information.

23  BofI does not just seek confidential communications disseminated, it seeks

24  information others may have shared with Ms. Gillam.  Ms. Gillam's investigations

25  and information-gathering in preparation for and during litigation constitute work

26  product, which BofI absolutely is not entitled to.  Moreover, this request seeks

27  privileged information as federal regulators and agencies are third parties within the

28  meaning of this request.  BofI is already aware that Mr. Erhart blew the whistle and

-23-

had communications with regulators, communications which would be privileged. The OCC letter (Ex. H, OCC Letter to Gillam) itself states that non-public OCC information is confidential and privileged, and that a private litigant who seeks non-public OCC information must submit a request to the OCC's Director of Litigation. *Id.; see also* 12 C.F.R. Section 4.34(a).  Accordingly, Ms. Gillam cannot provide these communications and BofI must seek them through other means.

Request No. 6:

Any and all non-privileged COMMUNICATIONS between YOU and any persons or entities concerning BofI during the RELEVANT TIME PERIOD.

Response No. 6:

Objection. Defendant objects that the request is vague, ambiguous, and overbroad. Defendant objects that this request calls for documents which are protected by the attorney-client privilege, work product doctrine, privacy, or any other privilege or right of confidentiality available under California law. Defendant objects that the request is oppressive, burdensome, and meant to harass. Defendant objects that the request calls for a legal conclusion and/or expert opinion. Defendant objects that the request is not relevant and unlikely to lead to the discovery of admissible evidence.

BofI's Reason to Compel Production:

The documents sought by Request No. 6 are relevant for the reasons set forth in BofI's Reason to Compel Production in response to Request No. 5.  Gillam's objections to Request No. 5 are identical to her objections to Request No. 1. Accordingly, BofI incorporates by reference its response to Gillam's objections to Request No. 1.

Gilliam's Basis for Objections:

Defendant incorporates the basis of his objections to Request Nos. 1 through 5 by reference herein.  This request is completely overbroad as it seeks all communications concerning BofI, with anyone.  This is beyond any relevance claim

1   or demonstrated need BofI has or could credibly construct, and places the undue

2   burden on Ms. Gillam and her firm of searching all communications and

3   determining whether something was non-privileged and "concerned" BofI.

4   **IV.    CONCLUSION**

5       **A.    BofI's Conclusion**

6           For the reasons set forth above, the Court should compel Gillam to produce

7   documents in response to each of the Requests in the Subpoena.  In the alternative,

8   to the extent Gillam has no responsive documents to a particular request, the Court

9   should require Gillam to affirm that no such documents have ever existed.

10      **B.    Gillam's Conclusion**

11          BofI's subpoena is nothing but a fishing expedition, an abusive litigation

12  tactic mean to harass Ms. Gillam and further punish Mr. Erhart for blowing the

13  whistle on the bank.  If its requests are granted, BofI will continue utilizing this

14  strategy of issuing subpoenas to the attorney of record under the guise of serving as

15  a self-proclaimed arbiter of ensuring Ms. Gillam's compliance with the TRO,

16  meanwhile intruding into Ms. Gillam's mental processes and work product, and

17  compromising the attorney-client relationship.  BofI has not shown the relevance or

18  necessity of its overly broad, vague, and ambiguous subpoena.  The subpoena to Ms.

19  Gillam is improper under Rules 26 and 45.  Moreover, BofI rejected Ms. Gillam's

20  offer of compromise, demonstrating its bad faith in the process.  Defendant has no

21  doubt that the next step will be for BofI to seek Ms. Gillam's testimony, and there is

22  no knowing where it will stop.  Accordingly, Defendant and Ms. Gillam request that

23  the court quash Plaintiff's subpoena and deny the requests in their entirety.

24

25

26

27

28

1 | Dated:  April 1, 2016

2 |  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3 |

4 |  By        /s Polly Towill
5 |            POLLY TOWILL
   |            ANDRE CRONTHALL
6 |
7 |            Attorneys for Plaintiff
   |            BofI FEDERAL BANK
8 |            Email:  ptowill@sheppardmullin.com

9 | Dated:  April 1, 2016

10 |  THE GILLAM LAW FIRM

11 |

12 |  By
13 |            CAROL GILLAM

14 |
15 |            Attorneys for Defendant
   |            CHARLES MATTHEW ERHART
16 |            Email:  carol@gillamlaw.com

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

SMRH:476145615.2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT