SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
POLLY TOWILL, Cal. Bar No. 120420
ptowill@sheppardmullin.com
ANDRE J. CRONTHALL, Cal. Bar No. 117088
acronthall@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398

Attorneys for Plaintiff
BofI FEDERAL BANK

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BofI FEDERAL BANK, a federal savings bank,<br><br>    Plaintiff,<br><br>    v.<br><br>CHARLES MATTHEW ERHART, an individual; and DOES 1-25, inclusive,<br><br>    Defendants. | Case No. 3:15-cv-2353-BAS-NLS<br><br>**REVISED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1**<br><br>The Hon. Cynthia Bashant (Schwartz Courthouse)<br><br>Magistrate Judge Nita L. Stormes 12th Floor (Carter/Keep Courthouse) |

Case No. 3:15-cv-2353-MMA-JMA

SMRH:476145615.3          REVISED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT
                          MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT

Plaintiff BofI Federal Bank ("BofI") and Carol Gillam ("Gillam"), attorney of record for defendant Charles Matthew Erhart, submit the following revised joint motion for a determination of Discovery Dispute No. 1.  BofI has supplemented its portion of the joint motion per the Court's *ex parte* order [Dkt. # 42].  Gillam's portion remains unchanged.  The parties certify they have conferred in person re Gillam's objections to the Subpoena, but were unable to reach a resolution.

## I.  <u>INTRODUCTION</u>

### A.    BofI's Introduction

BofI sued a former junior auditor employed in its internal audit department, Charles Matthew Erhart ("Erhart") for various causes of action arising from Erhart's theft and dissemination of BofI's confidential, privileged and proprietary information (including private banking information, confidential regulatory communications, and the non-public personal information of BofI employees and clients).  Gillam (Erhart's attorney) was complicit in one of Erhart's primary breaches of confidentiality when she provided BofI's confidential information to The New York Times and disclosed confidential regulatory information in Erhart's complaint.  After these improper disclosures, BofI's stock price dropped by 30.2%.  The Office of the Comptroller of Currency (the "OCC") has admonished Erhart and Gillam for improperly disclosing BofI's confidential regulatory communications.

BofI served its Subpoena on Gillam to obtain her communications with the media (including her admitted communications with The New York Times) and her other non-privileged communications with third parties concerning BofI.  This information is relevant to BofI's substantive claims against Erhart in this action – the identity of the persons with whom Erhart and his attorneys have communicated will allow BofI to identify the full scope of Erhart's breaches of confidentiality.  Nevertheless, Gillam has refused to produce any documents and has instead served a series of inapplicable boilerplate objections.

SMRH:476145615.3

Gillam argues the Subpoena is improper because compliance will: (i) reveal "her litigation strategy," (ii) be unduly burdensome, and (iii) result in the production of irrelevant information. As explained below, these are not a valid objection.

Gillam's communications with the media cannot be privileged because various media outlets are not Gillam's clients.[1] Nor are communications with the media necessary to further the attorney-client relationship between Gillam and Erhart. Likewise, Gillam's communications with the media are not work product. A media outlet is not a consultant, employee, or agent of Erhart and/or Gillam. Nor is coordinating with the media a privileged "legal strategy." Given the media's role as a public watchdog, any such disclosure would be directly contrary to confidentiality and would act as a waiver. In sum, the media has no bearing on Gillam's investigation of Erhart's whistleblower claims concerning his employment at BofI.

Gillam also objects on grounds of undue burden. Again, however, Gillam fails to show that her communications with third parties concerning BofI have been so voluminous that it would be unduly burdensome to respond to the Subpoena. In fact, if Gillam **has** had extensive communications with third parties concerning BofI, then such communications would be evidence of a conspiracy to use BofI's confidential information as part of a stock market manipulation scheme.

Finally, Gillam objects that the information sought by the Subpoena is irrelevant. Gillam's objection strains credulity. BofI brought this action for damages because Erhart disseminated BofI's confidential information to third parties. It is undisputed that Gillam participated in Erhart's primary breaches by improperly disclosing regulatory information in Erhart's Complaint and by coordinating with The New York Times. Whether Gillam and Erhart continue to

---

[1] The Subpoena also seeks other *non-privileged* communications with third parties.

Case No. 3:15-cv-2353-BAS-NLS
SMRH:476145615.3    REVISED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT

improperly disclose BofI's confidential information to other third parties is relevant to BofI's substantive claims against Erhart and to BofI's damages.

## B. Gillam's Introduction

In the latest installment of BofI's litany of motions directed at Defendant Matt Erhart to punish and silence him for filing a whistleblower lawsuit against BofI, BofI seeks to compel Mr. Erhart's counsel of record, Carol Gillam, to comply with a baseless and inappropriate subpoena. In the instant motion, BofI continues a disturbing pattern of attempting to drive a wedge between lawyer and client and turn Ms. Gillam into a witness in the case by subpoenaing ALL communications between Ms. Gillam and third parties concerning BofI. This comes on the heels of BofI's Motion for Determination of Waiver of Privilege, whereby BofI made the outrageous claim that it could access all of Mr. Erhart's communications with his counsel because he complied with a court order and turned over his laptop to BofI after receiving assurances of no waiver.

Plaintiff's subpoena is effectively a fishing expedition to gain access to Ms. Gillam's files so Plaintiff does not have to do the legwork to support its own baseless lawsuit. Before the Rule 26(f) conference, and before formal discovery even began, Plaintiff issued a subpoena to Ms. Gillam, showing no effort to obtain the information it seeks through other means. Its requests are vague and ambiguous, overbroad, intrusive into the attorney-client relationship, inappropriately request work product and privileged material, and unduly burdensome. Nor are these requests relevant, as Plaintiff's Complaint does not allege that Ms. Gillam disseminated confidential information. Additionally, BofI attempts to leave the door open to gain ongoing access to Ms. Gillam's litigation strategy and files by proclaiming itself the arbiter of determining her compliance with the Court's TRO.

Moreover, during the parties' meet and confer, Defendant offered the reasonable compromise that Ms. Gillam would produce communications sent out by her prior to and including the date the lawsuit was filed, October 13, 2015, the

relevant date when BofI's stock price plummeted.  However, Plaintiff rejected this offer, and instead seeks to keep Ms. Gillam on the hook to provide her files to BofI on an open-ended basis.  If the court permits this subpoena to stand, BofI will continue to use its bullying tactics to put in place a rolling records request with no end in sight, unethically drawing Ms. Gillam into this litigation.  For these reasons, Plaintiff's motion to compel should be denied in its entirety, and its subpoena to Ms. Gillam quashed.

## II.    RELEVANT BACKGROUND

### A.    BofI's Statement Of The Relevant Background

#### 1.    BofI's Complaint Against Erhart For The Theft And Dissemi-nation Of BofI's Confidential Information

On September 23, 2013, Erhart commenced his employment at BofI as a Staff Internal Auditor.  (Cronthall Decl. Ex. A (BofI's Complaint) ¶ 7.)  During the course of his employment, Erhart had access to BofI's confidential, proprietary, and privileged information.  (*Id.* Ex. A ¶ 11.)  As an employee in the banking and finance industry, Erhart was under a regulatory obligation to preserve BofI's confidential information.  (*Id.* Ex. A ¶¶ 15, 17.)  In addition, Erhart entered into several agreements with BofI where he agreed to safeguard BofI's confidential information (including that of its customers).  (*Id.* Ex. A ¶¶ 16, 18-21.)

During his employment, Erhart unilaterally expanded the scope of his purported investigatory efforts.  (*See id.* Ex. A ¶¶ 23-28.)  Erhart had no authority to define his own audit assignments.  (*Id.* Ex. A ¶ 25.)  Erhart also failed to complete at least nine internal audits that were assigned to him.  (*Id.* Ex. A ¶ 29.)

Between January 13, 2015 and March 11, 2015, Erhart surreptitiously converted large amounts of BofI's confidential information, including (i) information containing BofI's intellectual property; (ii) confidential and proprietary information belonging to BofI, its employees, its business counterparties, and/or its clients; and (iii) information containing the non-public personal information of BofI

-4-

employees, business counterparts, and clients. (*Id.* Ex. A ¶¶ 11, 30-39.) Erhart went on medical leave on March 5, 2015, exhausted his medical leave on May 15, 2015, and was effectively terminated on June 9, 2015. (*Id.* Ex. A ¶¶ 40-41.) Importantly, Erhart concedes he has shared BofI's confidential information with his attorney, Carol Gillam. (*See id.* Ex. B (Dec. 3, 2015 Erhart Decl.) ¶ 9.)

On or about October 13, 2015, BofI learned that Erhart and Gillam publicly disclosed its confidential information to The New York Times, after which BofI's stock plummeted by 30.2% in a single day (representing hundreds of millions of dollars in lost market capitalization). (*Id.* Ex. A ¶ 46.) That same day, Erhart also filed a "whistleblower" complaint against BofI alleging (among other things) that he was wrongfully terminated as a result of his rogue audits of BofI. (*Id.* ¶ 3.)

On October 19, 2015, BofI initiated this action against Erhart for breach of contract, conversion, breach of the duty of loyalty, negligence, fraud, violation of California Penal Code Section 502, violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030(a)(5)), and violation of California Business and Professions Code Section 17200, *et seq.* (*Id.* ¶ 4.) BofI moved swiftly to stop Erhart's unlawful distribution of BofI's confidential information. On November 2, 2015, BofI obtained a TRO against Erhart and his "agents" (including Gillam) requiring them to "refrain from disclosing, reviewing, sharing, transmitting, and/or using, any confidential, privileged, or proprietary information belonging to BofI, its employees, its business counterparts, its customers, and/or its clients." (*Id.* ¶ 7; Dkt. # 10.) On November 16, 2015, the Court entered an order supplementing the TRO to impose additional obligations on Erhart and Gillam requiring them to identify all individuals and/or entities to whom they transmitted BofI's confidential information. (*Id.* ¶ 8; Dkt. # 17.)

Erhart and Gillam have already improperly publicly disclosed BofI's confidential information. For example, on October 30, 2015, the OCC sent BofI a letter stating that it had reviewed Erhart's purported "whistleblower" action and

determined that it disclosed "privileged non-public OCC information." (*See id.* Ex. C (October 30, 2015 OCC Letter to BofI).) The OCC also stated that it "believe[d] that Mr. Erhart's complaint contains non-public OCC information." (*Id.*) Thus, Gillam has previously accessed and distributed BofI's confidential information.

BofI believes that Erhart and Gillam have continued to disseminate BofI's confidential information. ***The purpose of the Subpoena is to determine the nature and extent of Gillam's communications with third-parties concerning BofI.***

### 2.  BofI's Subpoena To Gillam

On February 1, 2016, BofI served a document Subpoena on Gillam to obtain her communications with the media and other third parties concerning BofI. (*Id.* Ex. D (BofI's Subpoena to Gillam).) The Subpoena was narrowly tailored and sought only non-privileged documents. The Subpoena sought Gillam's directly relevant communications regarding BofI with: (i) The New York Times; (ii) Peter Eavis (a writer for The New York Times); (iii) Seeking Alpha, Inc. ("Seeking Alpha") (an investment blog favored by short sellers); and (iv) non-privileged communications with third parties concerning BofI. (*See id.*)

On February 16, 2016, Gillam served an objection to the Subpoena via overnight delivery. (*Id.* Ex. E (Gillam's Objections to BofI's Subpoena).) Gillam refused to produce any documents in response to the Subpoena and, instead, listed a series of boilerplate and/or inapplicable objections. (*See id.*)

On February 26, 2016, BofI responded to each of the objections in good faith in an attempt to show Gillam that the information sought was relevant, non-privileged, and easily gathered. (*Id.* ¶ 14.) To allow sufficient time for BofI to prepare this motion, its letter requested to meet and confer in person at a mutually convenient time on or before March 11, 2016 (which gave Gillam two weeks to pick a date). (*Id.*) Gillam, however, ignored BofI's requests for a personal meeting as required by the rules. On March 11, 2016, BofI's attorneys called Gillam again requesting a time to meet and confer in person concerning the Subpoena. (*Id.* ¶ 15.)

SMRH:476145615.3

REVISED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT

Gillam did not return BofI's call. On March 16, 2016, BofI's attorneys sent Gillam an email again asking for a meet and confer. (*Id.* ¶ 16.)

On March 21, 2016, Gillam's associate, Sara Heum, and BofI's attorney, Andre Cronthall, complied with this Court's requirements to meet and confer in person. (*Id.* ¶ 17.) Despite protracted efforts, however, the parties were unable to reach agreement. During the conference, Ms. Heum confirmed that, at a minimum, responsive documents existed regarding communications with The New York Times. (*Id.* ¶ 18.) Ms. Heum also proposed a compromise. Two weeks after the March 21, 2016 meet and confer, Ms. Heum offered to produce Gillam's pre-October 13, 2015 communications with various unidentified media outlets. (*Id.*) This compromise was not acceptable to BofI for two reasons. First, there is no logical reason to limit the production to responsive documents in existence prior to the litigation. Indeed, Gillam's "post-filing" communications are relevant to her compliance with the TRO. Moreover, despite Gillam's claim that the only relevant date is October 13, 2015 (which corresponds with a massive drop in BofI's stock price), Erhart and his agents have a continuing contractual confidentiality obligation irrespective of prior improper leaks. Second, Ms. Heum's proposal to produce documents in "two weeks" would have prevented BofI from moving to compel if Gillam failed to produce the documents as promised. *See* Hon. Nita Stormes Civ. Case Proc. § VI.C.2.d. Thus, BofI informed Gillam that it would file this motion.

**B.    Gillam's Statement Of Relevant Background**

Defendant Charles Matthew Erhart is a whistleblower under the Sarbanes-Oxley Act (18 U.S.C. § 1514A) ("SOX") and the Dodd-Frank Act (15 U.S.C. § 78u-6) ("Dodd-Frank"), as well as under California Labor Code § 1102.5. Mr. Erhart filed a whistleblower lawsuit against BofI. (*See* Case No. 15CV2287-BAS-NLS). Thereafter, BofI filed the instant case. (Ex. F, Gillam Decl. ¶3).

Plaintiff's claims in this lawsuit are based on allegations that Mr. Erhart disclosed confidential BofI information to third parties. The crux of BofI's claims

and alleged damages are that its stock prices plummeted on October 13, 2015, something that occurred after Mr. Erhart filed his whistleblower lawsuit. (Ex. A, First Amended Complaint "FAC"). Now, in this motion, BofI takes the liberty to allege that on October 13, 2015, BofI learned that Erhart *AND* Gillam publicly disclosed confidential information to The New York Times, when Ms. Gillam is not a named Defendant in the suit. Nor does the Complaint itself allege anywhere that she herself made any alleged leaks. (*See* Section II. A., *infra*; Ex. A, FAC). In fact, the Complaint alleges that BofI "learned that Erhart publicly disclosed out of context portions of the Confidential Information, through among other actions, dissemination to the New York Times and filing his complaint," and that the alleged dissemination caused BofI's stock price to plummet "30.2% in one single day." *Id.* BofI's chief complaint about Ms. Gillam's role in the matter seems to be that she filed the lawsuit that caused BofI's stock prices to plummet. *Id.*

BofI now claims that Erhart and Gillam are disseminating BofI's confidential information, with its only cited basis being an October 30, 2015, letter the OCC sent the parties in which it asked them to desist from disclosing non-public OCC information, which it believed Mr. Erhart's complaint contained. (Ex. F, Gillam Decl. ¶ 5; Ex. H, OCC Letter to Gillam). The letter states that non-public OCC information is confidential and privileged, and that a private litigant who seeks non-public OCC information must submit a request to the OCC's Director of Litigation. *Id.; see also* 12 C.F.R. Section 4.34(a).

BofI is already well aware that Mr. Erhart filed a whistleblower complaint and turned over select documents to federal regulators. (Ex. F, Gillam Decl. ¶ 6; Ex.I, Erhart Decl. in Opposition to MPI). BofI is also already aware that Mr. Erhart did not disseminate confidential information. On December 6, 2015, Mr. Erhart was deposed by BofI, whereby he testified that he did not share confidential information with anyone besides his counsel and federal law enforcement authorities. (Ex. F, Gillam Decl. ¶¶ 6-7 ). He also testified that he sent information to his mother for

safekeeping before he retained counsel, when he was fearful the Bank would destroy information and potentially cause him harm, but that his mother never looked at it. (Ex. I, Erhart Decl. in Opposition to MPI ¶¶ 76-81). The parties also cooperated in allowing the Bank to have forensic auditors inspect Mr. Erhart's computer. Mr. Erhart provided a declaration to Bank counsel describing the contents of information on his computer. (*Id.* at ¶ 81; *see also* Ex. B, Erhart December 3, 2015, Decl.).

Notwithstanding Mr. Erhart's full cooperation with BofI, the Bank served a subpoena on Carol Gillam, Mr. Erhart's counsel of record on February 2, 2016. (Ex. J, Heum Decl. ¶ 3). Ms. Gillam served objections via overnight delivery on February 16, 2016. (*Id.*; Ex. E, Gillam Objections.) Following BofI's request to meet and confer before March 11, 2016, Ms. Gillam did not ignore BofI's request as BofI contends. On the contrary, Ms. Gillam emailed BofI's counsel, Polly Towill, on March 7, 2016, informing Ms. Towill that she was in arbitration and had two days of an MSC, but was happy to talk by phone. (Ex. F, Gillam Decl., ¶ 9) Ms. Gillam continued to work with Ms. Towill to find dates to meet and confer, emailing her on March 16, 2016, to set up an in-person meet and confer for the following Monday, March 21, 2016. *Id.*

On March 21, 2016, counsel for the parties met and conferred, during which time Defendant's position and Ms. Gillam's objections to the subpoena were discussed in detail. (Ex. J, Heum Decl. ¶ 3) Defendant offered to produce Ms. Gillam's communications to media outlets prior to and including the date of filing of the complaint, October 13, 2015, on the condition that BofI not file a motion to compel (*not* October 30, 2016 as Plaintiff states). *Id.* However, BofI's counsel indicated that he did not believe BofI would agree, and confirmed this position in a letter dated March 23, 2016. *Id.* Moreover, BofI's counsel indicated that BofI sought information beyond what Ms. Gillam communicated to media outlets, that it was interested in communications *from* media outlets and third parties as well. *Id.*

Moreover, BofI did not indicate during the meeting or the letter that the timeframe of production within two weeks was problematic. *Id.*

## III.   Legal Standards

### A.   BofI's Statement of Legal Standards

Rule 45 of the Federal Rules of Civil Procedure provides the framework for securing from non-parties, through the use of subpoenas, documents relevant to pending litigation. FED. R. CIV. P. 45 (a), (b).  It is well settled that the scope of a Rule 45 subpoena is informed by Rule 26, which governs civil discovery generally. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).  "Once the party seeking discovery establishes that the request meets this relevancy requirement, 'the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections.'"  *Nehad v. Browder,* 2016 U.S. Dist. LEXIS 49252, at * 4 (S.D. Cal. Apr. 11, 2016) (citations omitted).

### B.   Gillam's Statement of Legal Standards

Rule 45(d)(1) provides that a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  FED. R. CIV. P. 45 (d).  The court must quash or modify a subpoena if the subpoena fails to allow a reasonable time for compliance; requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden.  FED. R. CIV. P.

45 (d)(3). Alternatively, the court may order production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated. *Id.*

Furthermore, Rule 26(b)(2)(C) gives the court the power to limit discovery if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

Request No. 1:

Any and all COMMUNICATIONS between YOU and the NEW YORK TIMES concerning Bofl during the RELEVANT TIME PERIOD.

Response No. 1:

Objection. Defendant objects that the request is vague, ambiguous, and overbroad. Defendant objects that this request calls for documents which are protected by the attorney-client privilege, work product doctrine, privacy, or any other privilege or right of confidentiality available under California law. Defendant objects that the request is oppressive, burdensome, and meant to harass. Defendant objects that the request calls for a legal conclusion and/or expert opinion. Defendant objects that the request is not relevant and unlikely to lead to the discovery of admissible evidence.

BofI's Reason to Compel Production:

### A. Gillam's Communications With The New York Times Concerning BofI Are Relevant

Relevant information is non-privileged information that is "relevant to any party's claim or defense" so long as it is "proportional to the needs of the case" in

light of the factors set forth in Rule 26(b)(1). Here, BofI's Request No. 1 seeks relevant information.

BofI filed this action after it learned that Erhart and/or his attorney had wrongfully disseminated BofI's confidential information. Gillam has tacitly admitted that she communicated with The New York Times prior to filing her whistleblower Complaint. (Cronthall Decl. ¶ 18.) Notably, whether it was intentional or unintentional, Gillam has previously disclosed non-public regulatory communications between BofI and the OCC. (*Id.* Ex. C.) Gillam's prior conduct shows that she cannot be trusted to safeguard BofI's confidential information. Although Gillam argues that the Subpoena seeks irrelevant information because she "is not named Defendant in [BofI's] suit[,]" Gillam is Erhart's agent. Thus, Gillam's disclosure of BofI's confidential information and any damages arising therefrom are attributable to Erhart.

Whether and to what extent Erhart and Gillam have disclosed BofI's confidential information to third-parties (such as The New York Times) is relevant to proving BofI's substantive claims against Erhart for breach of his confidentiality obligations. Likewise, any communications from The New York Times to Gillam regarding BofI are relevant because they may reveal (i) the nature of the information concerning BofI which has been provided to The New York Times and (ii) the identity of the persons disseminating BofI's confidential information. The nature of the unauthorized disclosures to third parties is also relevant to the issue of damages.

Despite Gillam's offer to produce all "pre-filing" communications with the media, BofI must review Gillam's "post-filing" communications to monitor her compliance with the Court's TRO. In addition, Erhart's decision to file a putative whistleblower complaint does not abolish his (and his agents') obligations under his various confidentiality agreements with BofI.

Finally, as explained below in response to Gillam's "burden" objection, the information requested through the Subpoena is proportional to the needs of this

-12-

SMRH:476145615.3

REVISED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT

case. Determining whether and to what extent Erhart and Gillam have disseminated BofI's confidential information goes to the heart of Bofi's claims in this action. Conversely, Gillam has submitted no evidence to show that the burden of gathering and producing the information sought by the Subpoena outweighs BofI's interest in investigating its claims. In sum, Request No. 1 easily satisfies the test for relevance.

## B. Request No. 1 Is Not Vague, Ambiguous, Or Overbroad

Gillam cannot meet her burden to show that Request No. 1 is vague or ambiguous. Although Gillam claims that Request No. 1 is "overbroad" and "seeks to bring within the subpoena anything that could possibly be construed as outside of its scope[,]" the reality is that Request No. 1 simply seeks Gillam's (and her office's) communications with The New York Times concerning BofI. To the extent Gillam had any genuine confusion regarding what BofI was seeking through Request No. 1 (and the Subpoena in general), she could have sought clarification during the in person meet and confer process. She did not do so. Accordingly, Gillam cannot withhold responsive documents on the basis of her "vague and ambiguous" objection.

Where "the responding party provides a boilerplate or generalized objection [to discovery], the 'objections are inadequate and tantamount to not making any objection at all.'": *Makaeff v. Trump U., LLC*, 2013 U.S. Dist. LEXIS 34974, at *18 (S.D. Cal. Mar. 12, 2013) (quoting *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999)). Gillam's "vague and ambiguous" objection is boilerplate. Accordingly, it is the equivalent to not objecting. The Court should overrule this objection.

## C. Gillam Fails To Meet Her Burden To Show That Her Communications With The New York Times Are Privileged

"A party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication." *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (citation omitted). Pursuant to Rule

-13-

SMRH:476145615.3

REVISED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT
MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT

26(b)(5)(A)(ii) of the FEDERAL RULES OF CIVIL PROCEDURE, Gillam had an obligation to "describe the nature of the documents, communications, or tangible things not produced or disclosed… [so that BofI may] assess the claim [of privilege and/or work product]." Here, Gillam has failed to satisfy her burden to show that her communications with The New York Times are privileged.

Gillam has not identified The New York Times as a client of hers.[2] Moreover, any communications regarding BofI to The New York Times would not be "confidential" and are not "necessary" to the attorney-client relationship between Gillam and Erhart. *See U.S. v. Ruehle,* 583 F.3d 600, 612 (9th Cir. 2009) ("any voluntary disclosure of information to a third party waives the attorney-client privilege, regardless of whether such disclosure later turns out to be harmful.").

The New York Times is also not a "litigation consultant" or other third-party agent necessary to the attorney-client relationship between Gillam and Erhart. *United States v. Moscony,* 927 F.2d 742, 752 (3rd Cir. 1991) (A communication remains "confidential" provided it is "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client."); *United States v. Nobles,* 422 U.S. 225, 239 (1975) (work product may be waived by disclosure).

"The work product doctrine is a 'qualified privilege' that protects certain materials prepared by an attorney acting for his client in anticipation of litigation." *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010); FED. R. CIV. P.

---

[2] Regardless, even if Gillam could show that The New York Times was a "client" of hers (and she cannot), communications concerning Erhart and BofI would not have been made "in order to obtain legal advice." *See Bauer,* 132 F.3d at 507 (the party asserting the privilege is obliged by federal law to establish the privileged nature of the communications and, if necessary, to segregate the privileged information from the non-privileged information.). Communications concerning BofI's alleged business practices would be completely irrelevant to any legal advice sought by The New York Times.

26(b)(3). To qualify as work product under Rule 26(b)(3)(A), documents must be (1) prepared in anticipation of litigation or trial; and (2) prepared by or for another party or by or for that other party's representative. *In re Grand Jury Subpoena (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004). It is the burden of the party asserting the work product protections to establish that the work product protections apply. *Skynet Elec. Co. Ltd. v. Flextronics Int'l Ltd.*, 2013 U.S. Dist. LEXIS 176372 at *5-6 (N.D. Cal. Dec. 16, 2013)

Although Gillam argues that her communications with The New York Times (and other media outlets) are work product, she has failed to satisfy her burden of showing that the work product protections apply. Despite being notified by BofI back in February that Gillam would have to provide a privilege log if she intended to assert work product protections, Gillam has not produced a privilege log identifying documents that purportedly qualify for work product protections.

Regardless, Gillam's communications with the media are ***not*** attorney work product. *See In re Prograf Antitrust Litig.*, 2013 U.S. Dist. LEXIS 63594, at *10 (D. Mass. May 3, 2013) ("communications between… outside counsel and employees of public relations firms… are neither privileged nor protected work product… [because defendant] has not shown that communications with either firm were necessary, or at least highly useful, for the rendering of legal advice."); *Doe v. Soc'y of the Missionaries of the Sacred Heart,* 2014 U.S. Dist. LEXIS 6079, at *14 (N.D. Ill. May 1, 2014) (denying work product protections to email forwarded to plaintiff's counsel regarding public relations firm's strategy to "generate media coverage" of the litigation). Here, Gillam's communications regarding BofI with The New York Times and other media outlets may have been designed to generate media coverage of the litigation or may have intended to improperly affect BofI's stock price; but these communications were ***not*** "necessary" or "highly useful" for the rendering of legal advice to Erhart. The reason Gillam has failed to do so is

SMRH:476145615.3
REVISED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1; JOINT STATEMENT

simple – her communications with the media breach confidentiality and are collateral to her investigation into Erhart's putative whistle-blower claims.

Accordingly, the Court should overrule Gillam's baseless attorney-client privilege and work product objections.[3]

### D.    Gillam Fails To Meet Her Burden To Show That Request No. 1 Is Unduly Burdensome

Gillam has failed to meet her burden to show that Request No. 1 is unduly burdensome. During the in person meet and confer process, BofI's attorney asked whether Gillam had attempted to approximate the magnitude of responsive documents. (Cronthall Decl. ¶ 19.) Gillam's associate responded that she had not. (*Id.*) Moreover, during the in-person meet and confer, BofI further reduced any burdens by clarifying that it did not seek any documents already filed in the litigation or that have been previously produced to BofI. (*Id.*) Gillam's associate also conceded that Gillam had communicated with The New York Times prior to the filing of Erhart's action and offered to produce those communications after BofI's deadline to file a motion to compel would have run. (*Id.* ¶ 18.) Despite Gillam's offer, however, she has continued to withhold documents that she concedes are relevant and not subject to a production objection.

Gillam has failed to provide any basis for its "unduly broad and burdensome" objection. Thus, the objection is boilerplate and is equivalent to not objecting at all. *See Makaeff*, 2013 U.S. Dist. LEXIS 34974, at *18.

### E.    Gillam's "Expert Opinion" Objection Is Unintelligible

The Subpoena requests documents, not testimony. (*See* Cronthall Decl. Ex. D.) Thus, Gillam's objection that the Subpoena calls for an expert opinion is unintelligible. The New York Times is not a litigation consultant and Gillam's

---

[3]    Gillam also argues that the Subpoena seeks to turn her into a witness. The Subpoena asks for documents, not testimony.

communications with an unaffiliated third party concerning BofI do not qualify as expert testimony.  Thus, the Court should overrule this meritless objection as well.

**F.    Gillam's Claims That The Subpoena Is Procedurally Defective And That She Had "Insufficient Time To Respond" Are Baseless**

Federal Rule 45(a)(4) provides:  "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."  The Advisory Committee Notes to the 2013 amendment to Rule 45(a) explain that the purpose of the notice requirement is to enable the other parties to object to the subpoena or to serve a subpoena for additional materials.  Here, Gillam's objection is meritless because she is Erhart's attorney and received notice of the Subpoena when she was served with the Subpoena.  Naturally, Gillam cannot claim that she would serve a her own subpoena for "additional materials" on herself.  Likewise, BofI did not hinder Gillam's ability to serve her objections to the Subpoena.

The Subpoena also provided more than sufficient time for Gillam to comply.  The Subpoena gave Gillam 18 days to provide responsive materials.  In addition, BofI would have accepted a complete production at any time during the 45-day meet and confer period.  BofI presumes that Gillam's communications with The New York Times are not so voluminous that they would require more than 60 days to gather.  Again, the Court should overrule Gillam's meritless objections.

Gilliam's Basis for Objections:

BofI has failed to meet its burden of showing that its request is relevant, and its discovery request does not comport with Rule 26(b)(1).  Furthermore, Rule 26(b)(1) no longer permits a party to seek discovery "reasonably calculated to lead to admissible evidence."  Instead, the rule provides that a party may obtain nonprivileged discovery relevant to a party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action,

the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. Rule 26(b)(1). Here, the request is vague and ambiguous, overbroad, intrusive into the attorney-client relationship, inappropriately requests work product and privileged material, and unduly burdensome.

### A. BofI has failed to meet its burden of showing that its request is relevant.

The issue in this litigation concerns Mr Erhart's alleged dissemination of confidential information. Yet, for the first time, in this motion, BofI takes the liberty to claim that Erhart *AND* Gillam publicly disclosed confidential information to The New York Times ("NYT"), when Ms. Gillam is not a named Defendant in the suit, nor does the Complaint itself allege anywhere that she herself made any alleged leaks. BofI provides absolutely no support for its claim that Ms. Gillam disclosed confidential information. Furthermore, if Ms. Gillam were disseminating confidential information, why did the stock price not drop before the filing of the lawsuit? The filing of Mr. Erhart's whistleblower lawsuit had a logical impact on stock prices. Also, as discussed in Section II. B, *supra*, Mr. Erhart already provided a declaration detailing all the disclosures he made regarding BofI and denying that he ever disseminated confidential information to third parties. Mr. Erhart also testified extensively about the confidential information he had and his whistleblowing activities. Yet BofI continues to casts a wide net in search of a smoking gun to confirm its unfounded belief that Ms. Gillam is somehow responsible for disseminating confidential information.

Moreover, the request itself seeks communications "between" Ms. Gillam and the New York Times, not strictly communication *from* Ms. Gillam. How the New York Times' communications to Ms. Gillam would be relevant in a claim that Mr. Erhart disseminated information *to* the NYT remains to be seen.

Case No. 3:15-cv-2353-BAS-NLS

BofI's new angle is to target Ms. Gillam, now that it has exhausted the information it could get out of Mr. Erhart. BofI's allegation that Ms. Gillam disseminated confidential information to the NYT is baseless, and the request is not relevant to the litigation.

**B. The request is vague, ambiguous, overbroad, and poses an undue burden.**

While BofI may claim that Ms. Gillam does not need to produce documents already filed or which have been previously produced to BofI, that is not what the request says. The request asks for all communications "concerning" BofI from September 23, 2013, through the date of Ms. Gillam's response to the subpoena. (Ex. D, Subpoena to Gillam). There is no limiting language that narrows the requests to documents filed or produced, nor as to "confidential information" which Ms. Gillam allegedly disseminated. The request does not even attempt to purport that it does not seek privileged information.

Furthermore, the term "concerning" is vague and ambiguous, and overbroad, as is the definition of "BofI" contained in the subpoena. The definition states that the term "includes BofI's employees, agents, representatives, and other persons acting on its behalf, and shall be construed either disjunctively or conjunctively as necessary ***to bring within the scope of the demand that which might otherwise be construed to be outside its scope.***" (Ex. D, Subpoena to Gillam, emphasis added). By its own admission, BofI seeks to bring within the subpoena anything that could possibly be construed as outside of its scope. The request is over-inclusive. Ms. Gillam is not familiar with each and every employee or agent of BofI and cannot possibly be asked to disclose any communication that could potentially have been made "concerning" such individuals.

Moreover, the subpoena is unduly burdensome and disproportionate under rules 26 and 45. In determining whether a subpoena is unduly burdensome, courts consider "such factors as relevance, the need of the party for the documents, the

breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Moon v. SCP Pool Corp.*, 232 FRD 633, 637(CD CA 2005); *see also Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014) (where the court considered undue burden and quashed subpoena of a non-party with no stake in the litigation). Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in evaluating whether to quash a nonparty subpoena. *Id.*

The vagueness and ambiguity of the request renders it disproportionate to the needs of the case and unduly burdensome. Moreover, BofI has the resources and access to obtain the information it seeks through other means, but does not appear to wish to pursue its other avenues. Early in this litigation, and before discovery has even formally commenced BofI immediately turns to Ms. Gillam for her files.

Additionally, by turning Ms. Gillam into a witness, BofI is intruding on the attorney-client relationship and putting Ms. Gillam in a precarious situation where she may have to be deposed. The danger this burden poses to the attorney-client relationship outweighs any likely benefit BofI would receive from production. Fed. R. Civ. P. Rule 26(b)(1).

Finally, Ms. Gillam did offer to narrow the scope of the subpoena by producing communications she made to media outlets up through the date of filing Mr. Erhart's complaint, which BofI refused. Clearly, BofI wants to make its request as broad as possible, creating an undue burden on Ms. Gillam. "[T]he initiation of a law suit does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose." *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990).

### C. The request seeks work product and privileged information.

Rule 26 limits discovery to non-privileged matter, and further provides protection for documents and tangible things that are prepared in anticipation of

-20-

litigation or for trial. FED. R. CIV. P. Rule 26. In order for lawyers to "act within the framework of our system of jurisprudence to promote justice and protect their client's interests," it is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495 (1947).

Here, the request seeks communications "between" Ms. Gillam and the NYT. Any communications Ms. Gillam had with the NYT provide BofI an insight into Ms. Gillam's litigation strategy and constitute work product. Any documents responsive to this request would constitute work product because they were prepared in anticipation of litigation.

BofI not only seeks Ms. Gillam's communications *to* the New York Times, but also communications *from* the NYT. Ms. Gillam's investigative efforts, research, and memoranda based on her communications with third parties are clearly work product. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 510 (S.D. Cal. 2003) (protecting witness statements as work product, regardless of whether they contain mental impressions of counsel). Whatever information Ms. Gillam gathered in the course of representing Mr. Erhart is no business of BofI's. The court need not look beyond this as the request is not limited to Ms. Gillam's communications *to* the NYT.

Notwithstanding, disclosure to a third party does not automatically waive the protection of the work product doctrine. *U.S. E.E.O.C. v. ABM Industries Inc.*, 261 F.R.D. 503, 512 (E.D. Cal. 2009) (internal citation omitted). Because one of the primary functions of the work product doctrine is to prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigation, analysis, and strategies for developing and presenting the client's case, any analysis of work product waiver issues must focus on whether the subject disclosures increased the likelihood that a current or potential opponent in litigation would gain access to the disputed documents. *Id.* (internal citations omitted). Ms. Gillam's

1 communications with the NYT constituted a litigation strategy, and communications
2 made were privileged in that they were not widely disseminated and could
3 reasonably be expected to remain private given that Ms. Gillam is not a party to this
4 suit and that First Amendment protections and privileges apply.  Moreover, Ms.
5 Gillam was quoted in the NYT (as was Gregory Garrabrants, Bank of Internet's
6 chief executive), when the lawsuit was filed so BofI already has access to whatever
7 material *was* publicly disclosed.

8     BofI has not shown that it is prejudiced in any way from not gaining the fruits
9 of Ms. Gillam's labor.  It is free to conduct its own investigations and seek
10 discovery from other sources to lend support to its new baseless allegations.

11     **D. The subpoena was procedurally defective and did not provide
       sufficient time to respond.**
12

13     FRCP 45(a)(4) requires that, before a subpoena is served on the person to
14 whom it is directed, a notice and copy of the subpoena must be served on each party.
15 *See also Butler v. Biocore Medical Technologies, Inc.* (10th Cir. 2003) 348 F3d
16 1163, 1173; *Pagán-Colón v. Walgreens of San Patricio, Inc.* (D PR 2010) 264 FRD
17 25, 28.  Here, and as stated in Ms. Gillam's Objections, the notice of subpoena was
18 served concurrently as an attachment to the subpoena, not in advance of service of
19 the subpoena.  (Ex. F, Gillam Decl. , Therefore, Mr. Erhart was not afforded proper
20 notice and the subpoena fails on its face. Moreover, this does not constitute adequate
21 time to respond.

22 Request No. 2:

23     Any and all COMMUNICATIONS between YOU and PETER EAVIS
24 concerning BofI during the RELEVANT TIME PERIOD.

25 Response No. 2:

26     Objection. Defendant objects that the request is vague, ambiguous, and
27 overbroad. Defendant objects that this request calls for documents which are
28 protected by the attorney-client privilege, work product doctrine, privacy, or any

-22-

other privilege or right of confidentiality available under California law. Defendant objects that the request is oppressive, burdensome, and meant to harass. Defendant objects that the request calls for a legal conclusion and/or expert opinion. Defendant objects that the request is not relevant and unlikely to lead to the discovery of admissible evidence.

BofI's Reason to Compel Production:

Peter Eavis is a writer for The New York Times and is the author of an October 13, 2015 article referencing Erhart's allegations against BofI (including the confidential OCC communications). (Cronthall Decl. ¶ 9.) Gillam's objections to Request No. 2 are identical to her objections to Request No. 1. Accordingly, BofI incorporates by reference its response to Gillam's objections to Request No. 1.

Gilliam's Basis for Objections:

BofI's Request No. 2 is nearly identical to its Request No. 1, except that it targets communications with Peter Eavis. Accordingly, Defendant incorporates the basis of its objections to Request No. 1 by reference herein. Moreover, BofI's own reason to compel production is based on the October 13, 2015, article authored by Eavis discussing Erhart's allegations against BofI. In other words, the article, which contains statements from both Ms. Gillam, and Gregory Garrabrants, Bank of Internet's chief executive, references information contained in the complaint. There is nothing to suggest that Eavis has any confidential information shared with him by Ms. Gillam.

Request No. 3:

Any and all COMMUNICATIONS between YOU and SEEKING ALPHA concerning BofI during the RELEVANT TIME PERIOD.

Response No. 3:

Objection. Defendant objects that the request is vague, ambiguous, and overbroad. Defendant objects that this request calls for documents which are protected by the attorney-client privilege, work product doctrine, privacy, or any

other privilege or right of confidentiality available under California law. Defendant objects that the request is oppressive, burdensome, and meant to harass. Defendant objects that the request calls for a legal conclusion and/or expert opinion. Defendant objects that the request is not relevant and unlikely to lead to the discovery of admissible evidence.

BofI's Reason to Compel Production:

Seeking Alpha is a crowd-sourced financial blog that publishes articles on a broad range of stocks, asset classes, and investment strategies (including short selling). (Cronthall Decl. ¶ 10.) As an anonymous, crowd-sourced website, Seeking Alpha is a natural platform for a rogue former employee and his attorney to continue to anonymously leak BofI's confidential information. Thus, Given Erhart's and his attorney's prior unauthorized disclosures to The New York Times, BofI began to monitor other media outlets to determine whether Erhart was continuing to leak BofI's confidential information. (*Id.* ¶ 11.)

After Erhart's and/or Gillam's October 13, 2015 leak to The New York Times, BofI noticed a considerable uptick in BofI coverage on Seeking Alpha's website. For example, from October 13, 2015 through January 6, 2016, Seeking Alpha published 17 articles on BofI. (*Id.*) By way of comparison, during the equivalent time period prior to Erhart's October 13, 2015 leak to The New York Times (*i.e.* from July 20, 2015 to October 13, 2015), Seeking Alpha hosted only four articles on BofI. (*See id.*) BofI suspects that Erhart and/or Gillam may be coordinating with Seeking Alpha.

Whether Gillam communicated with Seeking Alpha concerning BofI is directly relevant to whether Gillam (or Erhart) disseminated BofI's confidential information. Likewise, BofI intends to trace any damages resulting from the Seeking Alpha articles to Erhart's and/or Gillam's unauthorized leaks. Gillam argues that there is no foundation for BofI's belief that Gillam and Erhart have coordinated with Seeking Alpha. However, Gillam could have put this this inquiry

to rest by stating in her Declaration that no such communications exist. Tellingly, she has not do so. The Court should infer that such communications exist.

Gillam's objections to Request No. 3 are identical to her objections to Request No. 1. Accordingly, BofI incorporates by reference its response to Gillam's objections to Request No. 1.

Gilliam's Basis for Objections:

BofI's Request No.3 is nearly identical to its Request No. 1, except that it targets communications with Seeking Alpha. Accordingly, Defendant incorporates the basis of its objections to Request No. 1 by reference herein. Despite Mr. Erhart's Declaration and testimony that he did not disseminate confidential information, BofI continues to search for a fictional smoking gun by casting a wide net and now dragging Ms. Gillam into the allegations of the suit. This request is further rendered irrelevant because it is based on the unfounded belief that Ms. Gillam and Mr. Erhart are "coordinating" with Seeking Alpha. BofI makes logical leaps, asserting that confidential information must have been disseminated because there was an "uptick" in publications after Mr. Erhart's whistleblower lawsuit was filed, when the obvious explanation is that, of course, there would be an uptick when a whistleblower publicly comes forward; publicity is a natural consequence of filing a lawsuit of this nature!

Request No. 4:

Any and all COMMUNICATIONS between YOU and any persons or entities YOU understood or believed to be writing articles for submission to SEEKING ALPHA during the RELEVANT TIME PERIOD.

Response No. 4:

Objection. Defendant objects that the request is vague, ambiguous, and overbroad. Defendant objects that this request calls for documents which are protected by the attorney-client privilege, work product doctrine, privacy, or any other privilege or right of confidentiality available under California law. Defendant

objects that the request is oppressive, burdensome, and meant to harass. Defendant objects that the request calls for a legal conclusion and/or expert opinion. Defendant objects that the request is not relevant and unlikely to lead to the discovery of admissible evidence.

BofI's Reason to Compel Production:

Request No. 4 seeks all communications with persons Gillam believed may have authored articles for Seeking Alpha. BofI notes that Gillam's basis for objection tacitly concedes that she has had significant non-privileged discussions with third parties concerning the litigation and BofI. However, Gillam provides no explanation for her behavior. Communicating with third parties concerning non-public information of a publicly traded company is consistent with a desire to manipulate BofI's stock price.

The documents sought by Request No. 4 are substantively identical to the documents sought by Request No. 3. Accordingly, BofI incorporates by reference its response to Gillam's objections to Request No. 3.

Gilliam's Basis for Objections:

Defendant incorporates the basis of its objections to Request Nos. 1 and 3 by reference herein. Moreover, this request is even broader than Request Nos. 1-3, as it seeks all communications with persons "believed" to be writing articles for submission to Seeking Alpha. BofI asks Ms. Gillam to step into the shoes of others and read their minds as to whether they may have submitted or are submitting articles. The request is not limited to asking for confidential information provided for articles and, based on BofI's own position, BofI wishes to monitor Ms. Gillam's communications with third parties and media indefinitely (not through the date of filing the complaint). BofI will continue to abuse the power of subpoena to make these type of requests to Ms. Gillam to "monitor" her conduct in the litigation, intruding into the attorney-client relationship and freezing free speech.

Request No. 5:

Any and all COMMUNICATIONS between YOU and any persons or entities YOU understood or believed to be seeking or sharing information regarding BofI, including but not limited to brokerage firms, short sellers, investors, law firms, investigators or others affiliated therewith.

Response No. 5:

Objection. Defendant objects that the request is vague, ambiguous, and overbroad. Defendant objects that this request calls for documents which are protected by the attorney-client privilege, work product doctrine, privacy, or any other privilege or right of confidentiality available under California law. Defendant objects that the request is oppressive, burdensome, and meant to harass. Defendant objects that the request calls for a legal conclusion and/or expert opinion. Defendant objects that the request is not relevant and unlikely to lead to the discovery of admissible evidence.

BofI's Reason to Compel Production:

Request No. 5 seeks Gillam's communications with third parties who have actively sought information concerning BofI. Gillam and Erhart are privy to confidential information concerning BofI. Accordingly, BofI must review Gillam's communications with third parties concerning BofI to determine whether Gillam and/or Erhart have again disclosed BofI's confidential information. In addition, documents responsive to this Request may reveal if Gillam and/or Erhart have conspired with others as part of a market manipulation scheme.

Gillam's objections to Request No. 5 are identical to her objections to Request No. 1. Accordingly, BofI incorporates by reference its response to Gillam's objections to Request No. 1.

Gilliam's Basis for Objections:

Defendant incorporates the basis of his objections to Request Nos. 1 through 4 by reference herein. Moreover, this request is even broader than the previous four,

as it requests all communications with persons "seeking or sharing" information. BofI does not just seek confidential communications disseminated, it seeks information others may have shared with Ms. Gillam. Ms. Gillam's investigations and information-gathering in preparation for and during litigation constitute work product, which BofI absolutely is not entitled to. Moreover, this request seeks privileged information as federal regulators and agencies are third parties within the meaning of this request. BofI is already aware that Mr. Erhart blew the whistle and had communications with regulators, communications which would be privileged. The OCC letter (Ex. H, OCC Letter to Gillam) itself states that non-public OCC information is confidential and privileged, and that a private litigant who seeks non-public OCC information must submit a request to the OCC's Director of Litigation. *Id.; see also* 12 C.F.R. Section 4.34(a). Accordingly, Ms. Gillam cannot provide these communications and BofI must seek them through other means.

Request No. 6:

Any and all non-privileged COMMUNICATIONS between YOU and any persons or entities concerning BofI during the RELEVANT TIME PERIOD.

Response No. 6:

Objection. Defendant objects that the request is vague, ambiguous, and overbroad. Defendant objects that this request calls for documents which are protected by the attorney-client privilege, work product doctrine, privacy, or any other privilege or right of confidentiality available under California law. Defendant objects that the request is oppressive, burdensome, and meant to harass. Defendant objects that the request calls for a legal conclusion and/or expert opinion. Defendant objects that the request is not relevant and unlikely to lead to the discovery of admissible evidence.

BofI's Reason to Compel Production:

The documents sought by Request No. 6 are relevant for the reasons set forth in BofI's Reason to Compel Production in response to Request No. 5. Gillam's

objections to Request No. 5 are identical to her objections to Request No. 1. Accordingly, BofI incorporates by reference its response to Gillam's objections to Request No. 1.

Gilliam's Basis for Objections:

Defendant incorporates the basis of his objections to Request Nos. 1 through 5 by reference herein. This request is completely overbroad as it seeks all communications concerning BofI, with anyone. This is beyond any relevance claim or demonstrated need BofI has or could credibly construct, and places the undue burden on Ms. Gillam and her firm of searching all communications and determining whether something was non-privileged and "concerned" BofI.

## IV. CONCLUSION

### A. BofI's Conclusion

BofI tried to work cooperative with Gillam to obtain documents in response to the Subpoena, but Gillam has refused to produce anything – even documents she concedes are unobjectionable. BofI is entitled to an comprehensive response to its Subpoena. Thus, the Court should compel Gillam to produce documents in response to each of the Requests in the Subpoena. In the alternative, the Court should require Gillam to affirm that no such documents have ever existed.

### B. Gillam's Conclusion

BofI's subpoena is nothing but a fishing expedition, an abusive litigation tactic mean to harass Ms. Gillam and further punish Mr. Erhart for blowing the whistle on the bank. If its requests are granted, BofI will continue utilizing this strategy of issuing subpoenas to the attorney of record under the guise of serving as a self-proclaimed arbiter of ensuring Ms. Gillam's compliance with the TRO, meanwhile intruding into Ms. Gillam's mental processes and work product, and compromising the attorney-client relationship. BofI has not shown the relevance or necessity of its overly broad, vague, and ambiguous subpoena. The subpoena to Ms. Gillam is improper under Rules 26 and 45. Moreover, BofI rejected Ms.

Gillam's offer of compromise, demonstrating its bad faith in the process. Defendant has no doubt that the next step will be for BofI to seek Ms. Gillam's testimony, and there is no knowing where it will stop. Accordingly, Defendant and Ms. Gillam request that the court quash Plaintiff's subpoena and deny the requests in their entirety.

Dated: April 13, 2016

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      _/s Polly Towill_
POLLY TOWILL
ANDRE CRONTHALL

Attorneys for Plaintiff
BofI FEDERAL BANK
Email:  ptowill@sheppardmullin.com

Dated: April 13, 2016

THE GILLAM LAW FIRM

By      _s/Carol Gillam_
CAROL GILLAM

Attorneys for Defendant
CHARLES MATTHEW ERHART
Email:  carol@gillamlaw.com