UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BofI FEDERAL BANK, a federal savings bank,<br><br>                              Plaintiff,<br><br>v.<br><br>CHARLES MATTHEW ERHART, an individual; and DOES 1-25, inclusive,<br><br>                              Defendant. | Case No.:  15cv2353 BAS (NLS)<br><br>**ORDER DETERMINING JOINT MOTION FOR DISCOVERY DISPUTE NO. 1 AND GRANTING PLAINTIFF'S MOTION TO COMPEL [Dkt. Nos. 39, 43]** |

      Plaintiff BofI Federal Bank (BofI) filed an action against its former employee, defendant Charles Matthew Erhart, for federal computer fraud and various state claims based on his alleged theft and dissemination of BofI's confidential, privileged and proprietary information.  Now, BofI and third party Carol Gillam, counsel of record for Erhart, present this joint discovery motion to determine the propriety of discovery requests sent to Ms. Gillam through a Rule 45 subpoena.  For the following reasons, the court **GRANTS** BofI's motion to compel responses to the subpoena.

1

## RELEVANT BACKGROUND

### 1. The First Amended Complaint and Erhart's Action.

On September 23, 2013, BofI, a federal savings bank, hired Erhart as an entry level staff internal auditor in its headquarters in San Diego. First Amended Complaint (FAC) ¶¶ 4, 7-9 [Dkt. No. 12]. As a staff internal auditor, Erhart was assigned to prepare certain audits of BofI's operations under the supervision of the Vice President of Internal Audits. FAC ¶ 10. Through his job Erhart had access to BofI's intellectual property, confidential and proprietary information, and personal information for BofI employees and business counterparts and clients. FAC ¶ 11.

On March 5, 2015, BofI management learned that Erhart failed to complete at least nine internal audits assigned to him and that he had conducted his own "rogue" and unapproved investigations. FAC ¶¶ 28, 29. On March 6, 2015, Erhart requested, and BofI granted, an unpaid leave of absence under the Family Medical Leave Act. FAC ¶ 40. The leave of absence ended on May 15, 2015. FAC ¶ 40. But Erhart never returned to work. FAC ¶ 40. On June 9, 2015, BofI sent Erhart a letter telling him that because he abandoned his job, his employment was terminated as of June 9, 2015.

On October 13, 2015, Erhart filed a complaint in this court against BofI alleging whistleblower retaliation, wrongful termination and other claims. Ex. G; *see Erhart v. BofI*, 15cv2287 BAS (NLS). He alleges that he uncovered numerous violations of state and federal law and notified BofI through the appropriate chain of management. Ex. G ¶ 3. BofI alleges that on that on October 13, it learned that Erhart publicly disclosed some of the confidential information he obtained from BofI both to the New York Times and in the complaint he filed. FAC ¶ 46. On that same day, BofI's stock price plummeted 30.2%. FAC ¶ 46. On October 19, 2015, BofI filed this action, contending that Erhart's disclosures caused BofI's stock price to plummet, resulting in hundreds of millions of dollars in lost market capitalization. FAC ¶ 46; Jt. Mtn., p.5.

/ / /
/ / /

**2. BofI's TRO.**

The court granted the parties' joint motion for a Temporary Restraining Order (TRO) against Erhart on November 10, 2015. Under the TRO Erhart and his agents are to refrain from disclosing, copying, destroying, deleting or altering any of BofI's confidential information. Dkt. No. 10. Also, Erhart was to return to BofI's counsel any confidential information under his possession, custody or control. Dkt. No. 10. The court also granted the parties' joint request to allow BofI to take a limited deposition of Erhart and to issue some subpoenas before Erhart filed an answer to the FAC.

Erhart was deposed on December 6, 2015, and testified that he did not share confidential information with anyone other than his counsel and federal law enforcement authorities. Ex. F, Gillam Decl. ¶¶ 6-7. He further testified that he sent information to his mother for safekeeping before he retained counsel because he feared the bank would destroy the information, and that his mother never looked at it. Ex. I ¶¶ 76-81. BofI had forensic auditors inspect Erhart's computer. Ex. I ¶ 81.

**3. The Subpoena.**

BofI suspects that Erhart's attorney, Carol Gillam, was complicit in disseminating the information when she provided BofI's confidential information to The New York Times and disclosed confidential regulatory information in the whistleblower complaint. BofI served a subpoena on Gillam to obtain her non-privileged communications with the media and other third parties concerning BofI. Gillam objects to all requests.

BofI asserts that "***[t]he purpose of the Subpoena is to determine the nature and extent of Gillam's communications with third-parties concerning BofI.***" Jt. Mtn, p.6 (emphasis in original). Specifically, the subpoena seeks Gillam's communications regarding BofI with (1) The New York Times; (2) Peter Eavis, a writer for The New York Times; (3) Seeking Alpha, Inc., an investment blog allegedly favored by short sellers; (4) people that write articles for submission to Seeking Alpha; (5) people seeking or sharing information on BofI, such as brokerage firms, short sellers, investors, law

firms, investigators and others; and (6) any person during the time period September 23, 2013 to the present. Ex. D.

The parties met and conferred on this issue. Gillam offered to produce her pre-October 13, 2015 communications with various unidentified media outlets. Cronthall Decl. ¶ 18. BofI did not accept this offer because it found no reason to limit the production to only pre-litigation communications, as they assert that any post-filing communications would be relevant to the TRO.

**DISCUSSION**

**1. Legal Standard.**

Federal Rules of Civil Procedure 26 and 45 govern discovery from nonparties by subpoena. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774,779 (9th Cir. 1994) (applying both rules to motion to quash subpoena). Under Rule 45, on a timely motion, the issuing court must modify or quash a subpoena that requires disclosure of privileged material not subject to waiver, or if it "subjects a person to undue burden." Fed. R. Civ. Proc. 45(d)(3)(A)(iii)-(iv).

BofI argues that the information sought is relevant to its claims and to damages. Gillam argues that the subpoena is improper because it (a) seeks irrelevant information; (b) would reveal her litigation strategy and thus violate the work product doctrine; (c) is vague, ambiguous and overbroad; (d) is unduly burdensome; and (e) is procedurally defective.

**2. Relevance of Documents Sought.**

Although relevance under Rule 26 is not listed as a consideration in Rule 45, "courts have incorporated relevance as a factor when determining motions to quash a subpoena." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D.Cal. 2005) (citation omitted). The scope of discovery is limited to information "that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Once the propounding party establishes that the information sought is

relevant, "'the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections.'" *Nehad v. Browder*, 2016 WL 1428069, at *1; 2016 U.S. Dist. LEXIS 49252, at *4 (S.D. Cal. Apr. 11, 2016) (Stormes, J.) (citations omitted).

BofI argues that the subpoena requests relevant and discoverable information because the identity of the persons with whom Erhart and his attorneys communicated will let BofI identify the full scope of Erhart's breaches of confidentiality. BofI asserts that Gillam tacitly admitted she communicated with The New York Times before filing the whistleblower complaint. BofI also believes Gillam disclosed confidential information in the complaint and cites to an October 30, 2015 letter that the Office of the Comptroller of Currency (OCC) sent to the parties, which asked them to desist from disclosing non-public OCC information that OCC believes was contained in Erhart's complaint. Ex. H. Whether and to what extent Erhart and Gillam disclosed BofI's confidential information to third parties, BofI argues, is relevant to proving the substantive claims of breach of confidentiality and damages. Further, it argues that any communications *from* The New York Times to Gillam regarding BofI are relevant because they may reveal (1) the nature of the information provided to The New York Times; and (2) the identity of any person disseminating BofI's confidential information.

Gillam argues that she is not a named defendant in the suit and that BofI's chief complaint is that she filed the lawsuit that caused BofI's stock prices to plummet. She also argues that any communications *from* The New York Times could not be relevant to a claim that Erhart disseminated information *to* The New York Times. Finally, Gillam argues that if she is compelled to respond to the subpoena, BofI will next seek her testimony, which will turn her into a witness and intrude upon Erhart's attorney-client privilege.

Applying the liberal standard of Rule 26, the court finds the documents sought here are relevant to the claims in this case. Even though Gillam is not a named defendant, she is Erhart's attorney and thus is acting as his agent. The major factual issue of this case—

whether and to what extent Erhart or any of his agents disseminated BofI's confidential information—is the heart of most, if not all, the claims asserted.  Communications regarding BofI with The New York Times or any other reporters or third parties are relevant to whether and what extent Erhart disseminated any confidential information belonging to BofI.  This finding applies to communications both *to* and *from* Gillam, as any communications to her may speak to the nature of any information that Gillam provided as well as to the identity of any recipients of that information.  The court thus overrules Gillam's relevance objection.

### 3. Work Product Protection.

Gillam objects to the subpoena based on work product doctrine.  She says that any communications she had with The New York Times would provide BofI an insight to her litigation strategy.  She argues that her investigative efforts, research, and memoranda based on her communications with third parties are protected as work product.  She also argues that disclosure to third parties does not automatically waive work product protection.  The court notes that the subpoena seeks only communications and not any of Gillam's research or memoranda.  The court therefore considers Gillam's objection as to the content of any communication and the fact that a communication took place.

The work product doctrine affords a qualified protection from discovery for material obtained and prepared by an attorney or an attorney's agent "in anticipation of litigation." *Hickman v. Taylor*, 329 U.S. 495 (1947).  "Under the work product doctrine, material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial may be immune from discovery." *Bozzuto v. Cox*, 255 F.R.D. 673, 677 (C.D. Cal. 2009); Fed.R.Civ.P. 26(b)(3)(A).   It is a qualified immunity rather than a privilege. *Bozzuto*, 255 F.R.D. at 677 (citations omitted).  The attorney who prepared the work is entitled to the immunity and has the burden to prove that work product protection applies. *Id.*

Work product immunity is meant "to guard against the divulging of attorney's strategies and legal impressions, it does not protect facts concerning the creation of work

product or *facts contained within the work product*." *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (emphasis in original) (citations omitted). Opinion work product, though, "containing an attorney's mental impressions or legal strategies, enjoys nearly absolute immunity and can be discovered only in very rare circumstances." *Id.* Only where the discovery of certain facts would inherently reveal an attorney's mental impressions does work product protection extend to those facts. *Id.; Gen-Probe v. Becton, Dickinson & Co.*, 2011 WL 997189, at *2; 2011 U.S. Dist. LEXIS 27961, at *7 (S.D. Cal. Mar. 18, 2011) (Stormes, J.) (extending work product protection to contact information for witnesses because it would reveal which witnesses counsel interviewed).

"Unlike issues of attorney-client privilege, issues concerning the work-product doctrine are procedural and thus governed by Federal Rule of Civil Procedure 26(b)(3)." *Great American Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F.Supp.2d 1084, 1090 (N.D. Cal. 2009). To show entitlement to work product protection, the responding party must "(1) expressly make the claim; and (2) describe the nature of the documents, communications, or tangible things not produced or disclosed -- and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). A requesting party can overcome the immunity by showing "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *Bozzuto*, 255 F.R.D. at 678.

Gillam argues that any of her communications with The New York Times would provide insight into her litigation strategy and would constitute work product because they were prepared in anticipation of litigation. Jt. Mtn., p.21. She further argues her investigative efforts, research and memoranda based on those communications are work product. *Id.* Though she asserts work product protection, Gillam never produced a privilege log. Having made an initial claim of work product immunity, Gillam must now provide a privilege log to BofI to substantiate her claim so that BofI can properly evaluate it.

To guide Gillam in preparing her privilege log, the court notes that the only type of documents sought in the subpoena are "communications," which BofI defines as "any document delivered to or sent from one person to another, or any writing which records, in whole or part or in summary, any statement or utterance made by one person to another." Ex. D, p.1.  Considering this definition of "communications," it seems that actual communications, such as a letter or email between Gillam and a third party, would ordinarily not be protected as work product.  If the "communication" is a note that Gillam wrote to memorialize a conversation with a third party, any facts contained within Gillam's notes would likewise not be protected as work product.

The court overrules Gillam's work product objection without prejudice.  Gillam must produce the responsive documents.  If she believes that any are entitled to work product protection, she must produce a privilege log that describes the nature of the communications "in a manner that, without revealing information itself privileged or protected, will enable [BofI] to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

### 4. Objections re: Vagueness, Ambiguity and Breadth.

Gillam argues the requests are vague and ambiguous as to the term "concerning BofI."  She also argues they are overbroad as to the term "BofI" because BofI includes employees, agents, representatives and other persons acting on its behalf, and Gillam says she is not familiar with each employee and agent of BofI.  BofI responds that Gillam did not seek clarification of either of these terms during the meet and confer.

By making only general assertions, the court finds that Gillam does not meet her burden to support these objections.  "Where, as here, the responding party provides a boilerplate or generalized objection, the 'objections are inadequate and tantamount to not making any objection at all.'" *Makaeff v. Trump University, LLC*, 2013 WL 990918, at *6; 2013 U.S. Dist. LEXIS 34974, at *18 (S.D. Cal. Mar. 12, 2013) (citations omitted).  The court, therefore, overrules Gillam's objections as to vagueness, ambiguity and breadth.

///

**5. Undue Burden.**

Gillam argues that the subpoena is unduly burdensome and disproportionate to the needs of the case. She argues that BofI can obtain the information it seeks through other means. Finally, she argues the potential burden to the attorney-client relationship outweighs any likely benefit BofI would receive from production. BofI responds that Gillam has not attempted to approximate the number of responsive documents, and states that it offered to reduce any burden by clarifying that it did not seek any documents already filed or previously produced to BofI.

Even though the court finds the information sought is relevant that relevance may be outweighed by the asserted burden to produce responsive documents. When determining whether the probative value outweighs the burden to produce documents, the court must balance the parties' competing interests. *In re Google Litigation*, 2011 WL 6113000, at *3; 2011 U.S. Dist. LEXIS 140656, at *12 (N.D. Cal. Dec. 7, 2011). When considering the burden, "[t]he touchstone of discovery remains relevance, however broadly that term may be construed." *Visto Corp. v. Smartner Information Sys., Ltd.*, 2007 WL 218771, at *4; 2007 U.S. Dist. LEXIS 8481, at *12, (N.D. Cal., Jan. 29, 2007).

Here, the court established that the documents sought are relevant to the factual basis that forms the heart of most, if not all, the claims. Gillam has not presented any evidence as to the physical burden of production. Regarding her suspicion that BofI is trying to turn her into a witness in this case so as to sabotage her attorney-client relationship with Erhart, the documents sought are simply documents that do not require her testimony. At this point the court finds that any threat to Gillam's attorney-client relationship is conjecture, and there is not enough evidence to quash the subpoena based on Gillam's suspicion. The court, therefore, overrules Gillams undue burden objection.

**6. Procedural Defect.**

Gillam argues that the subpoena is procedurally defective because (1) Erhart did not receive proper notice of the subpoena; and (2) 17 days was not an adequate time for her to respond to the subpoena.

Gillam argues the notice of subpoena was served concurrently as an attachment to the subpoena, and not in advance of service of the subpoena.  "If the subpoena commands the production of documents … then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."  Fed. R. Civ. Proc. 45(a)(4).  The purpose of the notice is to help "the other parties to object or to serve a subpoena for additional materials."  Fed. R. Civ. Proc. 45, Advisory Committee Notes, 2013 Amendment Subdivision (a).  Here, Gillam is Erhart's attorney.  Serving Gillam concurrently with the notice as an attachment to the subpoena fulfills the purpose of Rule 45(a)(4) to notify all parties of the subpoena.  The court overrules this objection.

As for timing, there is no evidence that Gillam asked for additional time to respond to the subpoena and BofI denied her.  The court overrules this objection.

**Order.**

The court **GRANTS** BofI's motion to compel, and **ORDERS** that by **May 10, 2016**, Carol Gillam must produce to BofI all documents in her possession, custody and control that respond to each of the requests in the subpoena.  If Ms. Gillam has a reasonable belief that any of the contents of those documents are protected by work product immunity, she must also produce to BofI a privilege log that comports with Federal Rule of Civil Procedure 26(b)(5)(A).  Finally, if she has no responsive documents to any of the specific requests, Ms. Gillam must serve a declaration sworn to under oath affirming that no such documents have ever existed.

**IT IS SO ORDERED.**

Dated:  April 26, 2016

Hon. Nita L. Stormes
United States Magistrate Judge