UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BofI FEDERAL BANK, a federal savings bank,<br><br>                                     Plaintiff,<br><br>v.<br><br>CHARLES MATTHEW ERHART, an individual; and DOES 1-25, inclusive,<br><br>                                     Defendant. | Case No.: 15cv2353 BAS (NLS)<br><br>**ORDER DETERMINING JOINT MOTION FOR DISCOVERY DISPUTE NO. 2 AND DENYING PLAINTIFF'S MOTION FOR CONTEMPT**<br><br>**[Dkt. No. 50]** |

Plaintiff BofI Federal Bank (BofI) filed an action against its former employee, defendant Charles Matthew Erhart, for federal computer fraud and various state claims based on his alleged theft and dissemination of BofI's confidential, privileged and proprietary information.[1]  BofI and third party Carol Gillam—counsel of record for Erhart—filed a joint discovery motion in April 2016 to determine the propriety of discovery requests sent to Ms. Gillam through a Rule 45 subpoena.  The court issued an order on April 26, 2016 compelling Ms. Gillam to produce all non-privileged, responsive documents, and to produce a privilege log.

---

[1] This action came on the heels of Erhart filing a whistleblower action against BofI based on retaliation, wrongful termination and other claims. *See Erhart v. BofI*, Case No. 15cv2287 BAS (NLS).

1

Now BofI complains that Ms. Gillam is in contempt of that order because she is withholding documents protected by a purported law enforcement privilege and on other grounds. For the following reasons, the court **DENIES** BofI's motion for contempt.

## I.   RELEVANT BACKGROUND

In Joint Discovery Motion No. 1, BofI sought documents showing Ms. Gillam's own communications with third parties concerning BofI.[2] While the subpoena sought all communications with third parties, the briefing focused on only Ms. Gillam's communications with the media, and did not mention her communications with law enforcement agencies. This court found the documents relevant and overruled Ms. Gillam's objections as to vagueness, ambiguity, breadth, undue burden and procedural defect, and ordered her to produce them by May 10, 2016. But it allowed Ms. Gillam to produce a privilege log for any documents over which she claimed work product protection. *See* Apr. 26 Order, pp. 6-8.

BofI reviewed Ms. Gillam's May 10 production and believed it was incomplete. The parties were ultimately able to meet and confer on June 21, 2016 and resolved most issues. Also, albeit late, Ms. Gillam provided a privilege log to BofI. The primary issue here is whether Ms. Gillam's communications with law enforcement agencies are privileged.

## II.   LEGAL STANDARD

Ms. Gillam asserts that the relevant legal standard is discoverability under Rule 26(b) and Rule 45(d). But that standard was relevant for the original discovery order, and not for this motion for contempt.

---

[2] The subpoena specifically sought Gillam's communications regarding BofI with (1) The New York Times; (2) Peter Eavis, a writer for The New York Times; (3) Seeking Alpha, Inc., an investment blog; (4) people that write articles for submission to Seeking Alpha; (5) people seeking or sharing information on BofI, such as brokerage firms, short sellers, investors, law firms, investigators and others; and (6) any person during the time period September 23, 2013 to the present. Jt. Mtn. No. 1, Ex. D.

In a contempt proceeding, "The court… may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). "The party moving for contempt has the burden to establish by clear and convincing evidence that the contemnor has violated a clear and specific court order." *Forsythe v. Brown*, 281 F.R.D. 577, 587 (D. Nev. 2012) (citation omitted). Once the moving party meets its clear and convincing evidence burden, the burden shifts to the contemnor to show that "she took every reasonable step to comply and to explain why compliance was not possible." *Id.* To assess whether every reasonable step has been taken, courts can consider "(1) a history of noncompliance and (2) failure to comply despite the pendency of a contempt motion." *Id.* (internal citation and quotations omitted).

### III. DISCUSSION

#### A. Law Enforcement Privilege.

In her initial response to the subpoena, Ms. Gillam generally objected to the requests on the basis of an unidentified privilege and work product doctrine. She did not produce a privilege log. The parties did not specifically litigate any privilege issue in the underlying motion because Ms. Gillam did not specifically assert or argue one. Instead, she argued for work product protection. But now—for the first time—Ms. Gillam asserts a "law enforcement privilege." She argues that her communications with federal regulators in her capacity as an attorney for a whistleblower are privileged and constitute attorney work product.

After this court considered the underlying discovery motion and ordered her to produce documents, Ms. Gillam asserted a "law enforcement privilege" as to her communications with the Securities and Exchange Commission (SEC) and Office of Comptroller of Currency (OCC). Because she never asserted this objection in the underlying discovery dispute, though, the court overrules it as waived. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *see* Fed.R.Civ.Proc. 45(d)(3)(A)(iii) (stating that privilege can be waived in response to subpoenas).

But even if the court were to consider this privilege, it would still overrule it. According to the Ninth Circuit, "[T]he federal privilege applicable to the government interest in preserving confidentiality of law enforcement records has various names," including "the official information privilege," the "law enforcement privilege," and "executive privilege." *Deocampo v. City of Vallejo*, 2007 U.S. Dist. LEXIS 43744, at *13-14 (E.D. Cal. June 1, 2007); *Hayslett v. City of San Diego*, 2014 U.S. Dist. LEXIS 37738, at *5 (S.D. Cal. Mar. 21, 2014). It serves a specific purpose:

> Although the Ninth Circuit has only mentioned the law enforcement privilege in passing . . . [t]he Second Circuit has explained that the law enforcement privilege is designed "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."

*Ibrahim v. Dep't of Homeland Sec.*, 2009 U.S. Dist. LEXIS 122598 at *41 (N.D. Cal. Dec. 17, 2009) (quoting *In re Department of Investigation of City of New York*, 856 F.2d 481, 484 (2d Cir. 1988)). "In determining what level of protection should be afforded by this privilege, courts conduct a case-by-case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the *governmental entity asserting the privilege*." *Hayslett*, 2014 U.S. Dist. LEXIS 37738, at *5 (emphasis added). But a prerequisite for invoking any law enforcement privilege is that the asserting party "must make a substantial threshold showing by way of a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Perez v. United States*, 2016 U.S. Dist. LEXIS 11036, at *10-11 (S.D. Cal. Jan. 29, 2016) (internal quotations and citations omitted).

At the threshold of this inquiry, this privilege is not available to Ms. Gillam because she is not a government entity. Even if she could show a connection to one, she does not adequately assert a law enforcement privilege because she fails to make a "substantial threshold showing" through a personal statement by an official with

knowledge of the underlying issues.  She also does not specifically assert the protection of confidential techniques, procedures, investigations, or personnel of law enforcement.  Further, the documents at issue are *her* submissions to law enforcement, and not documents produced by the SEC or OCC.  To the extent that Ms. Gillam claims a law enforcement privilege, her communications with the SEC and OCC do not fall under any such privilege.  Therefore, even if the court considered the objection timely, it would overrule it on the merits.

## B. Privilege for Government Agencies.

Ms. Gillam argues that her communications with the SEC and OCC are also privileged because forcing her to turn them over will have a chilling effect on whistleblowing.  She cites to the SEC's rules that state "the Commission . . . shall not disclose any information, including information provided by a whistleblower to the Commission, which could reasonably be expected to reveal the identity of a whistleblower." 5 U.S.C. § 78u-6. First, under this rule the SEC specifically provides a privilege from disclosure *by the SEC*, and not by individuals.  Second, when Erhart filed his complaint, he revealed his identity as a whistleblower.  Thus, any purported protection by the SEC rules do not apply to Ms. Gillam and to her communications with the SEC.

Next, Ms. Gillam contends that the OCC's rules "exempt a slew of information and files from public disclosure, including a record furnished in confidence or a record or information compiled for law enforcement purposes." Jt. Mtn., p.19; *see* 12 C.F.R. 4.12 (citing OCC records exempt from disclosure under FOIA).  Ms. Gillam states that after she filed the whistleblower complaint, the OCC sent a letter to her stating that "any supervisory correspondence in either party's possession constitutes privileged non-public OCC information, which, absent OCC authorization or a Federal court order, you are prohibited by law from using in connection with the above civil actions [i.e. the whistleblower action]." *See* 12 C.F.R. Part 4, Subpart C; Jt. Mtn., p.19.  Thus, she argues that she cannot disclose any communications she had with the OCC.

The court finds that the cited OCC rule does not protect any communication from Ms. Gillam to the OCC. The rule itself states that "[a] record contained in or related to an examination, operating, or condition report prepared by, on behalf of, or for the use of the OCC or any other agency responsible for regulating or supervising financial institutions" is exempt from disclosure *to the public* under FOIA. 12 C.F.R. 4.12(b)(8). First, it is unclear whether Ms. Gillam, a third party individual, would be protected by this statute. Second, these documents do not have to be publicly disclosed and can be produced as a confidential production under the protective order. [Dkt. No. 21.] Third, the OCC allows "disclosure" if ordered by a Federal court.

Not seeing any available protection under the SEC or OCC rules for Ms. Gillam's communications, the court overrules her objections on those bases.

### C. <u>Work Product Doctrine.</u>

#### 1. Applicability of Work Product Protection.

Ms. Gillam argues that her communications with federal agencies are also protected as work product. She argues that she represents Erhart in his whistleblower complaint and that the select documents she turned over to federal regulators "were prepared in anticipation of litigation." Jt. Mtn., p.17. BofI argues that work product protection does not apply here.

The work product doctrine affords a qualified protection from discovery for material obtained and prepared by an attorney or an attorney's agent "in anticipation of litigation." *Hickman v. Taylor*, 329 U.S. 495 (1947). Work product immunity is meant "to guard against the divulging of attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or *facts contained within the work product*." *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (emphasis in original) (citations omitted).

BofI argues that work product immunity does not apply here because Ms. Gillam is not a lawyer for a federal law enforcement agency and she provided the documents while Erhart was still employed (i.e. before his wrongful termination claim arose). Therefore,

BofI argues, they were not prepared in anticipation of his whistleblower complaint against BofI and they were provided to third parties.  Ms. Gillam maintains the communications contain her legal strategies and impressions—i.e. her work product—which is enough to protect them from discovery by BofI.  She apparently made these work product claims in her privilege log (albeit late).  BofI does not contest any particular claim of work product immunity in the privilege log; they only contest the applicability of work product immunity as to these communications.

By sending these communications to law enforcement agencies, Ms. Gillam did not waive work product protection: "[A]ttorney work-product protection is not automatically waived upon disclosure to third parties… because 'the purpose of the work-product rule is … to protect it only from the knowledge of opposing counsel and his client.'" *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 645 (E.D. Cal. 2014) (citation omitted).  Further, "[d]isclosure to [a] person with interest common to that of attorney or client is not inconsistent with intent to invoke work product doctrine's protection and would not amount to waiver." *Id.* (citing *In re Doe*, 662 F.2d 1073, 1081 (4th Cir.1981)).  In the context of work product, common interest is more broadly construed to include disclosure to third parties.  *Id.* (citing *U.S. v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1298–99 (D.C.Cir.1980) (finding no waiver because "the disclosure had occurred under a statutory guarantee of confidentiality on the part of the government")).

Here, Ms. Gillam shared a common interest with the federal regulators to uncover any alleged wrongdoing by BofI.  Further, the SEC and OCC regulations provide for confidentiality.  While those regulations, on their own, may not be enough to protect the communications from disclosure by Ms. Gillam to BofI in this case, they do show that the agencies will not publicly disclose Ms. Gillam's work product.  Therefore, Ms. Gillam's communications with law enforcement agencies—with whom she shared a common interest—did not waive her work product claim.

///

### 2. Overcoming a Work Product Claim.

To overcome the work product claim BofI must show "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii); *Bozzuto v. Cox*, 255 F.R.D. 673, 678 (C.D. Cal. 2009).  BofI does not demonstrate a substantial need at this point because it simply argues the documents are relevant.  BofI asserts that the fact that Ms. Gillam has the documents will show that Erhart stole them from BofI, which goes to the heart of this suit.  Jt. Mtn., p.14.  Ms. Gillam argues the documents are protected because they were prepared in anticipation of litigation, and further, BofI cannot show substantial need for them because they are not relevant to this lawsuit.  For example, Erhart points out that in BofI's June 10, 2016 motion for summary adjudication as to Erhart's whistleblower defenses in this action, BofI admits these communications to law enforcement are not relevant because its sole concern in this action is Erhart's *public dissemination* of BofI's confidential information: "It is irrelevant whether or not Erhart also reported to <u>regulators, government officials or other authorized individuals</u> concerning his allegations of wrongdoing by BofI."  Mem. Ps&As, pp.1-2, Dkt. No. 45 (emphasis in original).

At this point in the litigation, with motions pending for preliminary injunction and summary adjudication, it is premature to determine whether the relevance of Ms. Gillam's law enforcement communications is compelling enough to show BofI's substantial need for those documents.  Further, under the stipulated Temporary Restraining Order, Erhart agreed to deliver to BofI's counsel "all BofI records and documents and any Confidential Information in any form" in Erhart's possession.  Dkt. No. 10, p.2.  In a stipulated Supplemental TRO, Erhart agreed to "Provide a list of all materials he removed from BofI … (referred to as the "Inventory")" and "Provide a list of all individuals to whom Erhart or his agents, including counsel, has disclosed each item on the Inventory."  Dkt. No. 17, p.2.  Erhart also agreed to sign a declaration confirming that the Inventory and list of individuals are accurate and exhaustive.  *Id.*

Given the uncertainties as to relevance and the apparent availability of these documents from other sources, BofI has not demonstrated a compelling need at this time for Ms. Gillam's law enforcement communications. The court therefore sustains Ms. Gillam's work product objections. If these communications, though, take on more relevance as the case progresses and are not available by any other less intrusive means, BofI may contest the applicability of work product as to any specific document identified in the privilege log.

### D. Whether Ms. Gillam is in Contempt of April 26 Order.

BofI argues that Ms. Gillam cannot show she took reasonable steps to comply with the court's order or that compliance was impossible. It asks this court to hold her in contempt and order her to immediately and fully comply with the April 26 Order. Ms. Gillam, though, argues that she did not read the court's order as requiring her to turn over her communications with federal regulators and law enforcement since the order focused on communications with the media. She claims that through this motion BofI seeks "to vastly expand the scope of the order" because Erhart's whistleblowing activities—in the words of BofI itself—are not relevant to this lawsuit. Jt. Mtn., p.16.

While the subpoena sought communications regarding BofI with any person during the time period September 23, 2013 to the present, the subject of the discovery dispute concerned communications with the media, and not with federal agencies. BofI also admits that its main concern in this lawsuit is the public dissemination of its confidential information, and not disclosure to law enforcement agencies. Finally, while Ms. Gillam's production of documents and a privilege log may have been delayed, this court does not find that Ms. Gillam "failed without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). Therefore, the court denies the motion for contempt.

### IV. REQUEST FOR JUDICIAL NOTICE

Ms. Gillam requests judicial notice for documents in support of this discovery motion. Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial

jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). Additionally, a "court shall take judicial notice if requested by a party and supplied with the necessary information." Fed R. Evid. 201(c). Judicial notice, however, is inappropriate where the facts to be noticed are irrelevant. *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998); *Turnacliff v. Westly*, 546 F.3d 1113, 1120 n.4 (9th Cir. 2008).

Ms. Gillam seeks to judicially notice these documents.

### A. Website Article.

1. Exhibit G, a news article by Aurelius[3] titled, "Recent BofI Filing Confirms Existence of Undisclosed Subpoenas and Nonpublic Government Investigations" (November 5, 2015), posted on Seeking Alpha. The author discloses, "Note: The author has no relationship of any kind with Mr. Erhart or his lawyers. This article is based entirely on publicly available documents. The court documents are publicly available on the federal PACER system. The case number is 3:15-cv-02353-BAS-NLS, BofI Federal Bank v. Erhart et al." This article is available at http://seekingalpha.com/article/3652296-recent-bofi-court-filing-confirms-existence-undisclosed-subpoenas-nonpublic-government (last visited July 27, 2016).

As to the existence of this internet posting, the article is readily verifiable by reference to the listed web address, and thus the court takes judicial notice of its existence. But the court does not judicially notice any of the facts cited in it. *Signature Management Team, LLC v. Automattic, Inc.*, 941 F.Supp.2d 1145, 1147-48 (N.D. Cal. 2013) (taking judicial notice of the existence of blog postings but not of the facts recited in them).

/ / /

/ / /

---

[3] Aurelius is an anonymous internet user who writes online articles using CenturyLink as the internet service provider.

### B. Filings in Other Cases.

1. <u>Exhibit H</u>, Court Order denying BofI's motion to compel and granting Seeking Alpha's crossmotion to quash the subpoena., U.S.D.C. Southern District of New York, Case No.:1:16-mc-00025-P1.

2. <u>Exhibit I</u>, Aurelius' motion to quash subpoena issued to CenturyLink Communications, LLC, U.S.D.C. Central District of California Case No.: 2:16-cv-71.

A court may take judicial notice of records in another proceeding but not the "facts essential . . . [to the case] before it." *M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) (alteration in original) (citation omitted). Accordingly, the request for judicial notice of Exhibits H and I is granted as to their existence, without regard their truth or any findings of fact.

**IT IS SO ORDERED.**

Dated:  August 5, 2016

Hon. Nita L. Stormes
United States Magistrate Judge