UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BofI FEDERAL BANK, a federal savings bank,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES MATTHEW ERHART, an individual; and DOES 1-25, inclusive,<br><br>Defendant. | Case No.: 15cv2353 BAS (NLS)<br><br>**ORDER DETERMINING JOINT MOTION FOR DISCOVERY DISPUTE NO. 3 AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**<br><br>**[Dkt. No. 54]** |

Plaintiff BofI Federal Bank (BofI) filed an action against its former employee, defendant Charles Matthew Erhart, for federal computer fraud and various state claims based on his alleged theft and dissemination of BofI's confidential, privileged and proprietary information.[1]  BofI and Erhart filed this third joint discovery motion to determine the applicability of privilege to documents obtained—via a TRO—from Erhart's personal laptop, his girlfriend's laptop, a USB device and a Gmail account.  For the following reasons, the court **GRANTS in part** and **DENIES in part** BofI's motion to compel production of the documents.

---

[1] This action came on the heels of Erhart filing a whistleblower action against BofI based on retaliation, wrongful termination and other claims. *See Erhart v. BofI*, Case No. 15cv2287 BAS (NLS).

1

## I.     RELEVANT BACKGROUND

On March 5, 2015, BofI management learned that Erhart, an entry level staff internal auditor in its headquarters, failed to complete internal audits assigned to him and that he had conducted his own "rogue" and unapproved investigations. FAC ¶¶ 28, 29. The following day, BofI granted Erhart an unpaid leave of absence. FAC ¶ 40. But Erhart never returned to work. FAC ¶ 40. BofI then terminated Erhart's employment as of June 9, 2015 because Erhart abandoned his job. FAC ¶ 41. Erhart filed a whistleblower action in retaliation, after which BofI suffered a severe decrease in its stock price. FAC ¶ 46. On October 19, 2015, BofI filed this action, contending that Erhart's disclosures caused BofI's stock price to plummet, resulting in hundreds of millions of dollars in lost market capitalization. FAC ¶ 46; Jt. Mtn., p.5.

The court granted the parties' joint motion for a Temporary Restraining Order (TRO) against Erhart on November 10, 2015. (Dkt. No. 10.) The TRO requires, in part, that Erhart:

> Deliver to counsel for BofI all BofI records and documents and any Confidential Information in any form, including but not limited to documents or electronically stored information stored in any medium within his or their possession, custody, or control.

(Dkt. No. 10, at 2:15-19.) The TRO also prohibits Erhart and his counsel from copying, destroying, deleting, altering, disclosing, reviewing, sharing, transmitting, and/or using any confidential information belonging to BofI. (*Id.* at 2:1-14.) On November 16, 2015, the court issued a supplemental restraining order that requires, in part, that Erhart:

> Provide a list of all materials he (Erhart) removed from BofI, including the date the item was taken (referred to as the "Inventory") [and] [p]rovide a list of all individuals to whom Erhart or his agents, including counsel, has disclosed each item on the Inventory.

(Dkt. No. 17, at 2:12-15.) Erhart agreed to sign a declaration confirming that the Inventory and list of individuals are accurate and exhaustive. (*Id.* at 16-24.)

In compliance with the TRO, Erhart produced to BofI his personal laptop, which BofI's forensic auditors inspected. (Dkt. 54-1, at 3:22.) The parties, however, now differ on the scope of the TRO. Erhart contends that he cooperated in permitting BofI to have forensic auditors inspect his computer "solely for the purpose of verifying that he did not disseminate confidential information." (*Id.* at 6:22-24.) Erhart argues that BofI went "far beyond the consent given" in its inspection of Erhart's computer exceeding the purpose of determining that he did not disseminate confidential information. (*Id.* at 7:1-3.)

Conversely, BofI contends that Erhart turned over his computer with no limitations except for these: "(1) do not review Erhart's browser history; and (2) designate "for attorney's eyes only" any information that BofI's outside counsel deemed to be personal and irrelevant to the lawsuit and do not share this information with BofI." (*Id.* at 3:1-3.) BofI argues that its inspection remained within this permitted scope. (*Id.* at 3:3-4.) BofI further argues that "[n]either Erhart nor his counsel mentioned that there were or may be privileged information in the production and they did not instruct BofI to segregate or otherwise not review, any privileged communications or work product information." (Id. at 4:4-7.) BofI further explains that the computer forensics vendor informed BofI's counsel that they found attorney-client communications, and that BofI thus refrained from opening or reviewing those documents. (*Id.* at 4:8-14.)

BofI notified Erhart of its findings, and Erhart responded that he was asserting all privileges available under the law. (*Id.* at 7:4-8.) The parties met and conferred, and four issues concerning the requested documents remain: (1) Whether documents sent to third parties for alleged safekeeping are privileged; (2) Whether the attorney-client privilege applies to BofI's documents sent by Erhart to his counsel; (3) The relevance of medical issues and whether or not any applicable medical privilege applies; and (4) Whether an alleged "law enforcement" privilege exists, and whether it applies to BofI documents sent to law enforcement. (*Id.* at 2:22-27.)

/ / /
/ / /

## II. LEGAL STANDARDS

### A. Relevance.

Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Once the party seeking discovery has established that its request meets this relevancy requirement, "the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, 2009 U.S. Dist. LEXIS 42339, at *1 (S.D. Cal. May 14, 2009) (citations omitted).

### B. Law Regarding Privilege.

Erhart argues that under the *Erie* doctrine, the court should apply California law regarding privilege to this case. (Dkt No. 54-1, at 15:26-27.) He cites Federal Rule of Evidence 501, which provides that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. BofI argues that Federal law governs privilege here, because "Federal law regarding privilege applies to Federal question cases." *Nehad v. Browder*, 2016 U.S. Dist. LEXIS 62594, at *10 (S.D. Cal. May 10, 2016). Here, there is federal question jurisdiction because BofI's Seventh Claim for Relief arises under a federal statute. (*See* Dkt. No. 1, at 2:7-9.) The other seven claims are state law claims.

"In cases where federal privilege law governs the claim over which the Court has original subject matter jurisdiction, federal privilege law also applies to supplemental state claims as well." *Stein v. Tri-City Healthcare Dist.*, 2013 U.S. Dist. LEXIS 77810, at *4 (S.D. Cal. June 3, 2013) (citing *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992) and *Crowe v. County of San Diego*, 242 F. Supp. 2d 740, 750

(S.D. Cal. 2003)); *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005). For example, in *Stein*, the plaintiff filed a whistleblower claim for retaliatory discharge, asserting ten causes of action arising under state and federal law. 2013 U.S. Dist. LEXIS 77810, at *2. The defendants argued that the plaintiff could not prosecute a specific state claim without revealing information protected by attorney-client privilege. *Id.* at 4. The court held that federal privilege law governed all claims because under Fed. R. Evid. 501, "federal privilege law governs the rule of decision for federal question claims . . . federal privilege law applies to Plaintiff's state law claims as well." *Id.*

However, "as a matter of comity," federal courts should ascertain and consider the relevant interests of corresponding state law. *Anderson v. Marsh*, 312 F.R.D. 584, 589 (E.D. Cal. 2015). "The ultimate determination regarding the weight to be given to the state interest resides with the federal court." *Id.* Accordingly, the court will examine privilege assertions under both federal and state law.

### III. DISCUSSION

#### A. Documents Sent to Third Parties.

During its review of Erhart's computer, BofI identified one email, dated March 17, 2015, in which Erhart forwarded to his mother an email with attachments that he had sent to his counsel (Dkt. No. 54-1, at 8:11-13.) BofI argues that by forwarding certain documents to a third party—his mother—Erhart waived any attorney-client privilege under both Federal and California law. (*Id.* at 9:1-2.) BofI states that when the parties met and conferred on June 21, 2016, Erhart argued that *all* of his communications with third parties, not just the March 17, 2015 email, are privileged because he sent the information for safekeeping after fearing for his life. (*Id.* at 18-22.) Erhart provides no legal authority for this assertion. (*Id.* at 11:15.) BofI argues that because Erhart had already sent documents to his attorney, he "cannot credibly claim" that he needed to subsequently send them to his mother for safekeeping purposes. (*Id.* at 10:18-21.) BofI further argues that "the existence of the documents themselves is evidence in support of BofI's claims against Erhart." (*Id.* at 10:21-22.)

There is no established federal or state authority recognizing any privilege of documents sent to third parties for safekeeping. Moreover, "privileges against forced disclosure . . . are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 709-10 (1974). Erhart's documents, therefore, are not privileged simply because he sent them to his mother for safekeeping.

"Federal law 'recognizes a privilege for communications between client and attorney for the purpose of obtaining legal advice, provided such communications were intended to be confidential.'" *Cohen v. Trump*, 2015 U.S. Dist. LEXIS 74542, at *33 (S.D. Cal. June 9, 2015) (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001)). Accordingly, the attorney-client privilege is generally waived when a party voluntarily discloses private information to third parties, because "the disclosure destroys the confidentiality upon which the privilege is premised." *Id.* However, the disclosure to a third party is not in itself dispositive of a waiver. *Id.* Where disclosure to a third party "'is indispensable in order for the communication to be made to the attorney, the policy of the privilege will protect the client.'" *Id.* at 34 (quoting *Himmelfarb v. United States*, 175 F.2d 924, 939 (9th Cir. 1949)). But, when the disclosure "is merely for convenience, the privilege is removed from whatever communications are made." *Id.*

Erhart's claims do not sufficiently show the necessity of emailing the information to his mother. Erhart asserts he did not waive the attorney-client privilege by sending documents to his mother because he sent the information for safekeeping after fearing for his life. (Dkt. No. 54-2 ¶ 8.) However, Erhart had already sent the attached documents to his counsel, rendering the forwarding of the documents to his mother unnecessary. (*See Id.* ¶ 4.) Accordingly, if Erhart felt compelled to delete the information pertaining to BofI out of fear for his life, he did not have to also email it to his mother for safekeeping; he had already emailed it to his counsel, who was surely securely holding the information. Erhart thus does not sufficiently show indispensability of disclosing the present information to his mother, foregoing any privilege.

California law equally recognizes an attorney-client privilege, which protects information exchanged between an attorney and client for the purpose of consultation and furthering the legal interest of the client. Cal. Evid. Code § 952. However, disclosure to third parties constitutes a waiver of the privilege provided the disclosure is not "reasonably necessary" for executing the legal purpose of the attorney-client communication. Cal. Evid. Code § 912. Erhart failed to show the necessity of forwarding attorney-client communication to his mother; thus, even under California law, Erhart has waived any attorney-client privilege with respect to this information.

The court, therefore, overrules any objection on the basis of Erhart sending documents to third parties for safekeeping.

## B. **Attorney-Client Privilege.**

BofI seeks an order confirming that it may review BofI documents that Erhart sent to his counsel because those documents, it argues, are not subject to attorney-client privilege. (Dkt. No. 54-1, at 11:20-21.) Erhart does not address whether the documents are privileged and instead argues that he addressed the issue of whether he waived attorney-client privilege in a motion currently pending before the district judge, and that it is too late for BofI to presently raise the issue. (*Id.* at 12:20-26; See Dkt. No. 34.)[2] However, at issue here is whether the requested documents are privileged, not whether Erhart waived any privilege.

"The attorney-client privilege extends to communications between client and attorney for the purpose of obtaining legal advice." *Gen-Probe Inc. v. Becton, Dickinson & Co.*, 2010 U.S. Dist. LEXIS 49436, at *6 (S.D. Cal. May 19, 2010). Simply relaying factual information to an attorney does not activate the attorney-client privilege:

---

[2] In his Opposition to Motion for Determination of Waiver of Privilege (Dkt. No. 34), Erhart argues that he did not waive his attorney-client privilege with respect to the documents that BofI found on his computer when Erhart turned his computer over to BofI for inspection.

> The protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (internal quotes and citations omitted); *see also United States v. Burroughs*, 167 F.R.D. 680, 683 (S.D. Cal. Feb. 20, 1996).

In general, any documents that Erhart sent to his counsel that contain mere facts or data concerning BofI are not protected by attorney-client privilege. Erhart must produce these documents to the extent that the purely factual information can be extracted from any privileged communications. *See Fox v. Shinseki*, 2013 U.S. Dist. LEXIS 82087, at *17-18 (N.D. Cal. June 10, 2013) (ordering non-privileged email attachments produced where the emails themselves were privileged). The issue of waiver does not apply to these documents because they were never privileged in the first place. Conversely, direct communications between Erhart and his counsel that go beyond facts pertaining to BofI may be protected by attorney-client privilege.

In sum, Erhart must produce any of BofI's documents that contain mere facts or data. If not already done, Erhart must produce a privilege log as to any specific documents for which he asserts attorney-client privilege. By **August 19, 2016**, BofI must turn over to Erhart's counsel a USB drive with the documents from Erhart's computer so that she can review them for privilege. Erhart must produce responsive documents and a privilege log to BofI's counsel by **September 9, 2016**.

### C. Medical Privilege.

BofI seeks to compel Erhart to produce medical documents and communications pertaining to his medical leave that he forwarded to his mother. (Dkt. No. 54-1, at 13:6-10.) BofI argues that there is no physician-patient privilege recognized under Federal law,

1   and that Erhart has waived any medical privilege recognized by California law by
2   forwarding his medical information and communications to his mother. (*Id.* at 13:12-18.)
3   Erhart argues that his medical condition is not at issue in this case. (*Id.* at 15:12.) BofI,
4   however, contends that Erhart raised his medical issues during his deposition when he
5   testified that he was fearful of bodily harm and that he delayed returning his BofI-issued
6   laptop because he was meeting with his physician. (*Id.* at 14:23-25.) BofI argues that
7   Erhart also placed his mental state at issue in several of his defenses and other publicly
8   filed pleadings, thus rendering the patient-litigant exception to any physician-patient
9   privilege. (*Id.* at 14: 22-28.)

BofI offered to stipulate that Erhart's medical condition is not relevant to this case, and asks him to withdraw the assertion that being fearful of bodily harm rendered him unable to work. Erhart has not responded to BofI's repeated offers to so stipulate, which BofI contends is indicative that Erhart will raise his medical and mental conditions in defense. (*Id.* at 15:2-5.) Erhart asserts that he has not pled any type of emotional distress damages, and that he did not put his medical condition at issue merely by stating that he feared for his life. (*Id.* at 16:15-24.) Erhart argues any medical documents are irrelevant to this suit. (*Id.* at 16:26-27 – 17:1-2.)

### 1.   Relevance of Medical Documents.

BofI argues that Erhart's medical information and communications are relevant because they pertain to Erhart's medical leave from BofI. (*Id.* at 13:8-9.) But BofI does not clarify how Erhart's medical information relates to BofI's claims. Erhart asserts that he "has not pled any type of emotional distress damages or placed his medical condition at issue in this action." (*Id.* at 16:15-16.) BofI counters that Erhart's statements suggest emotional distress and other mental condition defenses. (*Id.* at 15:2-7.) Because Erhart has yet to assert any claim or defense related to his medical condition, the court sustains his relevance objection as to the medical documents. *See Redon v. Ruiz*, 2015 U.S. Dist. LEXIS 163801 at *17 (S.D. Cal. Dec. 4, 2015) ("Medical records unrelated to the conditions put in issue by a plaintiff are not relevant and are thus not discoverable,

regardless of whether a specific privilege is applicable") (internal quotes and citations omitted). If his mental state later comes into issue, though, the court will re-evaluate the relevance of the medical documents

## 2. Privilege for Medical Documents.

If Erhart's medical condition is later raised, his medical communications may nevertheless be protected from discovery. Under federal law, there is no physician-patient privilege protecting medical records from discovery. *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 633 (S.D. Cal 1999). However, "The Supreme Court has recognized a limited privacy interest in the confidentiality of one's medical records, derived implicitly from the United States Constitution." *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D. Cal. July 17, 1995) (citing *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)). But this right to privacy is not absolute. *Id.* When determining whether to order a production of medical records, "a court must balance the requesting party's interest in reviewing the records against the patient's right to maintain the medical records as private." *Larson v. Bailiff*, 2015 U.S. Dist. LEXIS 94188, at *12 (S.D. Cal. July 17, 2015) (citing *Soto*, 162 F.R.D. at 619).

An analysis under California law may also render Erhart's medical communications privileged:

> California law recognizes a medical records privilege that allows a patient to refuse to disclose, or prevent another from disclosing, confidential communications with a physician in the course of the patient-physician relationship.

*Johnson v. Northwest Airlines, Inc.*, U.S. Dist. LEXIS 30731 at *7 (N.D. Cal. March 30, 2009). California courts have also found that medical information falls within the state and federal constitutional right of privacy. *Brown v. Mortensen*, 51 Cal. 4th 1052, 1071; *People v. Stritzinger*, 34 Cal. 3d 505, 511.

If medical documents later become relevant, the parties should re-evaluate the applicability of privilege as to the specific documents.

### D. Law Enforcement Privilege.

The court has already addressed the applicability of a law enforcement privilege and found that it does not apply here. (*See* Order on Joint Motion for Discovery Dispute No. 2.) Erhart's counsel is not a government entity, and even if she could show a connection to one, she fails to make the requisite "substantial threshold showing" through a personal statement by a responsible official with personal knowledge of the underlying issues. *See Perez v. United States*, 2016 U.S. Dist. LEXIS 11036, at *10-11 (S.D. Cal. Jan. 29, 2016). Therefore, the court overrules Erhart's objections based on the law enforcement privilege.

**IT IS SO ORDERED.**

Dated:  August 5, 2016

Hon. Nita L. Stormes
United States Magistrate Judge