1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

BOFI FEDERAL BANK,

                    Plaintiff,

    v.

CHARLES MATTHEW ERHART,

                    Defendant.

Case No. 15-cv-02353-BAS(NLS)

**ORDER DENYING PLAINTIFF BOFI FEDERAL BANK'S AMENDED MOTION FOR PRELIMINARY INJUNCTION**

**[ECF No. 18]**

This case arises out of the fallout from a whistleblower retaliation action commenced under the Sarbanes-Oxley Act of 2002, the Dodd-Frank Wall Street Reform and Consumer Protection Act, and California state law. Plaintiff BofI Federal Bank ("BofI") employed Defendant Charles Matthew Erhart as an internal auditor at its headquarters in San Diego, California. After Erhart discovered conduct he believed to be wrongful, he reported it to the United States Department of the Treasury's Office of the Comptroller of the Currency—BofI's principal regulator. He later filed an action against BofI under federal and state law whistleblower protection provisions alleging BofI retaliated against him for reporting unlawful conduct to the government. *See generally Erhart v. BofI Holding, Inc.*, No. 15-cv-02287-BAS(NLS) (S.D. Cal. filed Oct. 13, 2015) ("Whistleblower Retaliation Action").

The next day, the *New York Times* published an article titled *Ex-Auditor Sues Bank of Internet*. The share price of BofI's publicly-traded holding company plummeted thirty percent, and the first of several securities class action lawsuits soon followed. A few days later, BofI brought this countersuit against Erhart alleging he violated California state law and the Computer Fraud and Abuse Act by publishing BofI's confidential information and deleting hundreds of files from his company-issued laptop. (ECF No. 1.)

BofI now moves for a preliminary injunction enjoining Erhart from disseminating any of its confidential information and requiring Erhart to return files he appropriated from BofI. (ECF Nos. 7, 18.) Erhart opposes. (ECF No. 27.) After hearing oral argument (ECF No. 69), the Court **DENIES** BofI's motion for the following reasons.

## I.    BACKGROUND[1]

### A.    Confidentiality Clause

BofI is a financial services company headquartered in San Diego, California. (Tolla Decl. ¶ 3, ECF No. 7-4.) On September 23, 2013, Erhart started working for BofI as an internal auditor. (Durrans Decl. ¶ 5, ECF No. 7-5; Erhart Decl. ¶ 5, ECF No. 27-4 at 103.) In this capacity, he was responsible for conducting audits of BofI's operations under the supervision of BofI's Vice President-Internal Audit. (Durrans Decl. ¶ 5; Ball Decl. ¶ 7, ECF No. 22.) Thus, BofI entrusted Erhart with access to information it treated as proprietary and confidential. (Tolla Decl. ¶ 6.) This information included consumer banking information, nonpublic communications between BofI and its regulators, communications between BofI's attorneys and its agents, internal audit findings, and BofI's employees' personal information. (*Id.*)

---

[1] The Court makes the following preliminary findings of fact, which are not binding on future proceedings in this case. *See, e.g.*, *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984) (holding a "district court is not required to make any binding findings of fact" at the preliminary injunction stage; rather, "it need only find probabilities that the necessary facts can be proved").

To safeguard this information, BofI required Erhart to execute an Employee Confidentiality, Non-Disclosure and Non-Recruitment Agreement ("Confidentiality Agreement") as a condition of his employment. (Durrans Decl. ¶ 13; Confidentiality Agreement, BofI's App. Exs., Ex. 6, ECF No. 7-14.) This agreement forbids the unauthorized disclosure of BofI's "Trade Secrets" and "Confidential Information." (Confidentiality Agreement § 2.) The Confidentiality Agreement defines "Trade Secrets" by incorporating California law,[2] whereas "Confidential Information" is defined as information that is "proprietary and confidential in nature." (*Id.*) For these two types of information, Erhart agreed that:

> [A]t any time during [his] term of employment or following the termination of [his] employment with BofI, whether voluntary or involuntary, [he] shall not, except as required in the conduct of BofI's business or as authorized in writing by BofI, use, publish or disclose any of BofI's Trade Secrets and/or Confidential Information in any manner whatsoever.

(*Id.* § 2.E.)

Further, Erhart agreed that if his employment with BofI was terminated for any reason, he would promptly:

> Inform BofI of and deliver to BofI all records, files, electronic data . . . and the like in [his] possession, custody or control that contain any of BofI's Trade Secrets or Confidential Information which [Erhart] prepared, used, or came in contact with while employed by BofI . . . .

(*Id.* § 7.A.)

**B.     Erhart's Departure from BofI**

In the course of performing his work as an internal auditor, Erhart claims he repeatedly encountered conduct he believed to be wrongful. (*See generally* Erhart

---

[2] California, which has adopted the Uniform Trade Secrets Act, defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).

15cv2353

1   Decl. ¶¶ 9–75.) By early 2015, approximately sixteen months after he joined BofI,

2   Erhart believed his job was in jeopardy. (*Id.* ¶ 47.) In a recent performance evaluation,

3   Erhart's rating had been downgraded, with his bonus adversely affected. (*Id.* ¶ 25.)

4   BofI identified Erhart's practice of preserving audit findings in writing as a

5   performance issue. (*Id.*) Erhart states BofI had repeatedly directed internal audit staff

6   to not create written evidence of believed non-compliance and illegal conduct. (*Id.*

7   ¶¶ 15, 24.) Later, one of BofI's senior vice presidents walked by Erhart's workstation

8   and stated, in the presence of others, "If [Erhart] continues to turn over rocks,

9   eventually he is going to find a snake and he's going to get bit." (*Id.* ¶ 47.) Then, on

10  March 5, 2015, BofI's Vice President-Internal Audit—Erhart's supervisor—resigned

11  abruptly. (Ball Decl. ¶ 8; Erhart Decl. ¶ 51.) The next day, Erhart "felt very unwell"

12  and "called off sick." (Erhart Decl. ¶ 53.) Erhart requested, and was granted by BofI,

13  an unpaid leave of absence pursuant to the Family Medical Leave Act and the

14  California Family Rights Act beginning on March 6, 2015. (Durrans Decl. ¶ 15.)

15      At the same time, Erhart "became extremely concerned that the Bank would

16  try to destroy the records of wrongdoing that [he] had placed on the Bank's

17  computers." (Erhart Decl. ¶ 55.) He contacted the Denver Regional Office of the

18  United States Department of the Treasury's Office of the Comptroller of the Currency

19  ("OCC") and said he was seeking whistleblower protection. (*Id.*) Meanwhile, BofI

20  was opening up the locked file cabinets at Erhart's workstation, going through all of

21  the documents inside, repeatedly calling his cell phone, and preparing and attempting

22  to deliver a termination letter to him. (*Id.* ¶¶ 56, 58, 61.)

23      Erhart provided information to the OCC by phone and brought documents in

24  his possession to the OCC's office in Carlsbad, California, regarding the conduct he

25  believed to be wrongful. (Erhart Decl. ¶¶ 64–69.) Afterwards, on March 12, 2015,

26  Erhart returned his work laptop to BofI. (*Id.* ¶ 70.)

27  //

28  //

### C.    Disclosure of BofI's Information

Following its recovery of Erhart's work laptop, BofI hired a forensic computer expert to analyze the device. (Armstrong Decl. ¶ 2, ECF No. 7-2.) According to the forensic expert, first, on March 6, 2015—the same day Erhart called the OCC seeking whistleblower protection—the laptop was used to attempt to copy approximately 1208 BofI files to a removable storage device, a USB flash drive. (*Id.* ¶ 11.) Second, the USB flash drive contained a "Matt Erhart" folder with subfolders including "Work," suggesting it contained BofI files. (*Id.* ¶ 13.) Third, the laptop shows Erhart's personal, web-based e-mail account was used to send files stored on BofI's electronic media to the account's own address—presumably to preserve a copy of the files that could be accessed without the laptop. (*See id.* Ex. 3.) Data collected from the laptop also shows Erhart attempted to send messages containing BofI files to a Department of the Treasury e-mail account around the time he contacted the OCC, but he received several non-delivery notifications, or "bounce" messages, in response. (*See id.*) Fourth, the forensic analyst determined that on March 12, 2015, between 3:34 a.m. and 5:41 a.m., Erhart deleted approximately 957 files and folders from the laptop prior to returning it to BofI on that same day. (*Id.* ¶ 18.)

Further, during the course of discovery in this case, BofI subpoenaed Erhart's counsel's communications to purportedly determine "the extent of and to whom she distributed BofI's confidential information." (BofI's Supp. Br. 2:15–16, ECF No. 56; *see also* Powill Decl. ¶ 2, ECF No. 56-1; Subpoena, ECF No. 43-6.) After a discovery dispute, United States Magistrate Judge Nita L. Stormes ordered Erhart's counsel to produce a series of her communications with third parties. (ECF No. 44.) These communications reveal that on May 29, 2015, Erhart's counsel communicated with Peter Eavis—a financial reporter for the *New York Times.* (ECF No. 56-2 at TGLF000006–07.) They continued to communicate over the course of the next several months. (*Id.* at TGLF000008–11.) Then, in August 2015, the *New York Times* published a report on BofI's explosive growth and lending strategy. (Peter Eavis, *An*

*Internet Mortgage Provider Reaps the Rewards of Lending Boldly*, N.Y. Times, Aug. 22, 2015, BofI's App. Exs., Ex. 13, ECF No. 7-21.)[3] The article, in discussing the potential risks that BofI faces, stated:

> In recent months there has been unrest in the division of Bank of Internet that deals with regulatory compliance. Earlier this year, a senior internal auditor, Jonathan Ball, and another employee in the division, Matt Erhart, left the bank. Mr. Ball did not respond to requests for comment. Mr. Erhart's lawyer, Carol L. Gillam, said that she had communicated with regulators, including the Office of the Comptroller of the Currency, the bank's primary regulator. She declined to provide details.

(*Id.*)

Later, on October 13, 2015—the date Erhart filed the Whistleblower Retaliation Action—Erhart's counsel sent Mr. Eavis a copy of Erhart's complaint and asked Mr. Eavis to not contact BofI until she had confirmation the pleading was successfully filed. (ECF No. 56-2 at TGLF000012–13.) BofI asserts Mr. Eavis used his advance notice of Erhart's whistleblower retaliation allegations "to publish a scathing and highly injurious article about BofI before the markets opened the following day." (BofI's Supp. Br. 3:7–9; *see also* Peter Eavis, *Ex-Auditor Sues Bank of Internet*, N.Y. Times, Oct. 13, 2015, BofI's App. Exs., Ex. 14, ECF No. 7-22.) A review of the *New York Times* article reveals it largely summarizes the allegations in Erhart's complaint and includes BofI's Chief Executive Officer's refutation of these allegations:

//

//

//

---

[3] The Court grants BofI's request for judicial notice of several newspaper articles and similar publications. *See* Fed. R. Evid. 201; *see also, e.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'"); *accord Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 977 (9th Cir. 1999) (taking judicial notice "that the market was aware of the information contained in news articles submitted by the defendants").

1

2     Bank of Internet USA has become one of the country's top-performing
      banks by churning out high-cost mortgages to wealthy individuals with
3     complex finances.

4     But in a federal lawsuit filed on Tuesday, a former internal auditor of
5     the bank contended that Bank of Internet was cutting corners as it grew
      at a rapid pace. The auditor, Matt Erhart, said in the suit that he was fired
6     after revealing what he believed to be wrongdoing at the bank to federal
7     regulators and management at Bank of Internet. The complaint, filed in
      federal court in the Southern District of California, said that Bank of
8     Internet violated federal laws that seek to protect whistle-blowers.

9

10          . . . .

11    In an interview on Tuesday, Gregory Garrabrants, Bank of Internet's
12    chief executive, said the allegations were groundless. "The factual
      inaccuracies here are numerous and substantial," he said. "Mr. Erhart
13    has made all of these allegations in great detail to federal regulators,
14    who have reviewed them in depth and have found them to be wholly
      without merit."
15

16          . . . .

17    Mr. Erhart's complaint seeks to paint a picture of a bank where controls
18    often did not apply. It says that Bank of Internet's borrowers may have
      included foreign nationals who might have been off-limits under federal
19    anti-money-laundering laws. The suit does not, however, name any of
20    the borrowers that Mr. Erhart thought suspicious. And in an earlier
      interview, Mr. Garrabrants said the bank had passed a regulatory review
21    of its loans to foreign nationals.

22

23          . . . .

24    According to the complaint, Bank of Internet was also not forthcoming
25    with the Securities and Exchange Commission when the agency sought
      information about an account at the bank.
26

27    (Peter Eavis, *Ex-Auditor Sues Bank of Internet*, N.Y. Times, Oct. 13, 2015.)

28    *//*

–  7  –

Despite BofI's CEO's public refutation of Erhart's allegations, BofI Holding, Inc.'s share price plummeted thirty percent on October 14, 2015, from its closing price on October 13, 2015. (*See* BofI Holding, Inc. Historical Stock Prices, BofI's App. Exs., Ex. 9, ECF No. 7-17.)[4] A securities class action lawsuit was filed against BofI the following day. *See Hous. Mun. Emps. Pension Sys. v. BofI Holding, Inc.*, No. 15-cv-02324-GPC(KSC) (S.D. Cal. filed Oct. 15, 2015).

### D.    Temporary Restraining Order

On October 19, 2015, BofI commenced this action asserting claims against Erhart for: (1) breach of contract; (2) conversion; (3) breach of the duty of loyalty; (4) negligence; (5) fraud; (6) violation of California Penal Code Section 502; (7) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5); and (8) unfair business practices in violation of California Business and Professions Code Section 17220. (ECF No. 1.) Several days later, the parties jointly moved for the entry of a temporary restraining order. (ECF No. 4.) While this request was pending, BofI moved for a preliminary injunction. (ECF No. 7.) On November 2, 2015, the Court granted the parties' request and entered a temporary restraining order that required Erhart and his agents to "refrain from disclosing . . . any confidential, privileged, or proprietary information belonging to BofI . . . ." (ECF No. 10 at 2:1–3.) However, the order did not prevent Erhart from communicating with federal or state regulators or his counsel. (*Id.* at 2:24–27.) In addition, the temporary restraining order required Erhart to deliver to BofI "all BofI records and documents and any Confidential

---

[4] The Court grants BofI's request for judicial notice of historical stock prices for BofI Holding, Inc. *See* Fed. R. Evid. 201; *see also, e.g.*, *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) (noting the district court properly took judicial notice of the defendant's "reported stock price history and other publicly available financial documents"); *In re Copper Mountain Secs. Litig.*, 311 F. Supp. 2d 857, 864 (N.D. Cal. 2004) ("Information about the stock price of publicly traded companies is the proper subject of judicial notice."). BofI Holding, Inc. is the publicly-traded savings and loan holding company that owns BofI—a federal savings association. *See* 12 U.S.C. § 1813 (defining "savings and loan holding company" and "Federal savings association").

Information in any form, including but not limited to documents or electronically stored information stored in any medium within his or their custody, possession, or control." (*Id.* at 2:15–19.)

On November 10, 2015, the parties jointly moved to continue BofI's motion for a preliminary injunction. (ECF No. 13.) BofI agreed to continue the motion subject to the entry of a supplemental temporary restraining order that imposed additional requirements on Erhart. (*Id.*) These requirements included that he:

> 1. Provide a list of all materials he (Erhart) removed from BofI, including the date the item was taken (referred to as the "Inventory").
>
> 2. Provide a list of all individuals to whom Erhart or his agents, including counsel, has disclosed each item on the Inventory.
>
> 3. Provide a signed declaration from Erhart . . . that all items on the Inventory . . . have been returned . . . .

(*Id.* at 1:15–27.) The Court granted the parties' request and entered a supplemental restraining order on November 16, 2015, with the order remaining in effect "until the Court renders a decision on BofI's motion for preliminary injunction." (ECF No. 17.)

While the parties briefed BofI's preliminary injunction motion, they also filed a joint motion to allow BofI to take a limited deposition of Erhart. (ECF No. 14.) Judge Stormes granted the parties' joint motion and ordered that:

> BofI may take Erhart's deposition . . . for the limited purpose of determining whether and to whom Erhart has disclosed confidential, privileged, or proprietary information belonging to BofI, its employees, its business counterparties, its customers, and/or its client[s] . . . .

(ECF No. 19 at 1:7–13.)

Before his deposition, Erhart provided a declaration to BofI pursuant to the Court's supplemental temporary restraining order. (Erhart Decl. ¶ 81 (Jan. 19, 2016), ECF No. 27-4; *see also* Erhart Decl. ¶¶ 1–19 (Dec. 3, 2015), ECF No. 34-5 (describing prior disclosures and the return of BofI's information).) Erhart submitted to a deposition on December 6, 2015. (ECF No. 30-5.) Last, to comply with the

15cv2353

1   restraining order's requirement that he return BofI's information, Erhart surrendered
2   two USB devices to BofI and also allowed BofI's forensic experts to come to his
3   home to retrieve his desktop computer and his girlfriend's computer for analysis.
4   (Erhart Decl. ¶¶ 81–82; *see also* Armstrong Decl. ¶ 7, ECF No. 30-1 (listing digital
5   media provided by Erhart to BofI).)

7   **II.    EVIDENTIARY OBJECTIONS**

8        Before analyzing the requirements for preliminary relief, the Court addresses
9   the parties' mountain of evidentiary objections. "[A] preliminary injunction is
10  customarily granted on the basis of procedures that are less formal and evidence that
11  is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S.
12  390, 395 (1981). Thus, the Federal Rules of Evidence do not strictly apply to
13  preliminary injunction proceedings. *See, e.g.*, *id.*; *Republic of the Philippines v.*
14  *Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc); *Flynt Distrib. Co. v. Harvey*,
15  734 F.2d 1389, 1394 (9th Cir. 1984).
16       This flexibility exists because "[t]he urgency of obtaining a preliminary
17  injunction necessitates a prompt determination" and makes it difficult for a party to
18  procure supporting evidence in a form that would be admissible at trial. *Flynt Distrib.*
19  *Co.*, 734 F.2d at 1394; *accord Puricle, Inc. v. Church & Dwight Co.*, 568 F. Supp.
20  2d 1144, 1147 (C.D. Cal. 2008); *Dr. Seuss Ents. v. Penguin Books USA, Inc.*, 924 F.
21  Supp. 1559, 1562 (S.D. Cal. 1996). A district court therefore "may give even
22  inadmissible evidence some weight, when to do so serves the purpose of preventing
23  irreparable harm." *Flynt Distrib. Co.*, 734 F.2d at 1394. District courts have exercised
24  this discretion to consider a variety of evidence at the preliminary injunction stage
25  that may otherwise be inadmissible. *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067,
26  1083 (9th Cir. 2009) (concluding the district court did not abuse its discretion by
27  considering "unverified client complaints" and the plaintiff's counsel's interested
28  declaration); *Flynt Distrib. Co.*, 734 F.2d at 1394 (holding it was within the district

– 10 –

15cv2353

court's discretion to rely on hearsay statements); *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1225 n.4 (C.D. Cal. 2004) (considering internet materials that were not individually authenticated).

In this case, Erhart makes numerous evidentiary objections to six declarations submitted by BofI. (ECF No. 27-1.) The grounds for the vast majority of Erhart's objections are lack of relevance, inadmissible hearsay, lack of personal knowledge or foundation, and improper expert opinion under Federal Rules of Evidence 401, 602, 701, and 702. Having (i) reviewed these objections and BofI's responses (ECF No. 30-10) and (ii) considered the evidence submitted in light of the standard discussed above, the Court overrules Erhart's objections.

In addition, BofI submits numerous evidentiary objections to fifty-four segments of two declarations submitted by Erhart in opposition to BofI's motion. (ECF No. 30-9.) Given that the Court has referenced Erhart's December 3, 2015, declaration made in response to the Court's supplemental temporary restraining order, the Court also notes BofI's objections to eight segments of this declaration that are filed elsewhere on the docket. (*See* ECF No. 35-3.) The Court will not strictly apply the rules of evidence to Erhart's submissions because it finds the rationale for the relaxed standard discussed above is equally persuasive for evidence submitted by a defendant. *See Flynt Distrib. Co.*, 734 F.2d at 1394; *accord Rosen Entm't Sys., LP v. Eiger Vision*, 343 F. Supp. 2d 908, 912 (C.D. Cal. 2004) (exercising discretion to consider inadmissible evidence when considering evidentiary objections to evidence submitted in opposition to a preliminary injunction request). Most of BofI's objections are made on the same grounds as Erhart's discussed above—lack of

foundation, improper expert opinion, and inadmissible hearsay.[5] Having reviewed these objections and also considered Erhart's evidence in light of the standard discussed above, the Court overrules BofI's objections.

## III.   PRELIMINARY INJUNCTION ANALYSIS

### A.   Introduction

Although BofI brings eight claims against Erhart, it relies on only three of them for its request for preliminary relief: (1) breach of contract, (2) breach of the duty of loyalty, and (3) conversion. BofI argues it is entitled to a preliminary injunction because Erhart appropriated hundreds of documents containing BofI's nonpublic information. (Mot. 1:2–2:27.) Further, Erhart published some of this information in his whistleblower retaliation complaint, to the press via his attorney, and to other members of the public such as his mother and former coworkers. (*See generally* Complaint, Whistleblower Retaliation Action, ECF No. 1; *see also* BofI's Supp. Br. 2:10–4:6, Ex. 2, ECF Nos. 56, 56-2.)

In response, Erhart disputes that BofI has demonstrated it is entitled to a preliminary injunction on any of its three claims for one principal reason: the law protects Erhart's conduct. (Opp'n 6:4–10:7, ECF No. 27.) In Erhart's view, he is protected from liability for breach of the Confidentiality Agreement and BofI's other claims because there "is a strong public policy in favor of protecting whistleblowers

---

[5] BofI also objects to twelve portions of Erhart's declaration based on 12 C.F.R. § 4.37(b)(1)(i). (ECF No. 30-9.) Under 12 C.F.R. § 4.37(b)(1)(i), a person may not disclose non-public OCC information without the OCC's consent. Here, "the cat is out of the bag" because this information has already been disclosed in Erhart's whistleblower retaliation complaint. *See SmithKline Beecham Corp. v. Pentech Pharm., Inc.*, 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (Posner, J.). Although Erhart may have violated 12 C.F.R. § 4.37(b)(1)(i), the Court is not convinced that BofI may now seek to exclude Erhart's evidence on this basis. Nevertheless, the conclusion reached in this order is not dependent on the portions of Erhart's evidence that BofI objects to under 12 C.F.R. § 4.37(b)(1)(i). BofI does not object to Erhart's sworn statements that on March 9, 2015, he "had a lengthy phone call with the OCC, lasting nearly two hours" and that on March 10, 2015, he "went to the OCC office in Carlsbad, turned over evidence, and then that day and the following [he] continued to fax documents that the OCC was unable to download and encrypt during the Carlsbad meeting." (*See* Erhart Decl. ¶¶ 65, 68; *see also* ECF No. 30-9.)

– 12 –

who report fraud against the government." (*Id.* 6:17–18.) "This policy would be thwarted if the courts permitted companies like BofI to use the *in terrorem* effect of a lawsuit like the present one to silence whistleblowers and keep company misconduct secret." (*Id.* 7:4–6.) He also argues BofI has not carried its burden on each requirement for preliminary relief. (*Id.* 14:9–15:18.)

"The Supreme Court has emphasized that preliminary injunctions are 'an extraordinary remedy never awarded as of right.'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (McKeown, J.) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The purpose of preliminary relief "is to preserve the status quo between the parties pending a resolution of a case on the merits." *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (citing *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)).

To obtain a preliminary injunction, BofI "must satisfy *Winter's* four-factor test." *See Garcia*, 786 F.3d at 740 (citing *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012)); *accord Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 725 F.3d 940, 944 (9th Cir. 2013). Under this test, BofI must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20. "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this 'extraordinary remedy.'" *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter*, 555 U.S. at 22). The plaintiff "must demonstrate that it meets all four of the elements of the preliminary injunction test." *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011).

Here, the Court ultimately concludes that BofI is not entitled to preliminary relief because BofI has not met its burden of demonstrating it "is likely to suffer irreparable harm in the absence of preliminary relief." *See Winter*, 555 U.S. at 20. Accordingly, the Court focuses on this element of *Winter's* four-factor test.

15cv2353

**B.**   **Likelihood of Irreparable Harm in the Absence of Preliminary Relief**

To obtain preliminary relief, BofI must demonstrate that irreparable harm is likely in the absence of an injunction. *See, e.g.*, *Winter*, 555 U.S. at 20, 22–23. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)). Moreover, "[a] preliminary injunction may only be granted when the moving party has demonstrated a significant threat of irreparable injury, irrespective of the magnitude of the injury." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999). The court must analyze whether irreparable harm is "*likely*" as opposed to "merely *possible*"—a "showing of mere possibility of irreparable harm is not sufficient under *Winter*." *See Earth Island Inst.*, 626 F.3d at 474; *see also Winter*, 555 U.S. at 22. The plaintiff must also show a "sufficient causal connection" between the alleged injury and the conduct the plaintiff seeks to enjoin such that the injunction would effectively minimize the risk of injury. *See Perfect 10, Inc. v. Google, Inc.*, 653 F3d 976, 982 (9th Cir. 2011); *see also Garcia*, 786 F3d at 745 (reasoning there is a "mismatch" between the plaintiff's substantive claim "and the dangers she hopes to remedy through an injunction").

Here, BofI argues it has demonstrated a likelihood of irreparable harm in the absence of preliminary relief for several reasons. (Mot. 19:17–20:28.) First, BofI relies on a provision in the Confidentiality Agreement signed by Erhart titled "Injunctive Relief." (*Id.* 19:21–24.) This provision provides that an employee's unauthorized disclosure of Confidential Information would cause "immediate and irreparable harm to BofI . . . for which BofI may not have an adequate remedy at law." (Confidentiality Agreement § 8.) Therefore, BofI argues an injunction is warranted because "Erhart admits that, pursuant to the Confidentiality Agreement he

– 14 –

15cv2353

Case 3:15-cv-02353-BAS-NLS   Document 70   Filed 09/07/16   PageID.2293   Page 15 of 21

signed, a breach of the agreement constitutes irreparable injury and entitles BofI to a preliminary injunction." (Reply 9:9–13.)

The Court is not persuaded. A preliminary injunction is an extraordinary remedy that is proper only if the requirements for injunctive relief are satisfied. *E.g.*, *Winter*, 555 U.S. at 22. Consequently, as many courts have recognized, a provision in a confidentiality agreement providing that a party will suffer irreparable harm upon a breach is not controlling. *See, e.g.*, *Giftango, LLC v. Rosenberg*, 925 F. Supp. 2d 1128, 1140–41 (D. Or. 2013) (citing cases); *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) ("[T]he contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate."); *see also DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 726 (2009) ("[A] court must reject a stipulation contemplating an equitable remedy that is contrary to law or public policy, such as where the evidence shows that an aggrieved party actually has an adequate remedy at law."). Instead, a court "must make an independent determination of whether [irreparable] harm is present." *Inspection Mgmt. Sys., Inc. v. Open Door Inspections, Inc.*, No. 209-CV-00023-MCE-GGH, 2009 WL 805813, at *4 (E.D. Cal. Mar. 26, 2009). Further, even if the Confidentiality Agreement's clause established that the type of harm BofI may suffer is irreparable, the provision would not satisfy BofI's burden of providing evidence that there is a *likelihood* of irreparable harm occurring in the future absent preliminary relief.

Second, BofI argues it has satisfied the irreparable harm requirement because "[i]mmediately following Erhart's filing of his complaint containing confidential and privileged information, and the contemporaneous disclosure to the press of the complaint containing the same confidential and privileged information, BofI's stock, and market valuation, dropped 30%." (Mot. 20:3–8.) "Losses due to depressed stock prices" are monetary losses and "do not constitute irreparable harm." *E.g.*, *Beztak*

15cv2353

1    *Co. v. Bank One Columbus, N.A.*, 811 F. Supp. 274, 285 (E.D. Mich. 1992); *see also*

2    *Rent-A-Ctr.*, 944 F.2d at 597 ("[E]conomic injury alone does not support a finding of

3    irreparable harm[.]"). Moreover, again, even if the Court considered a precipitous

4    decline in stock price as irreparable harm, BofI has not demonstrated a likelihood of

5    suffering this harm again in the absence of a preliminary injunction. Thus, BofI's

6    second argument is also unpersuasive.

7         Third, BofI notes that "at least one securities class action lawsuit expressly

8    premised upon Erhart's lawsuit has already been filed against BofI as a result." (Mot.

9    20:8–10.) "Unfortunately, this is just the beginning of the injury BofI will suffer if

10   not granted a preliminary injunction. BofI expects that additional class action

11   lawsuits may be filed against BofI if Erhart is permitted to continue making

12   unauthorized disclosures of Confidential Information." (Mot. 20:11–13.) BofI's

13   forecast was correct. It soon encountered a tempest of litigation—notwithstanding

14   the Court's temporary restraining order and Erhart's compliance with the order. *See*

15   *generally In re BofI Holding, Inc. S'holder Litig.*, No. 15-cv-02722-GPC(KSC) (S.D.

16   Cal. filed Dec. 3, 2015). Yet, BofI's argument that it may be subject to future lawsuits

17   if the Court denies its request for preliminary relief similarly does not demonstrate

18   irreparable harm. *See, e.g.*, *KEE Action Sports, LLC v. Shyang Huei Indus. Co.*, No.

19   3:14-CV-00071-HZ, 2014 WL 5780812, at *4 (D. Or. Nov. 5, 2014) ("The cost of

20   litigation is not irreparable harm."); *Gilbane Bldg. Co. v. Nemours Found.*, 568 F.

21   Supp. 1085, 1095 (D. Del. 1983) ("Gilbane's argument that it may be subject to future

22   lawsuits, which may result in monetary damages against Gilbane, does not satisfy the

23   requirement that Gilbane demonstrate that it will suffer immediate irreparable

24   harm.").

25        Further, even if additional lawsuits constituted irreparable harm, BofI would

26   need to demonstrate a likelihood of them being filed. To reach this point, BofI would

27   need to first demonstrate a likelihood that Erhart will make unauthorized disclosures

28   of its confidential information if an injunction is not issued, which, for the reasons

discussed below, BofI has not done. BofI would also need to demonstrate more unauthorized disclosures would likely subject it to additional litigation. Admittedly, that may be a difficult or unattractive task for BofI—all of the present lawsuits the Court is aware of are either shareholder derivate suits or securities fraud class actions. BofI's argument inherently assumes that Erhart is in possession of more information that will lead to more accusations that BofI has violated securities laws or that its officers have breached their fiduciary duties. Consequently, because additional lawsuits do not constitute irreparable harm and BofI has not demonstrated a likelihood of them being filed, the Court rejects this third argument.

In its final argument in its moving papers, BofI claims "the harm that Erhart is causing BofI's business counterparties and customers" constitutes irreparable harm. (Mot. 20:14–15.) "The taking and dissemination of confidential Bank information, including potential customer information, already has caused and, unless enjoined, will continue to cause, severe harm to BofI's goodwill and reputation." (*Id.* 20:21–23.) "[I]ntangible injuries such as loss of goodwill and prospective customers can qualify as irreparable harm." *Giftango, LLC*, 925 F. Supp. 2d at 1140 (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co.*, 240 F.3d 832, 841 (9th Cir. 2001)). But the plaintiff "must proffer evidence sufficient to establish a likelihood" of this type of injury. *See Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013); *see also Giftango, LLC*, 925 F. Supp. 2d at 1140 (declining to issue an injunction on this basis where the "plaintiff provide[d] no evidence that the claimed loss of customers or goodwill [was] real and imminent, not just speculative or potential").

//

//

//

//

//

To support this ground, BofI highlights that Erhart "published the confidential banking information of at least one bank customer in his publicly filed complaint. Other BofI customers most likely will be irreparably injured if their confidential information is similarly released by Erhart." (Mot. 20:17–20.)[6] BofI admits, however, that it "does not have evidence that, except for the single individual whose name and account balance appear in Erhart's complaint . . . [that] Erhart released any personal identifying information of its individual customers." (*Id.* 1:22–24.)

Unlike BofI's other arguments, the Court agrees that the publishing of customers' nonpublic information could cause irreparable harm to BofI by causing a loss of goodwill and damaging its reputation. The Court assumes, for the sake of argument, that BofI's reputation has suffered because Erhart published confidential customer information—not simply because BofI has been accused of whistleblower retaliation and other violations of the law in a publicly-filed complaint.

Even so, BofI must still establish a likelihood of it suffering irreparable harm in the future if the Court denies its request for preliminary relief. BofI has not done so. There is no evidence before the Court that Erhart is likely to disclose additional nonpublic information. BofI seeks to portray Erhart as an internal auditor gone rogue—a loose cannon waiting to fire another salvo of confidential information that will damage BofI—but the present facts do not support this characterization. Erhart agreed to a temporary restraining order, provided the requested declaration to BofI, submitted to a deposition, and returned the files in his possession to drastically minimize, if not eliminate, this possibility. In fact, another motion filed by BofI suggested Erhart may even have been too cooperative. That motion, which the Court denied, sought a determination that Erhart waived the attorney-client privilege by

---

[6] In his whistleblower retaliation complaint, Erhart alleges he discovered that the "largest consumer account at [BofI]" belongs to the brother of BofI's CEO. (Compl. ¶ 45, Whistleblower Retaliation Action, ECF No. 1.) Erhart alleges he "could find no evidence of how [the CEO's brother] had come legally into possession of the $4 million wired into the account." (*Id.*) He further alleges that, because the CEO was the signatory on the account, Erhart was concerned that the CEO "could be involved in tax evasion and/or money laundering." (*Id.*)

turning over too much information when he provided various electronic devices and an export of his e-mail account to BofI's computer analysts. (*See* ECF Nos. 33, 69.)

Nevertheless, in its Reply, BofI argues "there is evidence that Erhart has not fully complied with his obligation to deliver all BofI materials that he took (such that the declaration he provided under penalty of perjury and his deposition testimony may be false)." But this claim is the type of speculation that does not satisfy BofI's burden. The Court also finds this claim is not justified based on the record before it.

BofI's claim at oral argument that Erhart is in contact with anonymous investment bloggers who are tracking public court filings involving BofI is similarly speculative. (*See* Aurelius, *Recent BOFI Court Filing Confirms Existence of Undisclosed Subpoenas and Nonpublic Government Investigations* (Nov. 15, 2015), SeekingAlpha[α],    http://seekingalpha.com/article/3652296-recent-bofi-court-filing-confirms-existence-undisclosed-subpoenas-nonpublic-government, Towill Decl. Ex. E, ECF No. 30-8.) To illustrate, several weeks after Erhart commenced the Whistleblower Retaliation Action, an anonymous investment blogger published an article incorporating Erhart's allegations on *SeekingAlpha[α]*, a crowd-sourced investment research website. (*Id.*) BofI argues the author's explicit use of Erhart's allegations "suggests that [the author] may have been in contact with Erhart (or Erhart's attorney) prior to the publication of his article." (Towill Decl. ¶ 10, ECF No. 30-3.) However, the Court has another theory: the author read Erhart's publicly-filed complaint. There is no indication that the author obtained information beyond that already in publicly-filed pleadings. This type of speculation does not satisfy BofI's burden of demonstrating a likelihood of irreparable harm in the absence of preliminary relief.

Last, at oral argument, BofI argued there is a "course of conduct" on the part of Erhart that makes it "very likely that such conduct could continue to cause harm in the future." This theory may have some appeal if the evidence indicated that Erhart has progressively disclosed more and more of BofI's confidential information. But,

at best, BofI has demonstrated Erhart repeatedly disclosed largely the same allegations of perceived wrongdoing to the OCC, members of his family, his girlfriend, and colleagues. These same allegations then appeared in his whistleblower retaliation complaint. The Court finds this course of conduct does not demonstrate a likelihood that, moving forward, Erhart will suddenly disclose other information to the public, such as a trove of personal-identifying information of BofI's customers, if the Court does not issue an injunction.[7] Erhart also testified that he has returned the information belonging to BofI in his possession. Accordingly, BofI has not shown there is a likelihood that Erhart will disclose additional nonpublic information absent preliminary relief.

In sum, BofI has not demonstrated that irreparable harm is likely to occur if its request for preliminary relief is denied. That is not to say Erhart's past conduct is excusable or did not constitute a breach of the Confidentiality Agreement. The Court reserves for another day whether the Confidentiality Agreement is unenforceable on public policy grounds or whether Erhart's disclosures were protected by any privilege. In addition, although Erhart may now engage in discovery with BofI and possibly discover more confidential information to support his whistleblower retaliation allegations—or defend himself in this countersuit—BofI can produce this information subject to a protective order, such as the one already in place here. (*See*

[7] The Court disagrees with BofI's claim during oral argument that Mr. Armstrong's supplemental declaration shows Erhart improperly disseminated BofI's information after he filed his whistleblower retaliation complaint. Only four paragraphs of the declaration discuss conduct that occurred after the complaint was filed. (*See* Armstrong Decl. ¶¶ 12–16, ECF No. 30-1.) These paragraphs show Erhart copied BofI files from his personal desktop computer onto a USB flash drive to return them to BofI—as opposed to surrendering the desktop computer itself—and later deleted BofI files on the desktop computer prior to surrendering it for analysis. (*Id.*) In his deposition, which occurred before BofI filed Mr. Armstrong's supplemental declaration, Erhart explains that he copied the BofI files onto the USB flash drive so that he could return them, and he later deleted "the exact same information" from his computer because he believed he "was told in [the Court's] order not to possess any bank information." (Erhart Dep. 144:23–146:13; *see also* ECF No. 17 at 2:25–27 (requiring Erhart to "[d]elete all references to and/or summaries of BofI's Confidential Information in his possession, custody, or control")). Even if the Court did not accept Erhart's explanation, however, Mr. Armstrong's declaration does not demonstrate Erhart disseminated BofI's information to anyone other than BofI's counsel's forensic analysts.

15cv2353

ECF No. 21.) BofI can continue to proceed on its claims and seek damages and other appropriate relief. It simply has not met its burden of demonstrating it is entitled to an extraordinary remedy. *See Winter*, 555 U.S. at 22.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** BofI's amended motion for a preliminary injunction (ECF No. 18). Accordingly, the Court dissolves the temporary restraining order (ECF No. 10) and the supplemental temporary restraining order (ECF No. 17).

**IT IS SO ORDERED.**

**DATED:  September 7, 2016**

Hon. Cynthia Bashant
United States District Judge

– 21 –

15cv2353